# IN THE CIRCUIT COURT OF JOHNSON COUNTY, ARKANSAS
## CIVIL

JUL 29 PM 12:41

Marsha King
CIRCUIT CLERK
JOHNSON COUNTY, AR

CHRISTOPHER WHITE          **PLAINTIFF**

v.        CASE NO. 36CV-19-159

JON MARK SIMPSON
    individually and in his official capacity as Mayor;
THE CITY OF CLARKSVILLE, ARKANSAS, a municipality
    and political subdivision of the State of Arkansas
    *d/b/a* CLARKSVILLE POLICE DEPARTMENT
    *d/b/a* MARVIN VINSON BUILDING AND AQUATIC
    CENTER;
and these other individuals in their official and individual
capacities:
JEFF ROSS, Clarksville Police Department, Officer
TOM COGAN, Parks and Recreation Director
MARY TOWNSEND, Clarksville Aquatic Center Manager
WHITNEY BARNES, Clarksville Aqu. Cen. Lifeguard
                   **DEFENDANTS**

## COMPLAINT

I, Chris White, the Plaintiff, come before this Court and invoke the right guaranteed to me as stated in our Arkansas Constitution, Article 2, Declaration of Rights, § 7, guaranteeing me a jury trial to seek justice in the matter described herein. There is no provision made in this Constitutional right to deny me a jury trial due to any

1


DEFENDANT'S EXHIBIT
A

mistake(s) made in my Court filings, Summary Judgment requests filed by the Defense, or for any other reason. I am very grateful for this provision in our Constitution. I have attempted, in good faith, to adhere to Court protocols, but I ask forgiveness if my work falls short of this standard. I am not a professional in this field, but I am a citizen of this State and County, and this Court exists for citizens just like me, for reasons just like this. I come for my claims and causes of action, which are brought pursuant, but not limited to, the Federal Civil Rights Act of 1964, the Arkansas Civil Rights Act, the Arkansas Constitution, the United States Constitution, and Slander, Libel, Defamation common law, against the above listed Defendants. I allege and assert as follows:

## JURISDICTION, VENUE, and PARTIES

1. The practices alleged to be unlawful herein were committed within the jurisdiction of this Court in Johnson County Arkansas, and this Court has jurisdiction of the parties and the subject matter involved.

2

2. I, the Plaintiff, Chris White, was and is at all times relevant to the filing of this action a citizen of Clarksville, Johnson County, Arkansas.

3. Defendant, City of Clarksville, Arkansas d/b/a Clarksville Police Department and d/b/a Marvin Vinson Building and Aquatic Center, is a municipal corporation and political subdivision organized under the laws of the State of Arkansas. The City of Clarksville operates and governs the Clarksville Police Department and the Marvin Vinson Building and Aquatic Center. Upon information and belief, it is the policy and practice of the City of Clarksville to instruct its officers and employees to follow the commands of the Mayor for the City of Clarksville, Parks and Recreation Director or other Aquatic Center employees, even when those commands would result in the clear, apparent, and obvious deprivation of the constitutional rights of the local citizenry.

4. Defendant, Jon Mark Simpson, is the retired Mayor for the City of Clarksville, Arkansas, and is being sued individually and in his official capacity as Mayor. Mr. Simpson was the

3

Mayor, at all times relevant to this suit, and was a policy and decision maker for the City of Clarksville.

5. Defendant, Tom Cogan, was the Parks and Recreation Director for the City of Clarksville, Arkansas, and is being sued individually and in his official capacity as Director of Parks and Recreation. Mr. Cogan was the Director of Parks and Recreation, at all times relevant to this suit, and was a policy and decision maker for the City of Clarksville.

6. Defendant, Mary Townsend, was the Director of the Aquatics Center for the City of Clarksville, Arkansas, at the Marvin Vinson Building and Aquatic Center, and is being sued individually and in her official capacity as an employee of the City of Clarksville. Ms. Townsend was an employee, at all times relevant to this suit, and was a policy and decision maker for the City of Clarksville.

7. Defendant, Jeff Ross, is an Officer with the Clarksville Police Department, and is being sued individually and in his official capacity as an employee of the City of Clarksville. Officer Ross was an employee, at all times relevant to this

4

suit, and was a decision maker for the City of Clarksville, and whose actions are meaningful in this matter.

8. Defendant, Whitney Barnes, was/is an employee for the City of Clarksville, Arkansas, at the Marvin Vinson Building and Aquatic Center, and is being sued individually and in her official capacity as an employee of the City of Clarksville. Ms. Barnes was an employee at all times relevant to this suit and whose actions are meaningful in this matter.

## BACKGROUND

9. The Clarksville Aquatics Center – Marvin Vinson is a municipal facility which is owned by the City and controlled by the City government. (exhibit 1, Cogan Affidavit points 2, 3, 4) It is a community center and is also the place used for voting, solicitation of votes by candidates, and debates – discussion of issues on election day. I am registered to vote at this location. (exhibit 2, letter from Michelle Frost, Johnson County Clerk)

10. I had membership at the public facility of the Marvin Vincent Center, including the Aquatics Center, from August 2, 2014, until December 16, 2016. During the this period, never

5

was I accused of violating any policies or rules, and never was I warned for any matter, nor does the City have any record of any such warnings. Never was the word "distract," "distraction," "distracting," or any other form of this word, ever used in any conversation I had with Mary Townsend. Never, during this period, did I have a discussion with Mary Townsend or Tom Cogan about any concerns either of them had having to do with Whitney Barnes.

11. Whitney Barnes made it a point to tell many people that she didn't believe in a god who would allow children to suffer, the way she witnessed as a patient at St Jude Children Hospital. When she volunteered that information to me, I attempted to witness the Lord's message to her during the times in which she came and talked to me, and twice she rejected the message.

12. Depositions were recorded, under Oath, on July 06, 17, 19, of 2018, by Hendrix Reporting Service, 1701 South Arch, Little Rock, AR 72206, (501) 372-2748.

13. Investigation and Depositions were conducted by the Honorable Kevin R. Holmes, Hopkins & Holmes PLLC, 402 E Main Street, PO Box 7359, Van Buren AR 72956, (479) 922-2175.

14. The posting on the glass entrance doors, in Jeff Ross' Interrogatory Number 9, showing the title of "Common Sense Rules," did not exist while I was a member.

## CHRISTMAS CARD DELIVERY
Luke 4:24 "I tell you this," Jesus added, "prophets are never welcomed in their hometown."

15. On Friday, December 16, 2016, I went to the Clarksville Aquatics Center and delivered two Christmas cards. One was left at Front Desk, and it said "Merry Christmas Mary's Pool Crew, Jesus Loves You." The recipients were all the employees of the city pool. This card was uncovered and the message face up. It is a sheet of copy paper, 8.5 inches by 11 inches, and was not folded. The message on this card was clearly visible for all at the front desk to see. The other card was delivered in a box as part of a gift. In the box was another

Christmas card, an insulated cup, and a couple bags of Skittles candy. This card said "Merry Christmas Whitney, Jesus Loves You." The card was put into the box and laid across the top of the presents, so it was the first thing the person sees when opening the box. The recipient was Whitney Barnes. I swam in the pool that day, and nothing unusual happened. I did not speak to anybody, other than to say "You're welcome, Merry Christmas" to Barnes, after she told me "Thank you." I am in possession of original card and gift.

(exhibit 5, Front Desk Christmas card) (exhibit 6, Whitney Barnes Christmas card) (exhibit 7, picture of the Christmas gift; this picture is dated, December 08, 2016, 2:32pm on my phone.)

## CHRISTMAS CARDS READ by DEFENDANTS
1 Peter 4:14, 16  If you are insulted because of the Name of Christ, you are blessed, for the Spirit of glory and of God rests on you. However, if you suffer as a Christian, do not be ashamed, but praise God that you bear that Name.

16. The present was opened, and the Christmas card read, on that day, December 16, 2016, and before the decision making process took place to illegally ban me from the City's facility. All the Defendants have admitted to seeing the cards that day,

before they conspired to illegally ban me. Ms Townsend was asked, "And in that gift there was a card that said, 'Merry Christmas Whitney, Jesus Loves You,' and it was signed by Chris; is that correct?" [Townsend:] Yes. (exhibit 8, Townsend dep., lines 5-8, page 16)

17. The card addressed to Barnes was read by her when she opened the box. Ms Townsend reveals that on the day that she claimed to have returned to work, "Ms Barnes informed me that Mr White had brought her a wrapped Christmas present and a card to her...." Ms Barnes had to open the present in order to know that the card existed. Ms Townsend then lies and claims, "Ms Barnes was disturbed by the gesture and did not open the card or the gift." As stated, the card was inside of the gift box, so to know that a card was in there proves that the box was opened and the card read. Ms Townsend then admits that as soon as the Defendants saw the present and read Ms Barnes' card, that was the occurrence which prompted them to decide to ban me: "I notified Mr Cogan that Mr White had delivered a present to Ms Barnes, then Mr Cogan notified Mayor

9

Simpson and Chief Weathers of the gift and the decision was made to immediately ban Mr White from the Center." Again, for Ms Barnes to know about the card proves that it had already been opened, and Ms Townsend admits that immediately after they saw the present and read that card, they made the decision to ban me from the City facility.

(exhibit 9, Mary Townsend Affidavit, December 12, 2017, point 15, 16)

18. Mr Cogan corroborates Ms Townsend's story. "On the day that Ms Townsend returned to work, Ms Townsend notified me that Ms Barnes had informed her that Mr White had brought her a wrapped Christmas Present and a card. Ms Townsend relayed that Ms Barnes was disturbed by the gesture, and did not open the card or gift." Because the Defendants already knew about the card in the box proves that it had been opened. "Ms Townsend and I notified the Mayor and Chief Weathers that Mr White had delivered a present and card to Ms Barnes and we made the decision to immediately ban Mr White from the Center." That the box had been opened, giving the Defendants knowledge of the card

10

has been established. Mr Cogan corroborates Ms Townsend's testimony, that the presence of the present and Christmas card, which states that "Jesus Loves [Ms Barnes]," is what made them make the decision to ban me from the municipal facilities.

(exhibit 10, Tom Cogan Affidavit, December 12, 2017, point 12 and point 13)

19. Mayor Simpson admitted, under Oath, that he saw the Christmas card, addressed to Barnes, at the meeting which was held to make the decision to illegally ban me.

[Q]: Were you aware on December 16, 2016, that Mr White had provided a gift to Whitney Barnes?
[Simpson]: Yes, Sir.
[Q]: Were you aware on that day, December 16, 2016, that the gift that Mr White had provided Ms Barnes contained a card that said, "Merry Christmas, Whitney, Jesus loves you," and was signed by Mr White?
[Simpson]: Not until after I seen it.
[Q]: And when would you have seen it?
[Simpson]: At the meeting (to ban Mr White). (exhibit 55, deposition of Jon Simpson, page 12, line 19 - 22)
(exhibit 11, Simpson deposition, page 14, lines 6-8, 15-21)

20. Jeff Ross confessed, under Oath, that the Christmas card, which came with Barnes' present, was clearly visible, and that he read it.

11

[Q]: Did you review the gift that Mr White had left for Ms Barnes at the Aquatic Center on December 16th?

[Ross]: As far as review, do you mean opened?

[Q]: Yeah.

[Ross]: I mean, what do you mean?

[Q]: Did you see what it was?

[Ross]: Yes Sir.

[Q]: What was in it?

[Ross]: It was a gift wrapped box with a piece of paper taped on the top, and inside it contained two bags of Skittles and one tumbler.

[Q]: And the card that was a piece of paper as you referred to it, what did it say?

[Ross]: I can't tell you just word for word.

[Q]: Okay. Did it say something along the lines of, "Merry Christmas Whitney. Jesus loves you," and was signed by him?

[Ross]: Yes Sir.

(exhibit 12, Ross deposition, page 19, lines 13-25; page 20, lines 1-8)

## ILLEGAL BAN by OFFICER JEFF ROSS

Matthew 10:

14 If anyone will not welcome you or listen to your words, leave that home or town and shake the dust off your feet. 15 Truly I tell you, it will be more bearable for Sodom and Gomorrah on the day of judgment than it will be for that town.

21. Later the same day in which I delivered the present and Christmas cards, December 16, 2016, Jeff Ross, in his official capacity as an Officer of the Clarksville Police Department, delivered a letter to me, the Plaintiff, stating that I was not to ever return to this City facility, and that if I were to even step

12

foot on the grass, which borders the building, that I would be arrested. Mr Ross's letter does not give any reasons for the ban, and does not provide me any due process rights to challenge this illegal ban. Mr Ross then handed back the Christmas card addressed to Barnes, and the opened present. This was done late in the afternoon, giving the Defendants 6 to 8 hours to deliberate on their decision.

(exhibit 13, the December 16, 2016, letter from Jeff Ross)

## JEFF ROSS POLICE REPORT

22. In his report, Mr Ross misrepresented who Mr Woodward is. He reported that Woodward is Barnes' father (exhibit 15, Ross Police Report page 2). It should be obvious to Mr Ross that he's not her father because the last names are different. He was her "step father" at that time, and has since ceased to be so. Whitney Barnes was asked about this. [Q:] There's mention in.... the police report from December the 16th of 2016, it talks about and refers to an individual by the name of Shawn Woodward as the father of Whitney Barnes. Is he your father or your stepfather? [Barnes:]

13

My stepfather. .... [Q:] Is he still married to your mom? [Barnes:] They actually just got divorced. (exhibit 16, Barnes deposition page 11 lines 23-25, 12 lines 1-3, 6-7) Barnes testified further about Woodward: [Q:] What kind of issues did you discuss with Mr White about your stepfather? [Barnes:] Me and him did not get along very well. [Q:] Why not? [Barnes:] His actions toward my mother. [Q:] Like what? [Barnes:] Him and my mom used to fight a lot, and if he was drinking then the fights ended up physical. (exhibit 16, Barnes deposition page 14, lines 5-12) This testimony suggests that Shawn Woodward is a temporal drunk who was beating up Barnes' mother. This is the same person, who Jeff Ross describes as Barnes' father, who Ross said participated in portraying me as a predator, after he learned of my Christmas message to Barnes.

(exhibit 15, Jeff Ross police report, page 2)

23. Mr Ross also chose to omit the fact that the present contained the Christmas card. Mr Ross knew about the card before his report was written. He returned the card to me,

14

paper in hand, on Friday, December 16. He submitted his report on Sunday, December 18, 2016, 5:06pm. (exhibit 15, Clarksville Police Report)

24. Mr Ross also misrepresented how many lifeguards accuse me of sexual deviancy. Ross states, "Mr White has made sexual remarks to Ms Barnes and other lifeguards while at the Aquatics Center." (exhibit 15, Clarksville Police Report, page 2) There was only one lifeguard who has accused me of sexual remarks, and that is Whitney Barnes. Ross fails to state the names of these other lifeguards because they don't exist. Throughout this entire legal process, there is still only one accuser of sexual remarks, and in his report Ross stated her name, Whitney Barnes. If Ross had stated the fact that there was only one who accuses me, and she had just been told, "Jesus loves you," an objective reader of his report would suspect that the accuser is lying. But when Ross instead says there are many accusers, albeit unidentified, and that I indeed made sexual remarks to Ms Barnes, and that it is not just an accusation, but it seems to have been confirmed as a result of any

15

investigation Ross might have done, and there is no mention of a Christmas card, an objective reader comes to the quick conclusion that the allegation is true.

25. Officer Ross had not even talked to Barnes on December 16, 2016, before he illegally banned me that day. The allegation of sexual remarks was added, by Ross, to his report filed on December 18th, after I was banned on December 16th. [Q]: In that (police) report it states..... Did you inquire with Ms Barnes how long ago that was? [Ross]: No Sir. I had not talked to Ms Barnes at that time. [Q]: You hadn't? [Ross]: No Sir.

(See exhibit 17, Ross deposition, page 15, lines 4, 7-10)

All he knew at the time that Barnes was disagreeable to receiving the gift and the Christmas card from me.

(exhibit 10, Cogan's affidavit point 12,) (exhibit 9, Townsend affidavit point 15)

26. Barnes confirmed the fact that she did not speak with any police before I was illegally banned. Barnes was asked:

[Q:] Tell me what happened on December 16th after your dad or stepdad called the police department. [Barnes:] I don't know what happened with that because I wasn't there when it happened. [Q:] So..... you were gone by the time the police got there? ..... [Barnes:] Yes, I guess I did. [Q:] Guess you did what? [Barnes:] Leave before they got there, because I don't recall seeing the police that day. [Q:] So on the 16th of December, when Mr White delivered the present to you at the Aquatics Center, you say you called your mom, your mom told your stepdad, stepdad called the police, and then you don't recall the police showing up at the Aquatic Center? [Barnes:] I had already left the pool when I called my mother. [Q:] So did you talk to Jeff Ross at all at the Aquatic Center on December 16? [Barnes:] Not that I recall.... (exhibit 18, Barnes deposition page 22, lines 14-19, 23-25, page 23, lines 1-10)

27. Mr Ross lied about these things in his official report in an effort to conceal the illegal act committed by the Defendants. This action of his had it's desired effect, which can be clearly seen by reading the email I received from John Lovett, the Court Reporter for the Southwest Times Record. He asks me, after reading Mr Ross' report, "There are allegations of harassment and 'sexual remarks' made by you to the lifeguards," which is the tangible result of Ross reporting multiple life guards. The reporter then says, "I will also need to know the age of the girl you were presenting a present to. It appears she was not

17

over 18 if she had her father call the police. For any casual observer, your letter expressing a religious sentiment is not germane to what appears to be the real reasons you were banned from the aquatic center," which is the result of Ross reporting that Woodward is the father, and the lack of mention of the Christmas card stating that "Jesus Loves You (Ms Barnes)." (exhibit 19, Lovett Email) The details Mr Ross chose to omit, and the fabrication of the allegation of sexual misconduct, caused Mr Lovett, and all others who read the police report, to form suspicions of me. This report is what was given to the Johnson County Graphic newspaper, and is the reason they reported what they did in the December 28, 2016 edition, which was that Ross had issued the ban "from the Clarksville Aquatic Center, where employees reported the subject had harassed them and made sexual remarks to them." (exhibit 20, Graphic) There was no mention of the Christmas cards, but instead a claim that I had been "harassing" multiple employees in a sexual nature. Mr Ross also chose to "mask," in his report, the identities of the

people involved, except for my name and address. This is public record for all to see. (exhibit 15, Clarks. Police Report page 2)

## JEFF ROSS QUESTIONNAIRE

28. On Tuesday January 17, 2017, I went to the Clarksville Police Station to talk to Officer Ross. I was denied the opportunity to speak with him, and I requested and received the Police Report. I returned the next day, January 18, 2017, two more times, but I was unable to speak with Mr Ross. I was able to speak with Mr Ross on my next visit, Wednesday, January 25. I handed him a questionnaire. Mr Ross read the questions and refused to answer any of them. I then asked him if he could he not even answer Question 2, "Why was Chris White banned from the Marvin Vincent /pool, on December 16th?" Mr Ross exclaimed, "No! Remember, we didn't ban you from the pool! They're the ones who banned you from the pool; all we did was the paperwork." He then departed.

(exhibit 22, Ross questionnaire)

## MAYOR SIMPSON DID NOT SEE BARNES REPORT

29. During deposition, Mayor Simpson was presented a copy of Barnes' statement, which was produced on February 16, 2017, and Mayor Simpson was unable to identify that document. Mayor Simpson could not have reviewed this statement at the time he made the decision to illegally ban me from the public facility, on the day that I delivered the Christmas cards. (exhibit 21, Simpson deposition, page 18, lines 2-21)

## ATTEMPT at DUE PROCESS

30. Mr Ross told me that the mayor made this decision, and that my due process opportunity was to speak to him. On Monday, December 19, 2016, I went to Clarksville City Hall and talked with Mayor Simpson's secretary. I told her that I wanted to talk with the Mayor, and I asked that she schedule me an appointment. She frowned at me and sternly told me that the Mayor refuses to see me.

(exhibit 23, White deposition, page 81, lines 14-20)

## The DEFENSE CHOOSES FALSE ALLEGATIONS
Matthew 5:11 Blessed are you when people insult you, persecute you, and falsely say all kinds of evil against you because of Me.

31. A gentleman, named Michael Hamby, represented me through the Discovery process. He sent the first letter to the City, on February 8, 2017. Bruce Wilson, the Clarksville City Attorney, responded on February 16. (exhibit 24, Hamby Wilson correspondence) This caused the Defense to realize the awkward position that they had put themselves into, and they chose to think of a fictitious reason that they banned me, other than as a reaction to my Christmas cards.

## SOLICITED STATEMENTS in FEBRUARY
A good name is rather to be chosen than riches. – King Solomon, Proverbs 22:1

32. The Defendants solicited the fabrication of three statements, on the exact same day as Mr Wilson's response to Mr Hamby. (exhibit 24, Hamby Wilson correspondence) They were scripted on February 16, 2017, which is exactly 2 months after the Defendants' illegal ban. The three participants are Emily Rohr, Crystal Brook, and Whitney Barnes. Brooke and

21

Rohr were front desk staff. The statements of Rohr and Brooke are dated February 16, 2017. Barnes' statement is not dated, but we know the date because she wrote, in this same statement, that "about three weeks ago, I filed a report at the school." (exhibit 26, Barnes work report, page 2, 3) The date she filed her only report at school is January 25, 2017. (exhibit 45, Ozarks police report) (exhibit 50, Ozark's attorney) February 16 is 3 weeks and 1 day after the Ozarks police report was filed.

33. Crystal Brooke was an employee who sought me out for religious conversation. When a few employees asked me why I didn't come to the facility on Saturdays, I told them because Saturday is the Sabbath, and I didn't come on the Sabbath because that would make other people work. Brooke introduced herself to me, and was eager to tell me that she congregates with the Seventh Day Adventists, and told me how similar our beliefs are because we both recognize the fact that the Sabbath is the 7th day of the week. When a homeless man began using the facility, Brooke continually made fun of the man, and she made the statement that she

hates homeless people. Brooke's attitude soured towards me when I asked her, "Is that what Jesus tells us to do, is to hate homeless people?" Her offense to this is shown by her statements, that I would "ask what I (Brooke) thought about the Bible," and "Wrap everything around the Bible." I never offered to buy her any clothes, and her uncorroborated statement in regard to that is false. The date of this statement, February 16, 2017, is the same day of the other solicited statements from Barnes and Rohr.

(exhibit 35, White deposition, page 52, lines 4-25; page 53, lines 1-2)
(exhibit 27, Crystal Brooke statement)

34. The email listed as Emily Rohr's is obviously solicited and scripted by the Defendants. This is the only way Rohr would have Jeff Ross' email address. This person has never shown to testify, either at the August 2017 hearing at the Aquatics Center, which would've been easy for her to attend, or the Depositions. The date of this email, February 16, 2017, is the same day of the other solicited statements from Barnes and Brooke, two months after the illegal ban. I never made this

23

statement, to Rohr or anybody else, nor, as an Arkansas Activities Association Official, have I ever allowed illegal holds to be executed on any wrestler, whether they be male or female. (exhibit 39, White deposition page 48, lines 12-16) I am a member of AOA in good standing, with no complaints on my record. (exhibit 56, AOA Letter) Additionally, how I perform my duties as an Arkansas Activities Association official, is none of the City's concern. Further, this allegation is not a description of "sexual harassment." There is nothing in this alleged statement which is personal towards Rohr, nor is this alleged statement sexual in nature, nor is this alleged action claimed to have been repeated. (exhibit 29, Emily Rohr email)

35. Tom Cogan admitted that the statements were created at a later date and had no influence on the Defendants' decision to illegally ban me.

[Q] Did you take any other statements from any other employees, of the City of Clarksville, in making your decision or as part of the investigation to ban Mr White?
[Cogan] No Sir.
[Q] What is that document?
[Cogan] Christal Brooke's statement.

[Q] And was that a statement that was used in consideration for banning Mr White from the Aquatic Center?

[A] No.

[Q] I'm going to show you this document and see if you could identify it.

[Cogan] Statement from Emily Rohr.

[Q] And was this considered at all in making the decision to ban Chris White from the Aquatic Center?

[Cogan] No Sir.

(exhibit 28, deposition of Tom Cogan, page 22, line 1-4, 12-16, 17-18, 21-24)

## TALKING to LIFEGUARDS PROPOSAL

36. The Defense claimed that they banned me because I talked to the Lifeguards. However, Townsend, Cogan, and Simpson all agree that talking to the lifeguards is not a violation of pool rules, and is not grounds for banning anyone from the Aquatics Center. It is evident by reading the 16 rules, that it is fact that talking to people, including the lifeguards, is not against the Pool Rules. (exhibit 30, pool rules)

[Q] Can you point to any specific rule that talking to the lifeguards would violate?

[Cogan] No Sir.

[Q] Was Mr White talking to the lifeguards one of the reasons that you banned him from the facility?

[Simpson] No Sir. (exhibit 31, Cogan Deposition, page 20, lines 10-12; Simpson Deposition, page 15, lines 4-6)

[Q] Is talking to the lifeguards a violation of the Indoor Pool Rules?
[Townsend] No.
(exhibit 43, Townsend Deposition, page 17, lines 17-19)

37. The only conversation, in which Mary Townsend and I ever had, discussing me talking with life guards occurred in the Summer of 2015, 18 months before this ban. In that discussion, Mary simply informed me, "When you talk to the lifeguards, make sure that you don't stand in front of them and block their vision of the pool." (exhibit 34, White dep. page 54, lines 6-16) Mary never instructed me not to talk with the life guards. She simply asked me not to stand in front of them and to not block their vision of the pool. Throughout this entire legal process, starting on Friday, December 16, 2016, there has not been a single occurrence of anyone accusing me of standing in front of life guards after Mary talked to me in the summer of 2015.

## CHANGED SCHEDULE ALLEGATION

38. The Defense created the allegation that I changed the hours which I used the Aquatics Center, in order to match the schedule of Barnes. The Defendants have offered absolutely nothing to support their allegation of this motive, and it has been clearly established that I chose the hours I came to the facility to accommodate my work schedule, and that I didn't know who Barnes was before the fall of 2016. I clearly stated, under Oath," I did not know Whitney hardly at all until probably that fall. Probably at that time I probably couldn't even remember her name." Further, I am free to choose whatever hours I use the facility, and I am also free, based on our Law, to tell anyone there at the time that Jesus loves them. (exhibit 36 , White Deposition page 40, lines 17-19)

## TOWNSEND'S NOTE

39. Mary Townsend made an effort to create a paper trail which doesn't exist. Townsend created a "note," which was unaccounted for during the depositions. Originally Townsend

claimed that this was part of an official notebook, in which

she documents a number of work related things. Townsend

broke down, under questioning, and admitted that there was

never a notebook, and this was "just a piece of paper."

[Q] And this notebook that Mr Holmes referenced, did you keep up with that notebook after you stopped working at the City? [Townsend] No, I didn't. [Q] So you wouldn't have had that notebook in your possession at that time, is that correct? [A] Yeah. [Q] Had you removed this entry from your notebook because of this incident that happened? [Townsend] I don't know. I mean, like I said, it was just a piece of paper, I guess, not necessarily a notebook. I don't know. I don't know where the notebook is.
(exhibit 37, deposition of Mary Townsend, page 34, line 12-15, 19-25; page 35, line 1)

40. Townsend claimed, in this suspicious note, that she never

discussed with me anything about talking, that she only spoke

with Barnes, and that Whitney Barnes talked to me for 5

minutes, which is not an unreasonable duration.

(exhibit 38, Mary's Note)

## CLAIM THAT I BROKE POOL RULE #10

41. The City has never come up with an incident in which I

committed inappropriate behavior or speech. The defendants

relied on Whitney Barnes to produce this for them after their ban, and the endeavors to do so have proven to be fruitless. Townsend admits that at the time which she claims to have written her statement, December 16, 2016, that the Defendants had not yet thought to accuse me of making sexual remarks. [Q] In this letter you don't make any mention of any kind of sexual comments that were made, do you? [Townsend] I don't specifically say the words "sexual comments," no.

(exhibit 41, deposition of Mary Townsend, page 31, line 8-9, 12-15)
(exhibit 40, Townsend report)

42. Below is the time when Barnes, during her deposition, claimed that me expressing my views on the Bible are inappropriate.

[Q:] Also in paragraph five, you say, "He tries to discuss religion as well. He (wouldn't) quit talking about it one day so i politely asked him to stop." ..... [Barnes:] That was just the one that particularly bothered me. [Q:] And why did it bother you? [Barnes:] Because I don't really know where I stand on religion. [Q:] So the conversations weren't him trying to help you navigate that? [Barnes:] Yes, for the most part, yes, it was him trying to help me navigate that, but I didn't need help. [Q:] You were confused about your religion; is that not fair to say? [Barnes:] Somewhat. [Q:] Do you think Chris knew that you were confused about your religion? [Barnes:] Yes. [Q:] But you thought it was inappropriate for him to help you navigate that

confusion? [Barnes:] I don't believe it was his place. [Q:] You thought it was inappropriate? [Barnes:] I don't know if "inappropriate" is the right word. [Q:] Once again, the purpose of this statement was to list all the inappropriate things, and in the middle of paragraph five you listed discussing about religion with you. So is it inappropriate or is it not? [Barnes:] I wouldn't necessarily say that it's inappropriate in, I'd say it's inappropriate for the fact that it wasn't his place. [A:] Why wasn't it his place? [Barnes:] He's not my pastor. [Q:] And so you think only a pastor can discuss religion with you? [Barnes:] No, but I don't need information from somebody who doesn't really know the Bible as well as they think they do. [Q:] And so that was where you thought it was inappropriate? [Barnes:] Yes.
(exhibit 42, Barnes deposition, page 44, lines 9-25;45, lines 1-25; 46, lines 1-5)

43. Barnes is the only person to claim that i said things that were inappropriate. The defendants hoped that her allegations would allow them to support their later claim that I broke Pool Rule number 10. Barnes' statement that she found the message, "Merry Christmas Whitney, Jesus Loves You," offensive and "inappropriate," is what the defendants based their decision to ban me on. Townsend was asked, "So which rule, on that list, had Mr White violated on December 16, 2016?" Mary responded, "Number 10." Question, "And what was that rule?" Townsend, "No obscene language, crude or

inappropriate behavior will be tolerated." Townsend confessed, under Oath, that the Defendants determined on December 16, the day I delivered the Christmas cards with the message that "Jesus Loves You," that I violated the rule, "No obscene language, crude or inappropriate behavior will be tolerated." Just as Barnes stated, the message which I delivered, "Merry Christmas Whitney, Jesus loves you," was found to be obscene, crude, and inappropriate.

(exhibit 30, pool rules) (exhibit 43, deposition of Mary Townsend, page 17, line 23-25) (exhibit 43, deposition of Mary Townsend, page 18, line 1-3)

## PARKS and RECREATION HEARING

44. The City Parks and Recreation Board members scheduled a hearing for this matter on Thursday, August 17, 2017. They rescheduled this for Thursday, August 24, 2017.

- There were 3 judges, and the chief judge was Tom Cogan. Mr Cogan sat in judgment of himself and his own decision.
- There were 3 witnesses, and none of them were placed under oath.
- Neither my council, nor myself, were afforded the opportunity to cross examine the 3 witnesses. [Q] Do you recall, prior to that meeting, members of the Commission

instructing Mr White and I that we wouldn't be able to ask any questions of any of the individuals that came and presented their story that day? [Cogan] Yes Sir. (exhibit 44, deposition of Tom Cogan, page 29, line 23-25; page 30, line 1-2)
* This board knew at this time that Barnes had been caught lying on the police report filed at the University of the Ozarks, January 25, 2017.
* Mr Cogan upheld his previous decision to ban me from the municipal facility.
* There is no recorded transcript of this meeting.

## WHITNEY BARNES is GUILTY of SLANDER, LIBEL, and DEFAMATION of CHARACTER

A good name is better than precious ointment. Ecclesiastes 7:1

45. Barnes made statements about me both verbally and in writing. Clear evidence of this is provided by the report filed with the police of the University of Ozarks on January 25, 2017, and the statement she wrote for the City of Clarksville on February 16, 2017. (exhibit 45, Ozarks police report) (exhibit 26, Barnes work report)

46. The statements Barnes made about me have proven to be false. 1) She was immediately caught lying about me following her by the U of O Police on January 25, 2017, which is documented in that report. (See Point 49, this document) (exhibit 45, Ozarks police report) 2) She admitted, during questioning on

32

Thursday, July 19, 2018, that she lied on the same report to the U of O Police, about me making physical contact, preventing her from leaving. (See Point 50, this document) 3) Barnes perjured herself during questioning, under Oath, on Thursday, July 19, 2018. She accused me of inappropriately telling her where my residence is in detail. She was asked if she had ever asked me for my address, and she denied doing so. A text message, from her to me, shows that she asked me for my address, unsolicited. (exhibit 48, Text Message) (see Point 51, this document) 4) Barnes perjured herself a second time during questioning, under Oath, on Thursday, July 19, 2018. She was getting caught lying about a point she was trying to make, and she tried to recover by stating there was more than one report which she filed with the U of O. This was proven to be a lie by the University of Ozarks attorney, Don Smith, when he provided the fact that there was only one report filed by Barnes. (exhibit 50, Ozark's attorney) (see Point 52, 53, this document)

47. Barnes' actions have caused damage to my reputation, emotional distress, have presented me in a false light, and

have resulted in criticism, dishonor, and condemnation. This fact is clearly shown by not only the City banning me from it's public facilities, but also by me being told by University of Ozarks personnel that I'm not to be on University property. Barnes stated on July 19, 2018, "But my report led to him (White) getting banned from the U of O, yes." (exhibit 49, Barnes deposition, page 17, lines 12, 13)

48. My wrestling assigner, Randy Steen, officiates the college meets in Arkansas. In 2015-6 and 2016-7, I would officiate a high school meet at the University of Ozarks, and then I would spectate my assigner working the college meet which followed. On Wednesday, January 10, 2018, I went to the U of O gym to watch Steen officiate the college meet that night. I went to the officials room and said hi to Randy. He told me to go talk to Coach Leroy Gardner, the Wrestling Coach of the U of O. I found Coach in the locker room, and he excused a few wrestlers and told me that he was informed by the U of O Chief of Security that I was banned from the campus and that I had to leave. I asked him to call Cyrus Smith, the Chief, and

confirm. We went to his office and he called Cyrus and Cyrus told Coach to tell me to leave. I had to walk out of the building, with the people who were outside in the hallway and the gym, watching me leave and thinking that I had been doing something which was wrong. I went to Cyrus Smith's office the next day. He stated that they were waiting out this court case before they changed their position.

## The IMPEACHMENT of WHITNEY BARNES

49. On January 25, 2017, Barnes chose to call the University of Ozarks Police. She reported that I was following her around, and that my vehicle was parked on campus at a specific location, which she provided. (exhibit 45, Ozarks police report) She testified, in her deposition, that she could make sure of my vehicle because she had my license plate number. [Q:] You were able to give Mr White's license plate number to the U of O Public Safety, is that right? [A:] Yes. [Q:] How did you have his license plate number? .... [A:] I have a picture of it. That way I would know if he was following me. (exhibit 57, Barnes Deposition page 18,

lines 9-12, 15-16) This story was quickly proven false by University of Ozarks police, when the responding officer checked the vehicle (exhibit 45, Ozarks police report). On the day after I received the report Barnes filed with the U of O, I went to the Ozarks police office and interviewed Cyrus Smith, their head of security at that time. He said he "knew she (Barnes) was lying" on the report she filed with his department. He said he knew this because he can review recorded video of all of the streets at U of O and he knew I wasn't there. Even if Barnes is given the benefit of the doubt for a possible mistake, she testified, in her February 16, 2017 work statement, that I approached her during this University of Ozarks incident, and that I attempted to talk to her. "Chris has shown up at the U of O as I'm walking to class," Barnes stated. "He was driving by and slowed down to try to talk to me. This made me uneasy, so I quickly dismissed him and told him I was late for class." (exhibit 26, Barnes Work Report page 1) This has to be the same alleged incident, because it has been established that

Barnes only contacted the Ozarks police once (exhibit 50, Ozark's attorney), and Barnes stated that she contacted the U of O police for this alleged face to face encounter while she was walking. (exhibit 49, Barnes Deposition, page 16, line 13) This clearly shows that the entire story was fabricated. Barnes also said on July 19, 2018, "I didn't say that he was following me on campus." (exhibit 58, Barnes deposition page 19, line 2) This contradiction demands that either the statement in the work report, alleging that I talked to her while stalking her on campus, is an additional lie, or this statement in the deposition is another lie. Additionally, Trent Starr, owner of 4 Starr Automotive, testified that the truck, Barnes claimed to have seen me driving while talking to her, was in his shop from December 30th, 2016, until January 26, 2017. (exhibit 59, 4 Starr receipt) $200 was paid on January 25, 2016, and $330 was paid on January 26, 2017, and the truck picked up the later day. Starr testified to the same in his deposition.

50. Barnes alleged in the University of Ozarks Police Report of January 25, 2017, "Barnes reported that he (White) has made

physical contact, preventing her from leaving." (exhibit 45, Ozarks police report) Barnes was asked about this because it didn't appear in her work report. What follows is the interview, during Barnes' deposition, which deals with this allegation. Barnes admitted that this is another false claim, which results in her twice falsifying this police report.

[Q:] You also put in that report or at least (told) the officer that he made physical contact at some point, preventing you from leaving. Do you recall telling the officer that? [A:] When exactly? [Q:] Paragraph three of the report says, "She reported that she had seen him following her around town and the surrounding areas and that he knows her address and has her cell phone pass code. Barnes reports that he has made physical contact preventing her from leaving." What would be that physical contact preventing her from leaving? [A:] I'm not sure. [Q:] So you're saying that Mr Waddell just added that on his own to this report? [A:] I can't say..... I don't remember exactly the time and exactly what was happening whenever this report was made. [Q:] It was January 25th of '17 at 1:25pm. [A:] Yes, Sir. [Q:] Okay, so you don't remember Mr White having physical contact with you preventing you from leaving? [A:] Not that day. [Q:] Okay. Then when would it have happened? If it wasn't that day, when did it happen? [A:] Honestly, Sir, I couldn't say. I don't remember. [Q:] You don't remember. Do you remember it ever happening? [A:] No. (exhibit 45, Ozarks police report) (exhibit 58, Barnes Deposition page 19, lines 7-25; page 20, lines 1-10)

51. Whitney Barnes established that the phone number, (479) 647-6998, is hers. She was asked in her deposition, "Did you

ever have a number ending in 6998?" She responded, "Yes." This is the number used in this text. (exhibit 46, Barnes Deposition page 7, lines 7-10) Whitney Barnes typed the first message to be used between us. This message was sent Thursday, October 6, 2016, 6:38am. The message is, "Hey what is your address? We are doing it these things for cheer where we send out letters. And I need 10 addresses" (exhibit 48, Barnes Text) I simply responded with my address, and I did not elaborate or further describe anything about the residence. (exhibit 48, Barnes Text) This conflicts with her testimony under oath. When she appeared for Depositions, on July 19, 2018, Barnes was asked, "Did you ever ask him (White) where he lives?" (exhibit 47, Barnes Deposition, page 28, line 25) She answered, "I asked him if he lives in Clarksville. I asked a general area; I didn't ask for directions." Barnes was then asked the specific question, "Never asked him for his address?" She responded, "No." (exhibit 47, Barnes Deposition, page 29, lines 1, 3-5) She elaborated on this point "The fact that he explained in explicit detail of exact directions to his

home, yes (it was inappropriate).... Because I don't need to know where a grown man lives at 16, or 17, or 18, or however old I was." (exhibit 47, Barnes Deposition page 29, lines 10, 11, 13, 15) Again, the text clearly shows that once I responded with the requested address, I did not elaborate further. This question and response about Barnes asking for my address qualifies as Perjury.

52. Barnes stated this in her February 16, 2017, report: "Finally, about three weeks ago, I filed a report at the school. I was walking to my car one morning on my way to work, and a man tried to grab me as I was getting in. I know that I have no proof of who it was, and to be entirely (honest), I don't know who it was, but I thought this was important to mention." (exhibit 26, Barnes work report, page 2, 3) She was asked about this during her deposition, because this story didn't appear in the police report which she filed. She had to cover this by claiming that she had filed an additional police report with the University Police, and then claimed a third report. Once we read the letter from Don

Smith, the attorney representing the University, we see that Barnes only filed one report. Mr Smith states, "The University located only one document that met the above quoted description..... any and all incidents/accident reports from January 1, 2014 to present where Whitney Barnes, is listed as the victim, witness, or suspect." (exhibit 50, Ozark's attorney). Therefore, these statements, made about the number of police reports, under oath, qualifies as Perjury. (see transcript, Point 53, below)

53. What follows is an interview in which Barnes not only added a police report into her testimony each time she got caught in a lie, but said there definitely is a report containing a statement about somebody trying to grab her on campus. Again, it is a documented fact that there is only one report (exhibit 50, Ozark's attorney), and that report contains nothing of this alleged incident (exhibit 45, Ozarks police report).

[Q:] So you filled out one (report) that you recall after December 16th of 2016, the one about banning at the pool. I think you said a couple at U of O. What were the other ones at the U of O? [Barnes:] The other one was I had been walking to campus.... Walking to class, sorry, and I thought that I saw Mr White's truck and I reported it. It was after he was banned. [Q:] Do you think that was the same day or was it the

same report, or would it have been two separate reports? [Barnes:] Two separate reports. [Q:] But you believe both of them were after he was banned? [Barnes:] Yes. [Q:] The one about you walking to class and seeing his vehicle — I'll show you this (exhibit 45, Ozarks police report). See if that's the report; if that's the first report or if that's the second report that you discussed? (exhibit 49, Barnes deposition page 16, lines 9-25) [Barnes:] This was the second one. [Q:] And what's the date on that report? [Barnes:] 01-25-17. [Q:] So you think there's another report that is between December the 16th of 2016 and January the 25th of 2017? [Barnes:] Yes Sir. [Q:] In that report you say, it talks about him being banned from the pool and then they banned him from the university based on that ban, right? [Barnes:] I can't say exactly their reasoning because I don't know.... But my report led to him getting banned from the U of O, yes. [Q:] Look at the last sentence of that paragraph or that report. [Barnes:] Okay. [Q:] And you're saying that when you made this second report, that he was already banned based on the first report? [Barnes:] As far as I know, yes. [Q:] And who told you that; do you recall? [Barnes:] Cyrus (Smith).... From what I understood, he was already banned before this report. [Q:] And that was based on the first report that you had (exhibit 49, Barnes deposition page 17, lines 1-25) made? [Barnes:] Yes. (exhibit 57, Barnes deposition page 18, lines 1-2)

[Q:] ....And so you think it was inappropriate that Chris White wasn't involved in a situation where you were potentially grabbed on campus? [Barnes:] It happened around the same time that all of this was occurring and I thought it was relevant. .... [Q:] Is that one of the reports that you talk about when I asked you about reports that you made to the U of O, you said there were two reports. I showed you one of them, and so is this one the other one you're talking about? [Barnes:] No Sir. [Q:] So now you're saying there's a third report out there? [Barnes:] That doesn't necessarily have to do with Chris White; I just made the report. [Q:] I didn't ask you if those two reports at the U of O were regarding Chris

42

White. I specifically said any other reports that you made to the Clarksville or any other public (exhibit 49, Barnes deposition page 55, lines 4-8, 14-25) safety office prior or after December 16th of 2016, and you said there were two. I didn't ask you specifically about Chris White. .... [Q:] ....How many reports have you ever made, not related to Chris White or related to Chris White, to the U of O Public Safety? [Barnes:] I honestly don't know. [Q:] You're saying at least three? [Barnes:] Yes. [Q:] And when was the third one that we're talking about made? [Barnes:] Three weeks prior to when I wrote this. [Q:] But you don't know when that happened? (exhibit 49, Barnes deposition page 56, lines 1-2, 16-25) [Barnes:] No Sir. .... [Q:] So as we sit here today, do you think Chris White was involved in this report that you made that somebody tried to grab you as you were walking to your car on your way to work? [Barnes:] That's not what I said. [Q:] Then why did you include it in your statement? [Barnes:] Because I thought it was important. [Q:] Once again, it wasn't inappropriate, right? [Barnes:] (no response) [Q:] Was it inappropriate? Did Chris White do anything inappropriate three weeks prior to you filling out this statement regarding you walking to your car and someone grabbing you? [Barnes:] I don't have any proof of it. [Q:] I'm asking you, as we sit here today, do you think he was involved in it? [Barnes:] I don't know. [Q:] And so you're telling me that there is a report at the (exhibit 49, Barnes deposition page 57, lines 1, 8-14, 16-25) U of O that says this? [Barnes:] Yes. [Q:] If I ask the U of O Public Safety Office to pull all reports that you are involved in, you're telling me that there's a report on the school campus that has this statement in it? [Barnes:] Yes. [Q:] And it would be three weeks prior to you drafting this statement? [Barnes:] Approximately. (exhibit 49, Barnes deposition page 58, 1-9)

54. Barnes has not only committed Slander, Libel, and Defamation of my character, but she has also fully Impeached herself by committing multiple counts of perjury and

falsifying a police report, and any testimony in which she has given has proven to be lacking in credibility as a result of the facts which are listed in this document.

## FALSE STORY of WAITING on MARY

Mark 14:
55 The chief priests and the whole Sanhedrin were looking for evidence against Jesus so that they could put him to death, but they did not find any. 56 Many testified falsely against him, but their statements did not agree.

55. The defendants, Cogan and Townsend, have attempted to explain their illegal action by claiming that they had agreed to ban me a week or two before December 16, 2016, and that it is just a coincidence that they did this on the day which I delivered Christmas cards to them. Their story is that Cogan, Police Chief Weathers, and Simpson had to wait for Townsend to return to work in order to ban me, and that she did not return until December 16. Townsend, "They were simply waiting for me to return from my days out of town, to get my statement before they put the ban into place."

(exhibit 8, deposition of Mary Townsend, page 16, line 1-3)

However, Mayor Simpson and Officer Ross both testified that

the decision was made on December 16, after they saw the Christmas cards.

56. Payroll records prove that Mary was at work for the entire work week of December 16th. She was at work on Monday 12th, Tuesday 13th, Wednesday 14th, Thursday 15th, and Friday 16th; which includes 4 full days at work prior to their ban day. Townsend and Cogan have been caught in their lie. This is a clear example of Perjury on the part of Cogan and Townsend. (exhibit 52, Townsend's Timesheet)

57. Mary Townsend wrote in· her signed affidavit, "After determining that it was necessary to ban Mr White from the Center, Mr Cogan, Mayor Simpson, and Chief Weathers waited for a day or two for me to return from out of town to initiate the ban so that I could provide a written statement. On the day that I returned to work, Ms Barnes informed me that Mr White had brought her a wrapped Christmas present and card to her at the Aquatics Center." Townsend stated that they waited for her to return to work, and that she returned on the same day that I delivered the

cards and gift, which was December 16.

(exhibit 9, affidavit of Mary Townsend, point 14, 15)

58. Mary Townsend testified:
[Townsend] I believe it was the day I came back from Iowa. We met and they asked me to give a written statement. [Q] Would that have been the day that he was banned? [Townsend] Yes....
(exhibit 53, deposition of Mary Townsend, page 13, line 7-10)
[Townsend] .....He had brought her a gift, and that was the day I came back.
(exhibit 53, deposition of Mary Townsend, page 15, line 20-21)

59. Tom Cogan wrote in his signed affidavit, "After determining that it was necessary to ban Mr White from the Center, we waited a day or two to initiate the ban so that Ms Townsend, who was out of town, could provide a written statement. On the day that Ms Townsend returned to work, Ms Townsend notified me that Ms Barnes had informed her that Mr White had brought her a wrapped Christmas Present and a card." Like Townsend, Cogan stated that they waited for Townsend to return to work, and her return was the same day that I delivered the cards and gift, December 16. (exhibit 10, affidavit of Tom Cogan, page 2, point 11, 12 )

60. Tom Cogan testified:
[Q] So your affidavit goes on to say, "After determining that it

46

was necessary to ban Mr White from the Center, we waited a day or two to initiate the ban so that Ms Townsend, who was out of town, could provide a written statement." Is that true?

[Cogan] Yes Sir.

[Q] So Ms Townsend was out of town, and then December the 16th is when Mr White was actually banned, is that true?

[Cogan] Yes Sir.

[Q] December the 16th was the first day that Ms Townsend was back in town to initiate the ban and provide her statement?

[Cogan] It was the first day she was back in town to provide her statement.

(exhibit 54, deposition of Tom Cogan, page 16, line 2-10, 15-19)

[Q] When you say in your affidavit that you were waiting..... "After determining that it was necessary to ban Mr White from the Center, we waited a day or two to initiate the ban so that Ms Townsend, who was out of town, could provide a written statement." Is this the written statement that she was providing that you were waiting on before initiating the ban?

[Cogan] Yes.

(exhibit 54, deposition of Tom Cogan, page 25, line 11-19)

61. Townsend and Cogan stated, in their signed affidavits, that they both, along with Mayor Simpson, and Chief Weathers, who was working in his official capacity with the Clarksville Police Department, immediately decided to ban me when they saw the Christmas present and the card. This completely contradicts Townsend's and Cogan's additional story that they decided to ban me days before, and they were waiting on Mary to return to work. Mr Cogan said, "Ms

47

Townsend and I notified the Mayor and Chief Weathers that Mr White had delivered a present and card to Ms Barnes [which remained unopened at that time] and we made the decision to immediately ban Mr White from the Center." Ms Townsend wrote, "I notified Mr Cogan that Mr White had delivered a present to Ms Barnes [which remained unopened at the time], then Mr Cogan notified Mayor Simpson and Chief Weathers of the gift and the decision was made to immediately ban Mr White from the Center."

(exhibit 10, Cogan's affidavit point 13) (exhibit 9,Townsend affidavit point 16)

62. Mayor Simpson and Jeff Ross acknowledged that the Defendants made the decision to ban me from the public facility on the day they read the Christmas cards, December 16, 2016. Jeff Ross was asked, "Was it your understanding that the decision to ban Mr White had already been made or was made that day (Dec16)?" Mr Ross responded, "From my understanding, it was made that day." Mayor Simpson was asked, "What date was the decision to ban Chris White made?" Simpson's answer

was, "December the 16th." Further question, "Was a meeting held to discuss it that day?" Simpson's answer, "Yes." (exhibit 55, deposition of Jeff Ross, page 21, line 8-10) (exhibit 55, deposition of Jon Simpson, page 12, line 19 – 22)

## LAWFULLY ENTITLED

63. The Defendants, Ross, Townsend, Simpson, and Cogan, plus Chief Weathers, individually and in their official capacity as employees of the City of Clarksville, initiated action against me, the Plaintiff, for exercising my rights, under the United States Constitution, the Arkansas Constitution, and federal and state law, to practice my religion in an public forum, which deprived me of rights of equal protection on account of my religious beliefs. It is clear that the actions of these Defendants against me, by issuing me a permanent ban from the Marvin Vinson Aquatic Center, without justification and due process, is a violation of the Federal Civil Rights Act, the Arkansas Civil Rights Act, and the Federal and Arkansas Constitutions.

49

64. I, as a result of the unlawful actions of the Defendants, Ross, Townsend, Simpson, Cogan, plus Chief Weathers, have been deprived of the benefits and privileges of being a citizen of the state of Arkansas, plus the use of the Aquatic Center and Marvin Vinson Building, and I am entitled to such affirmative relief as may be appropriate, including, but not limited to, injunctive relief, attorneys' fees, court costs, and compensatory, economic, and punitive damages, in an amount to be established at trial.

65. The Defendant, Whitney Barnes, individually and in her official capacity as an employee of the City of Clarksville, whether by her own individual initiative, or directed by her employer, has Slandered me, committed Libel against me, and has stripped me of my good name and reputation. I am entitled to compensatory and punitive damages, in addition to attorneys' fees, and court costs.

I, the Plaintiff, ask this Court to perform the Check and Balance duty, as prescribed by our Constitution, on the Executive branch of the City of Clarksville, and I ask this Court to declare and enter judgment against and enjoin Defendants, as specified in this Complaint, and award Plaintiff damages, attorneys' fees and costs plead herein, including but not limited too:

(a) Statutory damages in an amount to be determined at trial;

(b) Punitive damages in an amount to be determined at trial;

(c) Money judgment representing compensatory damages for deprivation of rights, and emotional distress, damage to my reputation, and the humiliation I have had to endure, in an amount to be determined at trial;

(d) For an Order directing the Defendants to reinstate Plaintiff's privileges at the Marvin Vinson Building and Aquatic Center;

(e) For the costs of suit, including an award of reasonable attorneys' fees;

(f) For such other and further relief as may be just and proper.

I, Chris White, the Plaintiff, humbly demand a jury trial.

Respectfully submitted,
CHRIS WHITE, PLAINTIFF

51

## VERIFICATION

I, Chris White, state that I have written the above document, and that the matters and things stated herein are true and correct to the best of my knowledge, information, and belief.

Chris White

Date 07 - 26 - 19

Notary Public

# EXHIBIT 1

## AFFIDAVIT of TOM COGAN

### POINTS 2-9

**(1 page)**

2.      The Marvin Vinson Building is a City owned Community Center which is operated and governed by the City of Clarksville City Council together with the City Parks and Recreation Advisory Board.

3.      The City of Clarksville Aquatic Center is a City owned Aquatic Center located in The Marvin Vinson Building, also operated and governed by the City of Clarksville City Council together with the City Parks and Recreation Advisory Board.

4.      The Community Center and the Aquatic Center are both located within the same building in the City of Clarksville, located at 1611 West Oakland Street in Clarksville, Arkansas. Both Centers share the same parking lot, and visitors to the center share a parking lot with employees of the Center and the Aquatic Center.

5.      Mary Townsend is employed by the City of Clarksville as the Director of the Aquatic Center and has served in that capacity for five years.

6.      Whitney Barnes works as a lifeguard at the Aquatic Center and has worked in that capacity since 09/23/2015.

7.      Emily Rohr worked as a clerk at the Aquatic Center from 02.04.2019 and will be employed at the Center during the Summer of 2018.

8.      Christel Brooks is employed as a clerk at the Aquatic Center and has worked in that capacity since 08/24/2015.

9.      During December of 2016, Mary Townsend approached me about an issue with a customer of the Aquatic Center which she indicated had been going on since approximately June of 2016. Specifically, Ms. Townsend indicated to me that Aquatic Center customer, Chris White (hereinafter, Mr. White), began distracting the lifeguards at the pool by engaging in conversation

**EXHIBIT 2**

**LETTER from MICHELLE FROST**

**(1 page)**



**Michelle Frost**
County Clerk

P.O. Box 57
Clarksville, Arkansas 72830

10/3/2017

Christopher J White is registered to vote in Johnson County in the Spadra Ward 2 precinct. The polling place for this precinct is the Marvin-Vinson multipurpose building located at 1611 Oakland St, Clarksville, AR 72830.

Michelle Frost

Michelle Frost, County Clerk

Jessica Cochran

Jessica Cochran, Deputy Clerk

479-754-3967 • Fax 479-754-2286 • E-Mail JohnsonClerk@ArkansasClerks.com

# EXHIBIT 5

## COPY of FRONT DESK

## CHRISTMAS CARD

### (1 page)

Merry Christmas Mary's Pool Crew

Jesus Loves You

Chris

# EXHIBIT 6

## COPY of WHITNEY BARNES

## CHRISTMAS CARD

### (1 page)

Merry Christmas Whitney

Jesus Loves You



Chris

**EXHIBIT 7**

**PHOTOGRAPH of**

**CHRISTMAS PRESENT**

**(1 page)**



This picture is stored on my iPhone dated December 08, 2016, 2:32pm.

This photo was taken when the box was packed. This is exactly how it looked before the flaps were closed and it was wrapped in Christmas paper.

This is exactly the same view that a person would have when they opened it, which was the intention. The first thing the opener sees is the wording in bold letters.

I still have the exhibit which is pictured here.



This picture is stored on my iPhone dated December 08, 2016, 2:32pm.

This photo was taken when the box was packed. This is exactly how it looked before the flaps were closed and it was wrapped in Christmas paper.

This is exactly the same view that a person would have when they opened it, which was the intention. The first thing the opener sees is the wording in bold letters.

I still have the exhibit which is pictured here.

# EXHIBIT 8

## MARY TOWNSEND DEPOSITION

## PAGE 16

(1 page)

1    uncomfortable," and they were simply waiting for me to
2    return from my days out of town to get my statement
3    before they put the ban into place.
4  MR. HOLMES: (Continuing)
5  Q    And in that gift there was a card that said: "Merry
6  Christmas, Whitney. Jesus loves you," and it was signed by
7  Chris, is that correct?
8  A    Yes. We didn't see any of that until just before Jeff Ross
9  went to deliver the papers to Mr. White.
10  Q    Okay. I'm going to show you a document, and if you
11  could identify that (Handing document to witness).
12  A    (Examining document) What? Identify what?
13  Q    What is that document?
14  A    Oh, I'm sorry. This is the Indoor Pool Rules.
15  Q    Okay. And at the bottom there is something that says,
16  "Signature and date" on that, correct?
17  A    Yes.
18  Q    What's the purpose of the signature and date line at the
19  bottom?
20  A    It was just something that we put on there. You know, we
21  have the rules posted on the wall, but we just put it on there.
22  These are listed on the back side of the applications. We just
23  wanted to make sure that they see the rules.
24  Q    You want them to sign it and date it to acknowledge that
25  they've received the rules, right?

# EXHIBIT 9

## AFFIDAVIT of MARY TOWNSEND

### POINTS 14-17

### (1 page)

statements from Cristal Brooks and Emilie Behr and they conveyed the information set out in their statements attached hereto. *See Exhibit E.*

14. After determining that it was necessary to ban Mr. White from the Center, Mr. Capes, Mayor Simpson, and Chief Weston waited for a day or two for me to return from out of town to initiate the ban so that I could provide a written statement.

15. On the day that I returned to work, Ms. Bennet informed me that Mr. White had brought her a wrapped Christmas present and card to her at the Aquatic Center. Ms. Bennet was disturbed by the gesture, and did not open the card or the gift.

16. I notified Mr. Capes that Mr. White had delivered a present to Ms. Bennett (which remained unopened at that time), then Mr. Capes notified Mayor Simpson and Chief Weston of the gift and the decision was made to immediately ban Mr. White from the Center. The request was made to the police department, and the letter attached as *Exhibit B* to this affidavit was delivered to Mr. White by Sergeant Jeff Rose of the Clarksville Police Department on December 16, 2016. *See Exhibit C,* Incident Report.

17. Since that time, Ms. Bennett has reported to the University of the Ozarks Department of Public Safety that she believes Mr. White was following her, and the University's ban policy has been initiated. *See Exhibit D,* University of the Ozarks Department of Public Safety Incident/Accident Report Form.

Further the Affiant Sayeth Not.

Mary Townsend

**EXHIBIT 10**

**AFFIDAVIT of TOM COGAN**

**POINTS 10-15**

**(2 pages)**

with the lifeguards on duty and obstructing their view of the pool. Eventually, this behavior had become disturbingly more focused on lifeguard Whitney Barnes, and that Mr. White had even changed his swimming schedule so that he was present at the pool during the times Ms. Barnes was scheduled to work. Ms. Townsend stated that she had asked him twice to stop distracting the lifeguards by engaging in excessive conversation, and he had not stopped. Ms. Townsend requested that I talk to Mr. White since he would not listen to her. I suggested that we get Mayor Simpson involved.

10. I then conferred with Mayor Simpson and Chief Westfate about the issues with Mr. White as relayed by Ms. Townsend. We brought Ms. Barnes in to discuss the ongoing issues with Mr. White. During this meeting, Ms. Barnes conveyed the information set out in Exhibit A to this affidavit, to me, Chief Westfate, and Mayor Simpson. This was the first time that Ms. Barnes had brought these concerns to the attention of any person at the City of Clarksville. Based on this information, Chief Westfate, Mayor Simpson, and I agreed that it was necessary to ban Mr. White from the Center, and we initiated that process. Based on Ms. Barnes' statement, we took statements from Cristal Brooks and Emille Suhr and they conveyed the information set out in their statements attached hereto. See Exhibit E.

11. After determining that it was necessary to ban Mr. White from the Center, we waited for a day or two to initiate the ban so that Ms. Townsend, who was out of town, could provide a written statement.

12. On the day that Ms. Townsend returned to work, Ms. Townsend notified me that Ms. Barnes had informed her that Mr. White had brought her a wrapped Christmas Present and a

card. Ms. Townsend relayed that Ms. Barnes was disturbed by the gesture, and did not open the card or the gift.

13.   Ms. Townsend and I notified the Mayor and Chief Weathers that Mr. White had delivered a present and card to Ms. Barnes (which remained unopened at that time) and we made the decision to immediately ban Mr. White from the Center. The request was made to the police department, and the letter attached as Exhibit F to this affidavit was delivered to Mr. White by Sergeant Jeff Ross of the Clarksville Police Department on December 17, 2016. See Exhibit G, Incident Report.

14.   Since that time, Ms. Barnes has reported to the University of the Ozarks Department of Public Safety that she believes Mr. White was following her, and the University's ban policy has been initiated. See Exhibit D, University of the Ozarks Department of Public Safety Incident/Accident Report Form.

15.   Flu shots are available one day a year at the Marvin Vinson Building by the Johnson County Health Unit through the Arkansas Department of Health.

Further the Affiant Sayeth Not.

Jen C+g

Tom Cogan

State of Arkansas     }
                      } ss.
County of Johnson     }

A

EXHIBIT 11

JON SIMPSON DEPOSITION

PAGE 14

(1 page)

1   Mr. White?

2   A   No, sir.

3   Q   Did you ever talk to Mr. White to try to get his side of the

4   story?

5   A   No, sir.

6   Q   Were you aware on December 16, 2016, that Mr. White had

7   provided a gift to Whitney Barnes?

8   A   Yes, sir.

9   Q   Who is Whitney Barnes?

10   A   A lifeguard at the Clarksville Aquatic Center.

11   Q   Are you aware that that gift included a card that said,

12   "Merry Christmas, Whitney. Jesus loves you." and was signed

13   by Mr. White?

14   A   Could you clarify?

15   Q   Were you aware that on that day, December 16 of 2016,

16   that the gift that Mr. White had provided Ms. Barnes contained

17   a card that said, "Merry Christmas, Whitney. Jesus loves you."

18   and was signed by Mr. White?

19   A   Not until after I seen it.

20   Q   And when would you have seen it?

21   A   At the meeting.

22   Q   Would that have been before or after you made the

23   decision to ban Mr. White?

24   A   I'm not sure.

25   Q   I would imagine the meeting would have happened before

EXHIBIT 12

JEFF ROSS DEPOSITION

PAGE 19, 20

(2 pages)

1    Five and attached at Tab Five.)

2  MR. HOLMES: (Continuing)

3  Q    Why would you have needed to obtain a statement from

4  Emilie Rohr two months after the ban was in place?

5  A    I had learned some information that she had also been

6  harassed or spoke with at length with Mr. White, so to follow

7  up.

8  Q    Why would that matter?

9  A    It was part of the investigation that just would further

10  what I had on paper to support what we had done.

11  Q    He had already been banned by that point, right?

12  A    Yes, sir.

13  Q    Did you review the gift that Mr. White had left for Ms.

14  Barnes at the Aquatic Center on December 16th?

15  A    As far as review, do you mean opened?

16  Q    Yeah.

17  A    I mean, what do you mean?

18  Q    Did you see what it was?

19  A    Yes, sir.

20  Q    What was it?

21  A    It was a gift-wrapped box with a piece of paper taped on

22  the top, and inside it contained two bags of Skittles and one

23  tumbler.

24  Q    And the card that was a piece of paper as you referred to

25  it, what did it say?

1    A    I can't tell you just word-for-word.

2    Q    Okay. Did it say something along the lines of, "Merry

3    Christmas, Whitney. Jesus loves you," and was signed by him?

4    A    Yes, sir.

5    Q    Okay. And you reviewed the indoor pool rules in making

6    your decision and put it in your report to support the ban of

7    Mr. White, correct?

8    A    Yes, sir.

9    Q    Okay. Was this a copy of what you would have reviewed

10    (Handing document to witness)?

11    A    Yes, sir.

12    Q    Okay.

13         MR. HOLMES: I want to offer this as Plaintiff's Six.

14         (Whereupon, the Indoor Pool Rules for Clarksville

15      Aquatic Center were marked as Plaintiff's Exhibit Six and

16      attached at Tab Six.)

17    MR. HOLMES: (Continuing)

18    Q    Where on that would it say that talking to the lifeguards

19    would be a violation of the rule?

20    A    It was discussed that day. It was part of the

21    inappropriate behavior.

22    Q    So it was discussed that day by who?

23    A    Ms. Townsend and Mr. Cogan and the mayor.

24    Q    So that talking to the lifeguards was considered

25    inappropriate behavior in violation of Rule 10?

# EXHIBIT 13

## JEFF ROSS BAN LETTER

### (1 page)





**Clarksville Police Department**

1008 W. Main Street
Clarksville, AR 72830
Phone: 479-754-8100  Fax: 479-754-2191

December 16, 2016

Chris White
DOB 7-29-70
#6 Parkway
Clarksville, AR 72830

Chris White:

Pursuant to the policy and procedures of the Marvin Vincent Building including the Aquatic Center of the City of Clarksville, this is to notify you that you are not permitted to enter the premises of or upon the property of, identified as 1611 Oakland St, Clarksville, AR 72830, including parking lots, grassy areas and sidewalks under any circumstances. This is a permanent ban from the property.

In the future, if you return to the property of the Marvin Vincent Building including the Aquatic Center as identified above, even if you are accompanied or invited by a guest or resident, you may be subject to arrest and criminal prosecution for Trespassing.

Trespassing is a misdemeanor offense in which you could face jail time.

A copy of this notice will remain on file.

Sincerely,

Sgt. Jeff Ross

*"Committed to a Better Community"*

**EXHIBIT 15**

**JEFF ROSS POLICE REPORT**

**(3 pages)**

| Status | Exception Clearance | Date | | Reporting Officer | | ORI/Agency |
|---|---|---|---|---|---|---|
| Closed | | Not Applicable | | PD12 Ross, Jeff | | AR0360100 |
| | Assigned Officer | | | Entered By | Approving Officer | |
| | | | | Jross | Kennedy, Kenneth | |
| | Assisting Officers | | | | | |

**Complainant**

| Name | | | | Contact Name | |
|---|---|---|---|---|---|
| City Of Clarksville | | | | | |
| Business Address | | | | | Business Phone |
| 205 Walnut ST, Clarksville, AR 72830 | | | | | |

**Offenses**

| Incident Location | | | | Zone | |
|---|---|---|---|---|---|
| ** MARKED ** | | | | | |

| Earliest Possible Date | Time | Latest Possible Date | Time |
|---|---|---|---|
| 12/15/2016 | 16:06 | 12/16/2016 | 16:30 |

| # | Statute/Code | Description | | Finished | Att/Comp | Loc | Bias | | Wpn | CA Types |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | BANNED | SERVICE OF BAN FORM/CRIMINAL TRESPASS NOTICE | | Misd | Completed | 25 | 88 | 88 | |

MO

| | | | | Method Of Entry | # Prem |
|---|---|---|---|---|---|
| | | | | n/a | 0 |

| Location Types | | | | Bias Motivation Codes | |
|---|---|---|---|---|---|

Suspected Of Using — None

Criminal Activity Types

Weapon Type(s)

| **Victims** | # Contributions | | Reporting Required 1 |
|---|---|---|---|
| Name | | | Contact Name |
| City Of Clarksville | | | |
| Business Address | | | Business Phone |
| 205 Walnut ST, Clarksville, AR 72830 | | | |

| Victim Type | Injury Type | Aggravated Assault/Homicide Circumstances | Relationship To Suspect |
|---|---|---|---|
| Government | None, | None | #1 N/A |

| Justifiable Homicide Circumstances | | Taken to: (Hospital Name) |
|---|---|---|
| | None | |

Injury Description

**Victim #2**

Event #: Related

| SSN/DTN ** MASKED ** | Title Ms | Name ** MASKED ** | | | DOB ** MASKED ** | Age 16 | Sex U | Resident Status Resident |
| Race White | Ethnicity Not Hispanic/Latino | | Home Phone ** MASKED ** | Work Phone ** MASKED ** | Other Phone ** MASKED ** | | DL (#, ST) ** MASKED ** | |

| US Citizen Yes | Legal Alien | Doc Type | | Immig Doc # | | Nationality | | |

| Home Address ** MASKED ** | | | | | | Employer Aquatic Center | | |

| Work Address | | | | | | Occupation | | |

| Victim Type Individual | Injury Type None | | Aggravated Assault/Homicide Circumstances None | | | Relationship To Suspect #1 N/A | | |

| Justifiable Homicide Circumstances None | | • | | Taken to: (Hospital Name) | | | | |

Injury Description

**Suspect #1**

| SSN/DTN ** MASKED ** | Title Mr | Name White, Christophe | | | DOB ** MASKED ** | Age 46 | Sex M | Resident Status Resident |
| Race White | Ethnicity Not Hispanic/Latino | | Home Phone ** MASKED ** | Work Phone ** MASKED ** | Other Phone ** MASKED ** | | DL (#, ST) ** MASKED ** | |

| US Citizen Yes | Legal Alien | Doc Type | | Immig Doc # | | Nationality | | |

| Home Address 8 Parkway Street ,Clarksville, AR 72830 | | | | | | Employer | | |

| Work Address | | | | | | Occupation | | |

| Height • | Weight • | Eyes | Build | | AKA | | | |

**Suspect's Statements**

## Narrative - Ross, Jeff - 12/16/2016 (in list)

On 12-16-16 Sgt. Ross was contacted by Shawn Woodward (father of Whitney Barnes), who advised his daughter is an employee of the Aquatic Center and was being harassed by a patron. Ms. Barnes identified the patron as Chris White. Ms. Barnes advised that she had spoken with Mary Townsend (manger) and Tom Cogan (director) in reference to Mr. White's behavior. Ms. Barnes advised in the past he has kept her from performing her duties as a lifeguard by talking with her in length. It was advised that Mr. White has made sexual remarks to Ms. Barnes and other lifeguards while at the Aquatic Center. Ms. Barnes advised that Mr. White uses obscene language and has given her a unwanted hug in the past. On 12-16-16 Ms. Barnes received a wrapped present from Mr. White, which made her very uncomfortable. Ms. Barnes contacted Mrs. Townsend and Mr. Cogan, who had her fill out a statement.

Sgt. Ross met with Tom Cogan and Mary Townsend in reference to these incidents. Mrs. Townsend advised that she had spoken to Mr. White on two different occasions in reference to him distracting the life guards on duty. Mrs. Townsend advised Mr. White has continued to distract the life guards anyways. Mrs. Townsend advised she has been notified by several employees that Mr. White has made various comments that where in a sexual manner in front of them and other patrons while he has been there.

Mrs. Townsend provided a written statement along with Mrs. Barnes to Sgt. Ross. Sgt. Ross obtained a copy of the rules and regulations for the Aquatic Center. It was decided that Mr. White would be banned from the facilities due to his actions that violate the policies that have been adopted by the Aquatic Center/ Marvin Vincent Center.

Sgt. Ross went to #8 Parkway and spoke with Mr. White in reference to him being banned from the Aquatic Center / Marvin Vincent Center. Mr. White was advised that he was now banned from the facilities and that if he was located on the premises, he would be arrested for Criminal Trespassing. Mr. White was also advised not to have any contact with any of the employees while they are at the facilities by any means. Mr. White was also advised that Ms. Barnes did not want him to contact her or come around her from this point. Lastly Mr. White signed for the gift that he gave

Copyright RelativityInc.© - RFB(Relativity Public Safety)

| Incident # | 16-02434 |
|---|---|
| Page | 3 of 3 |

**Clarksville Police Department**
Incident Report

| Report Date | 12/19/16 |
|---|---|
| Report Time | 8:08 PM |

Narrative & Statements

Narrative - Ross, Jeff - 12/19/2016 (initial)

Ms. Barnes, which was two bags of candy and a tumbler.

.

·

EXHIBIT 16

WHITNEY BARNES DEPOSITION

PAGE 11, 12, 14

(3 pages)

1   attended The Journey several times.

2   Q   So the discussions that religion was brought up about

3   between you and Mr. White, that was also surrounding illness

4   conversations or --

5   A   Yes.

6   Q   Okay. And so but you're saying the time that it was

7   brought up about you being treated at St. Jude, there was

8   never religion discussed after you told him that?

9   A   Yes, there was religion discussed around that time, but it

10   wasn't immediately following that conversation.

11   Q   Okay. How long after?

12   A   It was discussed before and after.

13   Q   Okay. Did you review any documents in preparation of

14   your deposition today?

15   A   My statement.

16   Q   Okay.

17   A   Did you discuss anything with any other individuals prior

18   to your deposition today?

19   A   Other than the City attorney, no.

20   Q   Okay. And when you say the City attorney, is that Ms.

21   Monaghan or is that Mr. Wilson?

22   A   Ms. Monaghan.

23   Q   Okay. There's mention in documents that's been

24   produced, specifically the police report from December the 16th

25   of 2016, it talks about and refers to an individual by the name

1   of Shawn Woodward as the father of Whitney Barnes. Is he

2   your father or your stepfather?

3   A   My stepfather.

4   Q   Okay. How long has he been your stepfather?

5   A   Since I was four.

6   Q   Is he still married to your mom?

7   A   They actually just got divorced.

8   Q   You say "just got divorced." Like yesterday or like a

9   month ago?

10   A   Like probably a month ago. I don't know the exact time

11   that the papers went through.

12   Q   Is your biological father still living?

13   A   Yes.

14   Q   Okay. What's his name?

15   A   Kevin Barnes.

16   Q   Do you know where he lives? Not necessarily an address,

17   but just a town.

18   A   He lives in Clarksville.

19   Q   Okay. Do you have a relationship with him?

20   A   Somewhat.

21   Q   What's your relationship like with him?

22   A   We see each other every now and then, we go out and eat

23   every now and then, but he's not my father figure.

24   Q   Okay. Is there a reason for that?

25   A   He was not around when I was growing up.

A    -- conversation, yes.

Q    Okay.  Do you recall ever discussing issues with your stepfather with Mr. White?

A    Yes.

Q    Okay.  What kind of issues did you discuss with Mr. White about your stepfather?

A    Me and him did not get along very well.

Q    Okay.  Why not?

A    His actions towards my mother.

Q    Like what?

A    Him and my mom used to fight a lot, and if he was drinking then the fights ended up physical.

Q    Did you ever tell Mr. White that your stepfather had sexually abused you?

A    No.

Q    Has he ever sexually abused you?

A    No.

        MS. MONAGHAN:  Objection.

Q    Why did your stepfather call the Clarksville Police Department on December the 16th of 2016?

A    I believe it was the day that the present was delivered to the Aquatic Center, and he didn't like the fact that somebody as old as Chris was paying so much attention to me, as any father would.

Q    Okay.  How did he know?

# EXHIBIT 17

# JEFF ROSS DEPOSITION

# PAGE 15

# (1 page)

1  Department Incident Report was marked as Plaintiff's

2  Exhibit Two and attached at Tab Two.)

3  MR. HOLMES: (Continuing)

4  Q  In that report it states, "In the past he," I'm assuming

5  you're referring to Mr. White, "has kept her from performing

6  her duties as a lifeguard by talking with her at length."

7  Did you inquire with Ms. Barnes how long ago that was?

8  A  No, sir. I had not talked to Ms. Barnes at that time.

9  Q  You hadn't?

10  A  No, sir.

11  Q  So you were getting that information from who?

12  A  That was, her statement was provided to me through

13  Mary, the Director of the Aquatic Center, Mary Townend.

14  Q  All right.

15  To your knowledge, have you ever taken any other kind of

16  statement from Whitney Barnes?

17  A  Have not taken any other statements, sir.

18  Q  In this report it states that sexual remarks were made by

19  Mr. White to Ms. Barnes and other lifeguards while at the

20  Aquatic Center. Are you saying that came from Ms. Barnes or

21  that came from other individuals?

22  A  One was in Ms. Barnes' statement, and the other is when I

23  obtained the --

24  Well, first of all, this was written after everything was

25  completed, okay?

EXHIBIT 18

WHITNEY BARNES DEPOSITION

PAGE 22, 23

(2 pages)

| | |
|---|---|
| 1 | Q    Okay.  What was discussed there? |
| 2 | A    The situation with Chris White. |
| 3 | Q    What did you tell them? |
| 4 | A    I told them exactly what I put on the statement. |
| 5 | Q    Okay.  When did you ultimately draft the statement? |
| 6 | A    I don't know the exact date. |
| 7 | Q    Okay.  When did you provide it to Mary? |
| 8 | A    The same day I wrote it. |
| 9 | Q    Okay.  But you don't know when that was? |
| 10 | A    No. |
| 11 | Q    Was it after December 16th or was it before December the |
| 12 | 16th? |
| 13 | A    I honestly don't remember. |
| 14 | Q    Tell me what happened on December the 16th after your |
| 15 | dad or stepdad called the police department. |
| 16 | A    I don't know what happened with that because I wasn't |
| 17 | there when it happened. |
| 18 | Q    So you left after -- You were gone by the time the police |
| 19 | got there? |
| 20 | MS. MONAGHAN:  Object to the form. |
| 21 | A    I didn't know the police were ever at my house. |
| 22 | Q    At the Aquatic Center. |
| 23 | A    Yes, I guess I did. |
| 24 | Q    Guess you did what? |
| 25 | A    Leave before they got there, because I don't recall seeing |

1    the police that day.

2    Q    So on the 16th of December when Mr. White had delivered

3    the present to you at the Aquatic Center, you say you called

4    your mom, your mom told your stepdad, stepdad called the

5    police, and then you don't recall the police showing up at the

6    Aquatic Center?

7    A    I had already left the pool when I called my mother.

8    Q    So did you talk to Jeff Ross at all at the Aquatic Center on

9    December the 16th?

10    A    Not that I recall. It's possible, but I don't remember it.

11    Q    Did you provide him a written statement on December the

12    16th?

13    MS. MONAGHAN:    Object to the form.

14    A    I remember providing a written statement at some point,

15    but I don't remember the date.

16    Q    I'm going to show you that document and see if you can

17    identify it (Handing document to witness).

18    A    (Examining document) Yes, sir.

19    Q    What is that document?

20    A    This is my statement that I made.

21    Q    Okay.

22    MR. HOLMES:    I'm going to mark it as Plaintiff's

23    Exhibit One.

24    (Whereupon, the typed statement of Whitney Barnes

25    was marked as Plaintiff's Exhibit One and is attached at

# EXHIBIT 19

## JOHN LOVETT EMAIL

(1 page)

On Oct 3, 2018, at 10:25 AM, Lovett, John <jlovett@swtimes.com> wrote:

Chris,

Sorry I wasn't able to call yesterday. I had some car problems that needed to be tended to.

I did go to Pacer.gov though and downloaded your complaint. Have you spoken with your attorney Kevin Holmes about speaking to the press before your trial?
You may want to.
There are allegations of harassment and "sexual remarks" made by you to the lifeguards in this case that create a wedge within your First Amendment complaint.

To write a story on this I will need to know what you said to the lifeguards at the aquatic center, and what was in the wrapped present that made her feel uncomfortable. Of if she even opened the present. I will also need to know the age of the girl you were presenting a present to. It appears she was not over 18 if she had her father call the police. I see your birth year is 1970. Essentially, I'll be telling both sides of the story as required and it doesn't look too good for you.
For any casual observer, your letter expressing a religious sentiment is not germane to what appears to be the real reasons you were banned from the aquatic center.

JL


**TIMES RECORD**
John Lovett
Business Reporter
Office: (479) 785-7700 ext. 1340
swtimes.com

This message may contain confidential and/or privileged information. If you are not the intended recipient or authorized to receive this for the intended recipient, you must not use, copy, disclose or take any action based on this message or any information herein. If you have received this message in error, please advise the sender immediately by sending a reply e-mail and delete this message. Thank you for your cooperation.

**EXHIBIT 20**

**JOHNSON COUNTY**

**GRAPHIC**

**(1 page)**

# Police Report

*(body text too faded to transcribe reliably)*

**Dec. 17**

**Dec. 18**

**Dec. 16**

**Dec. 18**

**Dec. 19**

**Dec. 21**

## Courthouse News

## Social Security

*by Floyis Dills*

*Social Security Public Affairs Specialist in Little Rock*

### With The New Year Comes New Changes



From Your Friends at
## TRI-COUNTY
### VETERINARY SERVICES

**Keep Your Pet Safe During The Holidays!**

## Be Aware of these Holiday Pet Dangers!

1. Holiday Ornaments, tinsel and ribbon pose choking and GI blockage hazard.

2. Lighted Candles and exposed electrical cords.

3. Food to be avoided: fatty trimmings (can lead to pancreatitis), chocolate (toxic), bones (GI blockage or perforation) and nuts (toxic).

4. Plants to be avoided: holly, poinsettia, mistletoe and pine needles can all cause serious illness, and sometimes lead to death.

**479-754-9090**
24 Hour Emergency Service Available

EXHIBIT 21

JON SIMPSON DEPOSITION

PAGE 18

(1 page)

A    No, sir.

Q    So when you say that you considered a written document provided by Ms. Barnes in banning Mr. White from the facility, what document are you talking about?

A    One that's in my paperwork.

Q    Okay. These are the documents that were provided when I asked that statement. This is what was provided, but I just asked you to identify it and you said you can't identify this, so is this or is this not the document you considered and reviewed in banning Mr. White from the facility?

            MS. MONAGHAN: Object to the form.

A    I can't remember all the words that she wrote, sir, to be truthful.

Q    Okay. So you don't know what document you reviewed when you made that decision?

            MS. MONAGHAN: Object to the form.

A    Yes, I do know the document I reviewed.

Q    Okay. Is this the document that you reviewed that starts out "My name is Whitney Barnes and I'm working at the Clarksville Aquatic Center for just over a year now"?

A    I'm not sure.

Q    Did you ever ask Ms. Barnes if she had any encounter with Mr. White outside of the Aquatic Center?

A    No, sir.

Q    Did you ever ask if she had ever been on a date with Mr.

# EXHIBIT 22

## JEFF ROSS QUESTIONAIRE

### (1 page)

1. Does Sgt Ross remember making the statement, on December 16th, to Chris White, "I know you didn't do anything wrong?" What did Sgt Ross mean by that?

2. Why was Chris White banned from the Marvin Vincent /pool, on December 16th?

3. Did Sgt Ross ask Mary Townsend for copies of the two alleged warnings?

4. From police report: "It was advised that Mr White has made sexual remarks to Ms Barnes and other lifeguards while at the aquatic center." Can Sgt Ross give any specifics? Does Sgt Ross believe the allegations?

5. From Graphic: "...where employees reported the subject had harassed them and made sexual remarks to them." Can Sgt Ross give any specifics? Does Sgt Ross believe the allegations?

6. Is there any evidence that Sgt Ross was able to uncover, by his investigation, that would support that Mr White was sexually harassing employees at the MV Center / aquatic center?

7. In Sgt Ross' professional opinion, does it seem strange that if all of these allegations were happening at the pool, that Sgt Ross would only be called to the location when a Christmas gift was given which stated that, "Jesus loves you (Ms Barnes)?"

8. What is Sgt Ross' professional opinion of what happened in this case?

EXHIBIT 23

CHRIS WHITE DEPOSITION

PAGE 81

(1 page)

| | | |
|---|---|---|
| 1 | A | Well, that's her name. |
| 2 | Q | Her name is Whitney. |
| 3 | A | Well, I'm not calling her Whitney, I'm calling her Barnes. |
| 4 | Q | After you were banned, did you ever go and try to discuss |
| 5 | | the ban with anyone at the City? |
| 6 | A | Yes, ma'am. |
| 7 | Q | Who? |
| 8 | A | Jeff Ross. I asked him, "What's my due process here?" |
| 9 | | And he said, "Well, you've got to talk to the Mayor." And I |
| 10 | | said, "Should I go talk to the Mayor?" He said, "No, don't do |
| 11 | | that, just go talk to the Mayor, he made the decision." There's |
| 12 | | another person that told me he made that, that's what I |
| 13 | | remember. |
| 14 | | So he gave me the Mayor's address, which was this |
| 15 | | building, and maybe a phone number. That was on a Friday. . |
| 16 | | The next Monday I came right down here to this office and |
| 17 | | requested to talk to the Mayor and I was talking to his |
| 18 | | secretary. I don't know if he was here or not. And she gave |
| 19 | | me a really hostile look and told me, "The Mayor refuses to |
| 20 | | meet with you." |
| 21 | | And other than that, probably that next week, that was |
| 22 | | when I went and talked to Jeff Ross, even though I knew he |
| 23 | | wasn't going to reinstate me. I mean, he didn't have the ability |
| 24 | | to do that. But I did want those questions answered. |
| 25 | | So I wasn't necessarily meeting him to get reinstated |

# EXHIBIT 24

## HAMBY WILSON

## CORRESPONDENCE

### (1 page)



# CITY OF CLARKSVILLE

*Mayor*
Billy Helms
*Clerk/Treasurer*
Barbara Blanchard
*City Attorney*
Bruce Wilson

305 Walnut Street
Clarksville, AR 72830
Phone 479-705-6160
Fax 479-705-6161
Email: clvlaw@yahoo.com

*City Council*
Eddie King
Adam Mark
Bruce Schwab
Mark Rogers
Roy Rogers
Frances Wah

February 16, 2017

Michael Hamby
Attorney at Law
P.O. Box 395
Greenwood, AR 72936

Re:    Chris White

Dear Mike:

The City has just presented me with your letter of February 8, 2017.

I am going to review the contents thereof together with their information concerning the matter and I will be getting back to you as quickly as possible.

In the meantime if you have questions, please feel free to contact me.

Very Truly Yours,

Bruce N. Wilson

BRW: ms

cc:    City of Clarksville

# EXHIBIT 26

# WHITNEY BARNES

# WORK REPORT

# (3 pages)

My name is Whitney Barnes. I've been working at the Clarksville Aquatic Center for just over a year now. In the time I've been working here, I've noticed there is one man in particular who makes not only employees, but customers as well, exceedingly uncomfortable. His name is Chris White. He has a vulgar mouth, tells inappropriate stories, and makes predacious comments. In addition, I have noticed over the past couple months that this man has been overly attentive, to me in particular. Since then, I've been asked to compile a list of all the inappropriate things I can't think that he's done since my initial arrival at the facility.

I'd like to start with the stories that he's told other employees. A few months after I started working here, he told Emilie a story about some woman. He tried to discuss with her the "kink" that this woman was into. He also tried to tell Emilie about how he used to wrestle and he use his wrestling moves on this woman. He went on to try and demonstrate what he had done. Another story I have heard was from Christal. Chris told her that he had a "lust for Audrey that he couldn't suppress." I don't remember the exact story for each of these instances. To get that information, you would have to speak to those individuals.

Also, I'm going to list the places where he has shown up that I'm at. Chris has shown up at the U of O as I'm walking to class. He was not actually on campus. He was driving by and slowed down to try to talk to me. This made me uneasy, so I quickly dismissed him and told him I was late for class. He has told me where he lives, and he told me that he has no family or close friends close near by. Due to these things, I know that there is no reason that he would be headed out of town by the University of the Ozarks. I have also seen him around town. I see many patrons around town other than just him, but I see Chris an unusual amount. Plus, I see him much more often now that I've started working the morning shift. I would also like to note that whenever I started working the morning shift, he changed the time he came to swim as well.

Next I'm going to list all the things that he's done. He himself has told me that there are few people that come to the pool but he know does not like him, for example, he mention Clayiena Haye-Wyskup. He told me that he purposely says things to bother her whenever they are here at the same time. Also, whenever I'm at the life guard table writing down the names as people come in, he will pull a chair up from the table in front of the office window. Chris puts the chair by where I am, and tries to talk to me the whole time I'm there. Sometimes, when I go to walk away from him when he was talking to me, he will follow me around. He also tries to get me to come to sporting events he referees. For example, he refereed a wrestling match at the U of A few weeks ago. He tried to get me to go and watch him referee, and got mad at me when I didn't go. Chris White also try to ask me personal questions, specifically questions about my family. One day, hoping it would scare him just a little bit, I told him that my brother is a Marine. I have also seen him follow me and my boyfriend out of the U of O one day. We were leaving the U of O, and I saw his green truck pull out behind us out of the old boxing ring parking lot. He followed us the whole time we were in town, right up until we went back to the U of O. He also got my phone number. I always leave my phone on the guard table in case of bad weather or a message from Mary. Whenever one of those events occurs, I have noticed him trying to watch me put in my password. One day, I got up to do in cleaning; when I came back to where my phone was, I saw he had it in his hands. I asked him how he got in it and why, and he told me that he was just looking at it, and that he had watched me put in my password. Later that day he put me in a group chat with other CAC employees and a few people I don't know.

Now, I'm going to write about the things he has tried to discuss with me. Chris always tells me that he is strong. He constantly tells me about how often he works out. Also, he has told me, in extensive detail, where he lives. Chris tells me about the medications he takes her has taken, and how those that have affected his "sex drive." Yes I tried to talk to me about the medications I was taking her have taken before. It is no secret to anyone here that I have ADHD and that must be medicated for it. He tries to tell me about the women he's been with and his "sexual conquests." He always wants to talk about my relationship. This next topic particularly disturbs me due to the circumstances of the situation. Chris tries to talk to me about my cheer practice. It is no secret to anyone that knows about the U of O that the cheerleaders practice in their sports bras and Nike Pro shorts. When trying to discuss the topic, he asked if people ever come to watch practice. It was almost as if he was trying to see if people were allowed to watch and testing the water to see if he could come sit in on a practice. He did not directly say this, but that was my impression. He also tries to talk to me about how someone in his family is sick. I feel like he is trying to get me to feel bad and talk to him. I feel bad and don't wish to be disrespectful. Due to this I feel like it is inappropriate and rude to be dismissive towards a paying customer. Although, I do sense that he is seeking out pity. He also wishes to discuss my childhood and his as well. He asks me personal questions like where I lived, what sports I played, what I wanted to be even I was young, and my siblings, just to list a few. When he talks about his childhood, he essentially tries to tell me his whole life story. He tries to discuss religion as well. He wouldn't quit talking about it one day, so I politely asked him to stop. He proceeded to ask why. I told him because I am not religious and I need to do my job. Now that he knows and I'm not religious, he won't leave me alone about the topic. He constantly tries to push his religion on me and basically told me that I'm stupid because of what I believe. He does not right out say those words, but I can tell but that is what he is implicating. He also told me that whenever he was in college, him and his buddies used to drug girls at parties. The very next thing he said to me was "Are there any good parties at the University? You go to parties right?"

Finally, I'm going to list other important instances that did not fall under the previous topics. Chris White tries to stir conflict among other employees. He tried to get me to bad-mouth my fellow employees, including my bosses. There is one instance specifically that I can think about that he has mentioned many times over the past few months. Chris believes that Wendy does not like him, therefore he has decided that he does not like her. Because of this, he always goes around telling anybody that will listen, that Wendy is a lesbian. He also knows what I drive he was talking one day about his truck and said something to the effect of "You drive that little Cobalt with the princess sticker on the back window right?" I had never mentioned anything about what I drive to him. He also has his like a sailor. I find it to be extraordinarily inappropriate. He also bashes women. He doesn't directly do this, but for example, if I say something about the weather, he directly tells me that I'm wrong and stupid for thinking so. He then goes on to explain why. He has also told me "Women are stupid." Chris is also told me, he always drives an S10 truck because they're so common. He said that he did not want a truck that is easily identifiable. His statement struck me as creepy and odd. Also, there was one time he was talking about a swim meet. He was just rambling on, and then he asked my opinion on Speedos. I told him that I don't have an opinion comic trying to be dismissive, and he proceeded to tell me that he was going to start wearing one and see what I thought. That is not verbatim, but it is the general gist of what he said. He also got me a christmas present. Finally, about three weeks

ago, I filed a report at the school. I was walking to my car one morning on my way to work, and a man tried to grab me as I was getting in. I know that I have no proof of who it was, and to be entirely honesty, I don't know who it was, but I thought this was important to mention.

I know that I was not the best at dismissing Chris all the time. That was my bad. I did try though. I would tell him that I had to go do cleaning, or that I was too busy to talk, or something of this nature. There were some days though that I did not even try, and that is my bad. It was very time consuming and distracting just trying to get him to leave me alone. Sometimes is was just not worth dealing with him. There were times when it was less distracting to let him sit and ramble on than to try and get him to leave me alone. I do admit some fault and I am profusely sorry for this.

EXHIBIT 27

CHRISTAL BROOKE

WORK REPORT

(1 page)

My name is Christal Brooks and I have been working at the Aquatic Center since August 2015. I meet Clark White when I started working here. He was VERY VERBAL and VERY LOUD with his words to the point I wanted to pull my hair out and was in hopes someone would come to my rescue. Some of the things he would say were very inappropriate and would make me sick to hear. He would tell me that if he was Audrey Schexler's husband he would spank her every night because she makes him lust after her by wearing the swimsuit that she HAS to wear to work. He would make me very uncomfortable when I would be working in the back utility room and he would basically trap me and then he would tell me his whole life story and try to start an argument with me by asking what I thought about things in the Bible, clothing and basically the way people look. He would try to wrap everything around the Bible and then in the next sentence he would curse. I have also heard him in my office in a heated conversation with another male in the male's restroom where it was one curse word after another to the point that I had to tell him to stop. I have come to work and would see him hanging around our young lifeguard Whitney Barnes and making her feel uncomfortable as well because she felt that she had to stay there and talk to him. It would give me a very uneased feeling and I would have to ask her to do something for me so that she could get away from him. He told me one day that he would go buy me some cargo pants just so he didn't have to lust after me because I wore workout pants to work in. He asked me if God would approve of me wearing those because it was a sin and that I made him lust. He has to be one of the most arrogant people that I know and he did not have a problem expressing his feelings. I have seen him with several of our patrons and my boss Mary Townsend trying to stress his opinion about things to them and how this facility should be run.

Christal Brooks
2·16·17

# EXHIBIT 28

# TOM COGAN DEPOSITION

# PAGE 22

# (1 page)

1    Q    Did you take any other statements from any other

2    employees of the City of Clarksville in making your decision or

3    as part of the investigation to ban Mr. White?

4    A    No, sir.

5    Q    I'm going to show you this document and see if you could

6    identify it (Handing document to witness)?

7    A    (Examining document)

8    Q    Do you recognize it at all?

9    A    It's in our packet.

10    Q    Had you seen it prior to me showing it to you?

11    A    In our packet.

12    Q    Okay. What is that document?

13    A    Christal Brooke's statement.

14    Q    Okay. And was that a statement that was used in

15    consideration for banning Mr. White from the Aquatic Center?

16    A    No.

17    Q    Okay. I'm going to show you this document and see if you

18    could identify it (Handing document to witness).

19    A    I've seen it in our packet.

20    Q    Okay. What is it?

21    A    Statement from Emilie Rohn.

22    Q    And was this considered at all in making the decision to

23    ban Chris White from the Aquatic Center?

24    A    No, sir.

25    Q    So you didn't consider any other statements made by

**EXHIBIT 29**

**EMILIE ROHR EMAIL**

**(1 page)**

**Jeff Ross**

From:          Emilie Rohr <emilie_rohr@yahoo.com>
Sent:          Thursday, February 16, 2017 1:16 PM
To:            Jeff Ross
Subject:       Statement

One day when Chris White walked in to the Aquatic Center he started a conversation with me which was nothing unusual as he's an extremely talkative person. He was telling me about his job as a referee for a wrestling tournament. He was discussing moves that were illegal when he described a move that involved placing your arms under the opponents arms and then your hands behind their head. I asked him how that was harmful to which he told me that it was a good way to control a woman from behind.
That was the conversation that stood out to me the most because of how awkward and uncomfortable it was.
Hope this helped.

Sent from Yahoo Mail for iPhone

EXHIBIT 30

POOL RULES

(2 pages)

## Indoor Pool Rules

1. Every member/guest entering the pool area must purchase a ticket [daily entry fee $6.00] or membership card before entering the pool area. Every ticket/membership ID card must be scanned and placed on the table [inside pool area] each time you enter the pool area.

2. Misuse of membership cards may result in your membership being terminated.

3. Pool scheduling/hours will change periodically. Pool will be closed for public swimming during swim meets, inclement weather and maintenance. Notices will be posted whenever possible but could happen without notice. Please check bulletin board in front lobby for current class and swim team schedules. All event scheduling [meetings, classes, private lessons etc.] must be arranged/approved through management.

4. Anyone 11 years of age or younger must be accompanied by an adult at least 18 years old.

5. You must be at least 16 years old to use the therapy pool during normal business hours.

6. Anyone who wears a diaper or is prone to fecal accidents must wear a swim diaper. Diapers are available in the front office. Please note: We follow the procedures/guidelines for disinfection and management of fecal accidents [and other related accidents] set by the Centers of Disease Control and the Arkansas State Health Department. In case of such an occurrence we must close the pool until the area is treated and cleaned.

7. No PDA [Public Display of Affection] that is inappropriate for a family environment.

8. No cut-offs or jean shorts are allowed in the pool.

9. No dripping wet swim suits in hallways, please dry off in pool deck area.

10. No obscene language, crude or inappropriate behavior will be tolerated.

11. No running, pushing or rough play.

12. No one under the influence of drugs or alcohol will be permitted to use the facility.

13. No food, gum or tobacco products in the pools or deck area. Food and drink are permitted in the patio area and rental room [no glass containers]. Water bottles with sport caps are permitted in the pool area. Please dispose of your trash in the proper receptacles.

14. The Aquatic Facility will not be responsible for lost, stolen or damaged personal items.

15. You must stay with your children. Lifeguards are not babysitters.

16. Memberships and daily passes are not refundable or transferable.

If you have any questions, comments or suggestions please stop by the front desk or call us at (479)754-4100.

http://www.clarksvilleaquaticcenter.com/indoor-pool/pool-rules.html
(Retrieved on December 29, 2016, 12:23pm)

EXHIBIT 31

TOM COGAN DEPOSITION

PAGE 20;

JON SIMPSON DEPOSITION

PAGE 15

(2 pages)

1  Q    Can you identify that document (Handing document to

2  witness)?

3  A    Yes, Indoor Pool Rules.

4           MR. HOLMES: I offer this as Plaintiff's One to Mr.

5  Cogan's deposition.

6           (Whereupon, the Indoor Pool Rules were marked as

7  Plaintiff's Exhibit One and attached at Tab One.)

8  MR. HOLMES: (Continuing)

9  Q    Is there anything in that document that would say talking

10  to the lifeguards is a violation?  Can you point to any specific

11  rule that talking to the lifeguards would violate?

12  A    (Examining document) No, sir.

13  Q    Okay.  Can you identify that document (Handing document

14  to witness)?

15  A    (Examining document) It's Whitney Barnes' statement.

16  Q    Okay.  And was this the statement that she provided at the

17  time that Chris White was banned from the facility?

18  A    Yes.

19  Q    Have you reviewed that statement before?

20  A    Yes, sir.

21  Q    Do you agree that there is a section in that statement that

22  discusses Mr. White talking about his religion with Ms. Barnes?

23  A    Yes, sir.

24  Q    Did you ever have any conversations with Ms. Barnes if

25  she had done something to lead on Mr. White to thinking that

1  you made the decision to ban Mr. White, not after, right?

2          MS. MONAGHAN:   Object to the form.

3  A    I'm not sure.

4  Q    Was Mr. White talking to the lifeguards one of the reasons

5  that you banned him from the facility?

6  A    No, sir.

7  Q    Was the fact that he brought Ms. Barnes a gift the reason,

8  one of the reasons or the reason you banned him from the

9  facility?

10          MS. MONAGHAN: Object to the form.

11  A    No, sir.

12  Q    Was including an incorrect birthday on his application at

13  the Aquatic Center one of the reasons that you considered in

14  banning him from the facility?

15  A    I'm not sure, sir.

16  Q    Who instructed Jeff Ross to draft a letter on December

17  16th banning Mr. White from the Vincent Building and the

18  Aquatic Center?

19  A    I'm not sure.

20  Q    Do you feel like you have the authority to instruct a police

21  officer to do that?

22  A    I'm not sure.

23  Q    What authority do you have as the Mayor of the City of

24  Clarksville?

25  A    To protect the citizens.

EXHIBIT 34

CHRIS WHITE DEPOSITION

PAGE 54

(1 page)

1   minutes, probably two or three minutes. He said something
2   about his truck or something about my truck. It was one of
3   those truck conversations. And it was real busy in there
4   because it was the summer. I mean, it was always different in
5   the summer.

6       Mary told me later that when I talked to the lifeguards,
7   that I need to make sure and not stand in front of them and
8   make sure I don't block their vision of the pool. That's what
9   she told me.

10      And I was very careful and disciplined about that in the
11  future and Mary didn't have to tell me that again, because
12  whenever if I was going to say something to a lifeguard or they
13  were saying something to me, I would make sure I stand back
14  on their flank so they had full vision of what they were
15  supposed to be looking at, and that's what Mary requested of
16  me.

17      That's the only time that I remember Mary actually saying
18  something to me about specifically talking to lifeguards. There
19  was other times where Mary, which is common for me, I have
20  conversations like this with people all the time where I get
21  excited, we start talking about football or something and I start
22  raising my voice, making jokes, and people a lot of times are
23  like, "Chris, use your inside voice." Okay, that's very common.
24      Mary said things like that to me, you know, several times,
25  you know, not that many, but they're still not countable. It

**EXHIBIT 35**

**CHRIS WHITE DEPOSITION**

**PAGE 52, 53**

**(2 pages)**

1  who I -- I feel pretty comfortable it was Christal, but it just
2  shows you just time is the enemy when it comes to stuff like
3  that.
4      But I know I continued having, whenever they started, I
5  continued having religious conversations with Christal, and,
6  you know, half of them she would bring up, half of them she
7  would start. And it was usually she was telling me how much
8  she was agreeing with something that she overheard me saying
9  to somebody else.
10     She was always thumbs up, I mean, "I agree with
11  everything you're saying." But there was times she would get a
12  little bit -- She wouldn't take criticism well, and I know she got
13  a little bit turned off by that, but I remember one time in
14  particular -- this is probably about the only time I can
15  remember right now, --but there was a homeless guy that was
16  coming to the pool. And they wouldn't shut up about the guy
17  being homeless and making fun of him, and it was bothering
18  me.
19     I mean, and Christal literally said, "I hate homeless
20  people." That's literally what she said, word-for-word, "I hate
21  homeless people." I know that was Christal because that wasn't
22  that long ago.
23     And so I asked her when it was -- I don't think I said it
24  right up front. I think I waited for people to walk away. But I
25  asked her, I said, "Is that what Jesus says for us to say about

1  homeless people, that we hate them?" And she got mad and

2  walked away.

3          So she didn't tell me she agreed with that one whenever

4  she was on the spot, but I did have religious conversations with

5  Christal, but I don't recall that being often.

6  Q    Before you started coming to the swimming pool did you

7  know Mary Townsend?

8  A    No, ma'am.

9  Q    What about Tom Cogan?

10 A    No, ma'am.

11 Q    What about Jeff Ross?

12 A    No, ma'am.

13 Q    What about Jon Mark Simpson?

14 A    No, ma'am.

15 Q    I assume you know who Mary Townsend is now?

16 A    Yes, ma'am.

17 Q    Did Mary ever bring it to your attention that you were

18 distracting the lifeguards by talking to them and keeping their

19 attention from the swimming pool?

20 A    Mary and I had one conversation about that, and it was

21 during one of the summers. It was either the summer of 2015

22 or it was the summer of 2016. And I was talking to that

23 lifeguard I previously mentioned named Jeffrey, and I was

24 standing in front of him when I was talking to him.

25          Now, we didn't talk that long, it was probably under five

# EXHIBIT 36

## CHRIS WHITE DEPOSITION

### PAGE 40

(1 page)

1    those individuals?

2    A    Yes, ma'am.

3    Q    How so?

4    A    How did I get to know them?

5    Q    Yes.

6    A    By talking to them.

7    Q    At the pool?

8    A    Yes, ma'am.

9    Q    While they were lifeguarding?

10   A    Yes, ma'am.

11   Q    What about Whitney Barnes, how would you describe your

12   relationship with her?

13            MR. HOLMES: I object to the form.

14       Go ahead Chris.

15   Q    Were you friendly with her; was she a close friend?

16            MR. HOLMES: I'm going to object to the form.

17   A    I'll answer it.  I did not know Whitney hardly at all until

18   probably that fall.  Probably at that time I probably couldn't

19   even remember her name.

20       When I started going in the fall she started coming and

21   sitting down by me at the table that I would be sitting at, and

22   she would literally be crying out for help.  The way she would

23   do that is she would offer -- I mean, I'd hear her say this to

24   other people, too, that she didn't believe in God, she didn't

25   believe in Jesus Christ, you know, she's had too many

**EXHIBIT 37**

**MARY TOWNSEND DEPOSITION**

**PAGE 34, 35**

**(2 pages)**

**EXAMINATION BY COUNSEL FOR DEFENDANTS**

BY MS. MONAGHAN:

Q    When did you stop working for the City?

A    About three months ago.  A little over three months ago.

Q    So what's the date?  What day would that have been?

A    March.

Q    In March.

A    I think it was March 29th.  It was the last week of March,
I believe.

Q    March of 2018?

A    Yes.

Q    And this notebook that Mr. Holmes referenced, did you
keep up with that notebook after you stopped working at the
City?

A    No, I didn't.

Q    At the time -- and your response to these Interrogatories
were provided on May 16, 2018, is that correct?

A    Yes.

Q    So you wouldn't have had that notebook in your
possession at that time, is that correct?

A    Yeah.

Q    Had you removed this entry from your notebook because
of this incident that happened?

A    I don't know.  I mean, like I said, it was just a piece of
paper, I guess, not necessarily a notebook.  I don't know.  I

don't know where the notebook is.

Q  So it's possible you had separated this from the notebook because of the incident that happened.

A  Yes.

Q  Do you recall ever making any other entries regarding Chris White or this incident in your notebook?

A  No, I don't remember.

     MS. MONAGHAN: That's all I have.

     MR. HOLMES: Nothing further.

     MR. WOOD: No questions.


              (Signature Waived)


     (Whereupon, said proceedings were concluded at 10:54 a.m.)

HENDRIX REPORTING SERVICE
1701 SOUTH ARCH
LITTLE ROCK, ARKANSAS 72206
(501) 372-2748

# EXHIBIT 38

## MARY TOWNSEND NOTE

### (1 page)

12/2 - Whitney Bonnie - Spoke with Whitney about
allowing customers to sit and chat w. her.
for several minutes/ hours. (Chris White) **Distraction!**
when I arrived at work I noticed

once again Chris was talking w/ Whit.
I looked at the cameras to see how
long Chris had been distracting her.
I discovered a 5 min. segment where
she had her back to the pool w.
6 people swimming in different
areas (7:43am to 7:48am)

# EXHIBIT 39

## CHRIS WHITE DEPOSITION

### PAGE 48

(1 page)

1  A    No, ma'am.

2          MR. HOLMES:  Object to the form.

3       Go ahead Chris.

4  A    No, ma'am.

5  Q    So you said you do not recognize the name Emilie Rohr?

6  A    I don't, I don't recognize it. I'm not saying I don't Emilio

7  Rohr, but I'm saying I don't know her by name. When I see the

8  name, I'm guessing at who it is.

9  Q    Well, if you're thinking about the person you're guessing

10  it is, did you have any sort of regular conversations or contact

11  with that person at the pool?

12  A    I'll say this:  I have never said that about officiating

13  wrestling or any other thing to anybody in my life.  I don't

14  even joke around about, you know, letting illegal holds be used

15  in wrestling.  I don't do that, and I can tell you I didn't make

16  that comment to anybody in the whole world.

17  Q    So you're talking about the statement that she --

18  A    Yeah, that statement.

19  Q    Is that the statement you're referring to?

20  A    Yes, ma'am.

21          MS. MONAGHAN:  So we'll attach this as Exhibit

22  Two, this statement given in an email by Emilie Rohr to

23  Jeff Ross.

24          (Whereupon, the Statement of Emilie Rohr was

25  marked as Deposition Exhibit Two and is attached at Tab

# EXHIBIT 40

## MARY TOWNSEND

## WORK REPORT

### (1 page)

**CLARKSVILLE AQUATIC CENTER**

1811 Oakland St., Clarksville, AR 72830
479-754-4103 office

12/18/16

Approximately six months ago I spoke with customer Chris White asking him to stop distracting our lifeguards. Chris frequently comes to the Aquatic Center to swim. While he's at the Aquatic Center he will stand or sit in the vicinity of the lifeguards talking for several minutes to hours. The lifeguards are instructed not be distracted by customers talking to them for long periods of time. Several lifeguards have been affected by Chris's lengthy chatting. Several lifeguards have told Chris that they are not allowed to have lengthy conversations with patrons while lifeguarding. Chris disregarded their requests and continued to follow lifeguards around while they were working, talking/distracting them. The lifeguards also reported that Chris is using foul language and talking inappropriately about other lifeguards and employees while he's at the facility when violating the rules and regulations that are in place for our facility. About a month ago, once again I approached Chris asking him to stop distracting our lifeguards. I told him if he wanted to have a lengthy conversation with them that he needed to do it while they were not lifeguarding. I was making him aware that our employees are not allowed to have friends, family members or patrons who stay and visit with them for hours. Chris continues to come to the facility and visit with our employees for very lengthy periods of time, all of which have reported foul language and inappropriate talk from Chris. Recently Chris has been coming to the facility frequently during the shift of one of our female lifeguards who has reported inappropriate talk and actions, and has expressed concerns of Chris being at the facility and distracting her while she works.

Mary Townsend Aquatic Director
Clarksville Parks and Recreation

EXHIBIT 41

MARY TOWNSEND DEPOSITION

PAGE 31

(1 page)

Q    So approximately two to three weeks after you had talked
to him the second time?

A    Chris?

Q    Yes.

A    No, I believe it was just within, it was a shorter period of
time.  I don't think it was two to three weeks.

            MR. HOLMES: I offer this as Number Five.

            (Whereupon, the typed statement of Mary Townsend
            dated 12-16-16 was marked as Plaintiff's Exhibit Five and
            attached at Tab Five."

MR. HOLMES: (Continuing)

Q    In this letter you don't make any mention of any kind of
sexual comments that were made, do you?

A    (Examining documents) I don't specifically say the words
"sexual comments," no.

Q    Have you ever known of anybody who has been banned
from this facility being allowed to come back?

A    No.

Q    The manner in which the Marvin Vincent Building and
Aquatic Center is set up, it's possible that somebody could be
banned from the Aquatic Center and still be able to use the rest
of the facility, isn't that true?

A    That would not be up to me.

Q    I'm not asking if it's up to you, I'm asking if the set-up
that's how it's set up, is it possible that somebody could be

EXHIBIT 42

WHITNEY BARNES DEPOSITION

PAGE 44, 45, 46

(3 pages)

1   Q   So in October he was talking to you about your family and

2   your childhood, right?

3   A   Uh-huh.

4   Q   You didn't report it to your employer.

5   A   No, sir.

6   Q   In November he was talking to you about your childhood

7   and your family, you didn't report it then, did you?

8   A   No.

9   Q   Also in paragraph five you say, "He tries to discuss

10  religion as well.  He won't (sic) quit talking about it one day so

11  I politely asked him to stop."

12  A   Yes.

13  Q   Did you ever ask him to politely stop when you were

14  discussing any of the other things that I've gone over so far?

15  A   I would say, "I don't really want to talk about this."

16  Q   Okay.

17  A   There were several other things that I said that about.

18  Q   Okay.  Where is that in your statement.

19  A   That was just the one that particularly bothered me.

20  Q   Okay.  And why did it bother you?

21  A   Because I don't really know where I stand on religion.

22  Q   So the conversations weren't him trying to help you

23  navigate that?

24        MS. MONAGHAN:  Object to the form.

25  A   Yes, for the most part, yes, it was him trying to help me

1  navigate that, but I didn't need help.

2  Q     You were confused about your religion, is that not fair to

3  say?

4              MS. MONAGHAN: Object to the form.

5  A     Somewhat.

6  Q     Okay. Do you think Chris knew that you were confused .

7  about your religion?

8  A     Yes.

9  Q     But you thought it was inappropriate for him to help you

10  navigate that confusion?

11             MS. MONAGHAN: Object to the form.

12  A     I don't believe it was his place.

13  Q     Okay. You thought it was inappropriate?

14  A     I don't know if "inappropriate" is the right word.

15  Q     Once again, the purpose of this statement was to list all

16  the inappropriate things, and in the middle of paragraph five

17  you listed discussing about religion with you, so is it

18  inappropriate or is it not?

19             MS. MONAGHAN: Object to the form.

20  A     I wouldn't necessarily say that it's inappropriate in -- I'd

21  say it's inappropriate for the fact that it wasn't his place.

22  Q     Why wasn't it his place?

23  A     He's not my pastor.

24  Q     Okay. And so you think only a pastor can discuss religion

25  with you?

1    A    No, but I don't need information from somebody who

2    doesn't really know the Bible as well as they think they do.

3    Q    Okay. And so that was where you thought it was

4    inappropriate?

5    A    Yes.

6    Q    You don't think he knew the Bible as well as you hoped he

7    would --

8             MS. MONAGHAN:  Object to the form.

9    Q    -- to discuss that with you?

10    A    Can you rephrase?

11    Q    Well, let me -- How many discussions did you have with

12    Chris about religion?

13    A    I don't know.

14    Q    But you feel like you had enough conversations with him

15    to believe he didn't know enough about the Bible or he didn't

16    know what he was saying out of the Bible?

17    A    I had enough conversations to know that he used what the

18    Bible said and took his own interpretation.

19    Q    Okay. And so at no other time before you provided this

20    statement did you tell Mary, Tom or the Mayor about it though,

21    did you?

22    A    Not about him talking to me about religion, I don't

23    believe.

24    Q    Okay. You claim he told you him and his buddies used to

25    drug girls at parties and then he asked you where any good

EXHIBIT 43

MARY TOWNSEND DEPOSITION

PAGE 17, 18

(2 pages)

A    We hoped that they would, yes.  But --

Q    Do you know if there's any document that you have in your records or the City has in their records that Chris White signed and dated that document?

A    I believe when his application was gone back and looked at, that he did not date and sign it.

Q    Okay.  Which would not necessarily be uncommon for him not to have dated and signed it, correct?

A    Sometimes we get really busy at the front desk and some patrons don't turn it over and sign it.

        MR. HOLMES: Okay.  I'm going to offer this as Plaintiff's One to Ms. Townsend's deposition.

            (Whereupon, a copy of the Clarksville Aquatic Center Indoor Pool Rules was marked as Plaintiff's Exhibit One and attached at Tab One.)

MR. HOLMES: (Continuing)

Q    Is talking to the lifeguards a violation of the Indoor Pool Rules?

A    No.

Q    Okay.  Is bringing the lifeguards a gift, is that a violation of the Indoor Pool Rules?

A    No.

Q    Okay.  So which rule on that list had Mr. White violated on December 16, 2016?

A    Number 10.

1   Q    Okay. And what was that rule?

2   A    "No obscene language, crude or inappropriate behavior

3  will be tolerated."

4   Q    Okay. What were all the facts that you recall were

5  considered when deciding to ban Chris White from the facility?

6   A    His inappropriate --

7          MS. MONAGHAN: Object to the form.

8        I'm sorry, go ahead.

9   A    His inappropriate comments that he had made about and

10  to staff members -- not just lifeguards, but staff members. And

11  also specifically I did ask him to stop distracting the lifeguards

12  and having lengthy conversations with them.

13   Q    Anything else?

14   A    Will you say the question again, please?

15   A    What facts were considered in banning Chris White from

16  the facility?

17   A    All of those.

18   Q    Okay. I asked you that same question in Interrogatories

19  and Requests for Production, do you recall that?

20   A    (Examining document)

21   Q    Do you recall that?

22   A    No. Please refresh my memory.

23   Q    I asked you the question: "Please set forth each and every

24  fact considered by the defendant," which was you, "in deciding

25  to ban plaintiff from the Marvin Vincent Building and Aquatic

**EXHIBIT 44**

**TOM COGAN DEPOSITION**

**PAGE 29, 30**

**(2 pages)**

1  Q    While you were. Okay. That's really what I'm getting at.

2  I'm not trying to trip you up and give you a specific day, I

3  wanted to know if it was open -- if you've been the only

4  director of Parks and Recreation that has served at that Aquatic

5  Center?

6  A    Until 2000-and?

7  Q    Until 2017.

8  A    Until 2000 and -- yes, sir.

9  Q    Okay. Has anybody ever received less than a permanent

10  ban, even if they've been allowed to come back?

11  A    Not that I'm aware of.

12  Q    Okay. So no 30 day bans or 60 day bans or six months

13  bans that you're aware of?

14  A    No, sir.

15  Q    There was a Parks and Recreation Commission meeting

16  held on August 24 of 2017 just a few months shy of your

17  retirement. Do you recall that meeting where I appeared with

18  Mr. White and some of the individuals that made allegations of

19  Mr. White appeared?

20  A    Yes, sir.

21  Q    Were you at that meeting?

22  A    Yes, sir.

23  Q    Do you recall prior to that meeting members of the

24  Commission instructing Mr. White and I that we wouldn't be

25  able to ask any questions of any of the individuals that came

1  and presented their story that day?

2  A    Yes, sir.

3  Q    Did you provide any testimony at that hearing?

4  A    No, sir.

5      MR. HOLMES: Let me take a quick break.

6      MS. MONAGHAN: Okay.

7  (Whereupon, said proceedings were briefly recessed and

8  resumed as follows:)

9      MR. HOLMES: I've just got a couple of questions.

10 MR. HOLMES: (Continuing)

11 Q    My client pointed out that in one of the questions I asked

12 you that you may have just nodded and not gave a verbal

13 response, so I just wanted to confirm that.

14     I showed you the statement of Christal Brooke and you

15 said that you don't -- I believe you nodded that you don't recall

16 this being used in the decision to ban Mr. White.

17     Is that true, it was not used?

18     MS. MONAGHAN: Object to the form.

19 A    I don't recall it being used.

20 Q    You heard me ask this last question. You have the ability

21 to waive or reserve your right to sign your deposition at the end

22 of this. And you may need Ms. Monaghan to help.

23     Do you waive or do you reserve the right to sign your

24 deposition?

25 A    Waive.

EXHIBIT 45

UNIVERSITY of OZARKS

POLICE REPORT

(2 pages)

# University of the Ozarks
# Department of Public Safety
# Incident / Accident Report Form

CASE: 2017/02

Officer :Marcus Waddell          Date :1/25/17          Time :1:25 PM

**Contacted**
☒ Director of Public Safety  ☐ Assistant Director of Public Safety  ☒ Police  ☐ Ambulance

complainant:   ☒ Is Victim          I.D.# : 00000 19120
Name :Whitney Barnes              Phone Number : (    )    --

Address: King Hall

☐ Victim ☒ Suspect ☐ Witness (check one)    I.D. # : 00000 n/a
Name :Charlie White              Phone Number : (    )    --
Address:

☐ Victim ☐ Suspect ☐ Witness (check one)    I.D. # : 00000
Name :              Phone Number : (    )    --
Address:

☐ Victim ☐ Suspect ☐ Witness (check one)    I.D. # : 00000
Name :              Phone Number :
Address:

☐ Victim ☐ Suspect ☐ Witness (check one)    I.D. # : 00000
Name :              Phone Number :
Address:

☐ Victim ☐ Suspect ☐ Witness (check one)    I.D. # : 00000
Name :              Phone Number :
Address:

# Narrative

Student Whitney Barnes reported a suspicious person on campus to Director Cyrus, and Officers Brandon Cooper, Marcus Waddell. She saw a vehicle in the King/Smith/Library/JLC parking lot that matched the description of a vehicle owned by a man named Chris White. Chris White drives a Green Chevy S10, license plate #020WHX. City PD was called, and Officer Holt and Detective Russell responded to the Public Safety Office.

The student first met White at the city Aquatic Center, where she works as a lifeguard. He followed her around the property, asking her personal questions, and making sexual remarks. Chris White has since been banned from the Aquatic Center by the City Mayor.

She reported that she has seen him following her around town and the surrounding area, and that he knows her address, and has her cell phone passcode. Barnes reported that he has made physical contact, preventing her from leaving.

Barnes told the police that he lives in the first house on the left on Cline Street across from Cline Park.

The truck that she saw was a students truck that was parked in the upper parking lot, and not Chris White's. Officer Holt said that Chris White was at the Police Station with Officer Jeff Ross. Officer Holt and Detective Russell said they would go check White's house, and find out why White was with Officer Ross.

Officer Holt told Barnes that he would let her know what was going on with the situation as he received more information.

Director Smith said that he would initiate the University's Ban Policy.

**Signature:**

EXHIBIT 46

WHITNEY BARNES DEPOSITION

PAGE 7

(1 page)

| | |
|---|---|
| 1 | THE WITNESS: It's not the same number. |
| 2 | MS. MONAGHAN: Can she give the previous |
| 3 | number. or does it have to be her current? |
| 4 | MR. HOLMES: Okay, that's fine. |
| 5 | THE WITNESS: 479-647-6950. |
| 6 | MR. HOLMES: (Continuing) |
| 7 | Q   Did you ever have a number ending in 6998? |
| 8 | A   Yes. |
| 9 | Q   Okay. Is that the number you have now? |
| 10 | A   Yes. |
| 11 | Q   Okay. That's not the number you had in 2016? |
| 12 | A   Huh-uh (Shaking head from side to side). |
| 13 | Q   Okay. When did you get that number? |
| 14 | A   I had the number for a while, and then my phone broke |
| 15 | and I ended up having to get my sister's phone, and then I |
| 16 | switched back to my old number when I got my phone back. |
| 17 | Q   Okay. |
| 18 | A   Which is about a year-and-a-half later. |
| 19 | Q   Okay. Where are you currently employed? |
| 20 | A   The Aquatic Center. |
| 21 | Q   How long have you been with the Aquatic Center? |
| 22 | A   Almost three full years. |
| 23 | Q   Are you a student as well? |
| 24 | A   Yes, sir. |
| 25 | Q   Okay. At the University of the Ozarks still? |

EXHIBIT 47

WHITNEY BARNES DEPOSITION

PAGE 28, 29

(2 pages)

1    A    Yes. I do not recall seeing him there.

2    Q    Okay. Did you put that anywhere in your statement, that

3   you had invited him to a place and that you had seen him?

4    A    I hadn't necessarily invited him. I had discussed it

5   because it was a city-wide event that everyone knew about and

6   I had brought it up. I didn't necessarily invite him.

7    Q    So why did you even discuss it with him?

8    A    Because we were having general conversation.

9    Q    Okay. That he initiated or you initiated?

10   A    I don't remember.

11   Q    Were there times that you initiated conversation with Mr.

12   White?

13   A    Yes, it's implied.

14   Q    Okay. There's times that he initiated conversation with

15   you?

16   A    Correct.

17   Q    You mentioned that he saw you walking on campus and

18   slowed down to talk to you.

19   A    Yes.

20   Q    When was that?

21   A    I don't remember. Prior to December 16th.

22   Q    Okay. And when did you report it to your employer?

23   A    I didn't.

24   Q    He told you where he lives it says is a part of your

25   statement. Did you ever ask him where he lives?

| | | |
|---|---|---|
| 1 | A | I asked him if he lives in Clarksville. |
| 2 | Q | Okay. |
| 3 | A | I asked a general area, I didn't ask for directions. |
| 4 | Q | Never asked him for his address? |
| 5 | A | No. |
| 6 | Q | Okay. So you asked him if he lives in Clarksville, yet in |
| 7 | | your statement you say, "He told me where he lives." |
| 8 | A | Yes. |
| 9 | Q | And that was inappropriate? |
| 10 | A | The fact that he explained in explicit detail of exact |
| 11 | | directions to his home, yes. |
| 12 | Q | Okay. Why was that inappropriate? |
| 13 | A | Because I don't need to know where a grown man lives -- |
| 14 | Q | Okay. |
| 15 | A | -- at 16 or 17 or 18 or however old I was. |
| 16 | Q | Okay. Did you ever go on a date with Mr. White? |
| 17 | A | No. |
| 18 | Q | Did you ever talk to him on the phone? |
| 19 | A | No. |
| 20 | Q | Did you ever exchange text messages or emails with him? |
| 21 | A | He texted me. |
| 22 | Q | Okay. Did you ever text him back? |
| 23 | A | I don't recall. |
| 24 | Q | Did you ever report to your employer that he had texted |
| 25 | | you? |

# EXHIBIT 48

## TEXT MESSAGE from WHITNEY BARNES

### (1 page)

 
Oct 6, 2016, 6:38 AM

Hey what is your address? We are doing it these things for cheer where we send out letters. And I need 10 addresses

Oct 6, 2016, 7:39 AM

Hi Whitney. 6 Parkway Drive, 72830.

I've gotten calls this morning about working volleyball in Mansfield. I already have matches in Waldron. So the coach is checking with the other coach about moving their match time up. If we could stagger

   


Oct 6, 2016, 6:38 AM

**Hey what is your address? We are doing it these things for cheer where we send out letters. And I need 10 addresses**

Oct 6, 2016, 7:39 AM

Hi Whitney. G Parkway Drive, 72830.

I've gotten calls this morning about working volleyball in Mansfield. I already have matches in Waldron. So the coach is checking with the other coach about moving their match time up. If we could stagger

   

EXHIBIT 49

WHITNEY BARNES DEPOSITION

PAGE 16, 17, 55, 56, 57, 58

(6 pages)

1    I asked you prior to December the 16th of 2016 if you'd
2 filled out reports.
3 A    Oh.
4 Q    I think the one you're talking about was after, because you
5 said he'd been banned from the pool.  So prior to that, do you
6 recall filling out any reports?
7 A    No, I don't.  I may have, but I can't think of it off the top
8 of my head.
9 Q    Okay.  So you filled out one that you recall after
10 December the 16th of 2016, the one about banning at the pool.
11 I think you said a couple at U of O.  What were the other ones
12 at the U of O?
13 A    The other one was I had been walking to campus.
14 Q    Okay.
15 A    Walking to class, sorry, and thought that I saw Mr.
16 White's truck and I reported it.  It was after he was banned.
17 Q    Okay.  Do you think that was the same day or was in the
18 same report, or would it have been two separate reports?
19 A    Two separate reports.
20 Q    But you believe both of them were after he was banned?
21 A    Yes.
22 Q    Okay.  The one about you walking to class and seeing his
23 vehicle -- I'll show you this (Handing document to witness).
24    See if that's the report, if that's the first report or if that's
25 the second report that you discussed?

1   A   (Examining document)  This was the second one.

2   Q   Okay.  And what's the date on that report?

3   A   1-25-17.

4   Q   Okay.  So you think there's another report that is between

5   December the 16th of 2016 and January the 25th of 2017?

6   A   Yes, sir.

7   Q   Okay.  In that report you say, it talks about him being

8   banned from the pool and then they banned him from the

9   university based on that ban, right?

10  A   I can't say exactly their reasoning because I don't know.

11  Q   Okay.

12  A   But my report led to him getting banned from the U of O,

13  yes.

14  Q   Okay.  Look at the last sentence of that paragraph or of

15  that report.

16  A   Okay.

17  Q   And you're saying that when you made this second report,

18  that he was already banned based on the first report?

19  A   As far as I knew, yes.

20  Q   Okay.  And who told you that, do you recall?

21  A   Cyrus.

22  Q   Okay.

23  A   From what I understood, he was already banned before

24  this report.

25  Q   Okay.  And that was based on the first report that you had

1   my initial arrival at the facility."

2        You didn't say "anything that was relevant" or "anything

3   that might have happened," you say, "Compile a list of all the

4   inappropriate things." And so you think it was inappropriate

5   that Chris White wasn't involved in a situation where you were

6   potentially grabbed on campus?

7   A   It happened around the time that all of this was occurring

8   and I thought it was relevant.

9   Q   Okay. So but you say "about three weeks ago." And so

10   three weeks from when?

11   A   From when I wrote the statement.

12   Q   Okay. But you don't know when you wrote the statement?

13   A   No, sir.

14   Q   Is that one of the reports that you talk about when I

15   asked you about reports that you made to the U of O, you said

16   there were two reports. I showed you one of them, and so is

17   this one the other one you're talking about?

18   A   No, sir.

19   Q   Okay. So now you're saying there's a third report out

20   there?

21   A   That doesn't necessarily have to do with Chris White, I

22   just made the report.

23   Q   Okay. I didn't ask you if those two reports at the U of O

24   were regarding Chris White, I specifically said any other

25   reports that you made to the Clarksville or any other public

1  safety office prior or after December 16th of 2016, and you said

2  there were two. I didn't ask you specifically about Chris White.

3  A    Yes, sir.

4  Q    So now I want to go back to that question and say how

5  many reports have you made to the Clarksville Police

6  Department ever?

7  A    The Police Department or the U of O campus?

8  Q    The Police Department first, so we don't have any

9  confusion.

10  A    One, I believe.

11  Q    Okay. Relating to what?

12  A    Relating to the Chris White situation.

13  Q    Okay. Any other reports not related to the Chris White

14  situation?

15  A    Not that I can remember.

16  Q    Let's go to the U of O Public Safety Office. How many

17  reports have you ever made, not related to Chris White or

18  related to Chris White, to the U of O Public Safety?

19  A    I honestly don't know.

20  Q    You're saying at least three?

21  A    Yes.

22  Q    And when was this third one that we're now talking about

23  made?

24  A    Three weeks prior to when I wrote this.

25  Q    But you don't know when that happened?

1   A   No, sir.

2   Q   Is there any other police department or public safety

3   department that you've made any other reports to ever?

4   A   Not that I can think of off the top of my head.

5   Q   Do you understand the question I'm asking, that it doesn't

6   necessarily relate to Chris White, it's any report ever.

7   A   Yes.

8   Q   So as we sit here today, do you think Chris White was

9   involved in this report that you made that somebody tried to

10  grab you as you were walking to your car on your way to work?

11  A   That's not what I said.

12  Q   Then why did you include it in your statement?

13  A   Because I thought it was important.

14  Q   Once again, it wasn't inappropriate, right?

15          MS. MONAGHAN:  Object to the form.

16  A   (No audible response)

17  Q   Was it inappropriate?  Did Chris White do anything

18  inappropriate three weeks prior to you filling out this

19  statement regarding you walking to your car and someone

20  grabbing you?

21  A   I don't have any proof of it.

22  Q   And I'm asking you, as we sit here today, do you think he

23  was involved in it?

24  A   I don't know.

25  Q   And so you're going to tell me that there is a report at the

1  U of O that says this?

2  A   Yes.

3  Q   If I ask the U of O Public Safety Office to pull all reports

4  that you are involved in, you're telling me that there's a report

5  on the school campus that has this statement in it?

6  A   Yes.

7  Q   And it would be three weeks prior to you drafting this

8  statement?

9  A   Approximately.

10 Q   Okay. You say "about," so you're saying "approximate"

11 and "about" is the same thing?

12 A   Yes.

13 Q   Okay. In the last paragraph of your statement you say "I

14 do admit some fault and I am profusely sorry for this." What

15 fault do you admit?

16 A   I could have done more to walk away from the situation.

17 I could have been less naive.

18 Q   And because you didn't do enough and because you were

19 too naive, Mr. White is the one that gets punished, is that what

20 you're saying?

21        MS. MONAGHAN: Object to the form.

22 A   No, I didn't say I was at fault for the situation. I said

23 that I could have done more to help the situation.

24 Q   Read your last sentence. Read it. Go ahead and read it

25 out loud.

# EXHIBIT 50

# UNIVERSITY of OZARKS

# ATTORNEY

# (1 page)

**SMITH, COHEN & HORAN, PLC**
ATTORNEYS AT LAW

September 5, 2018

Mr. Kevin Holmes

kholmes@harristechlaw.com

RE:   Production Subpoena to Larry Graham,
Director of Public Safety
University of the Ozarks

Kevin:

Thank you for withdrawing the Subpoena above identified and civil action No. 2:17-cvo-2207 PKH described as "any and all incidents/accident reports from January 1, 2014 to present where Whitney Barnes, is listed as the victim, witness or suspect."

As I advised in our telephone conference, the University located only one document that met the above quoted description, and that document was attached to the Affidavit of Moses Weddell, filed as and attached to document 28-13 on August 16, 1918, page 3 of 4 page ID #: 267 and page 4 of 4 page ID#: 268. Permission to send this letter was given by Mr. Jeff Sconcia, University of the Ozarks Administration.

Yours very truly,

Don A. Smith

DAS/bs
Cc: Jeff Sconcia
Sarah Mosughua   smosughua@uozarks.org


PLAINTIFF'S EXHIBIT
18

# EXHIBIT 52

## MARY TOWNSEND'S

## TIMESHEET

## (1 page)

City of Clarksville Manager

| Date | From | To | Labor Level | Comp Rate gained | Regular Time | Comp Time | Total Time |
|---|---|---|---|---|---|---|---|
| Thu 12/08/2016 | 08:00a | 11:45a | Parks Recreation/Aquatic/Manager | | 6.75 | | 6.75 |
| | 12:00p | 05:00p | Parks Recreation/Aquatic/Manager | | 3.50 | | 8.50 |
| Fri 12/09/2016 | 03:44a | 12:20p | Parks Recreation/Aquatic/Manager | | 6.35 | | 6.36 |
| Mon 12/12/2016 | 08:20a | 06:30p | Parks Recreation/Aquatic/Manager | | 14.00 | | 14.00 |
| Tue 12/13/2016 | 08:00a | 11:20a | Parks Recreation/Aquatic/Manager | | 5.80 | | 8.80 |
| | 01:15p | 03:45p | Parks Recreation/Aquatic/Manager | | 2.80 | | 2.80 |
| Wed 12/14/2016 | 08:15a | 08:15a | Parks Recreation/Aquatic/Manager | | 3.00 | | 3.00 |
| Week Total | | | | | 40.00 | 0 | 40.00 |
| Thu 12/15/2016 | 08:00a | 02:30p | Parks Recreation/Aquatic/Manager | | 7.50 | | 7.50 |
| Fri 12/16/2016 | 08:48a | 11:00a | Parks Recreation/Aquatic/Manager | | 3.35 | | 3.35 |
| | 12:00p | 03:00p | Parks Recreation/Aquatic/Manager | | 5.00 | | 5.00 |
| Sat 12/17/2016 | 08:00a | 10:00a | Parks Recreation/Aquatic/Manager | | 2.00 | | 2.00 |
| Mon 12/19/2016 | 07:45a | 01:00p | Parks Recreation/Aquatic/Manager | | 5.35 | | 5.35 |
| Tue 12/20/2016 | 08:00a | 05:10p | Parks Recreation/Aquatic/Manager | | 9.00 | | 9.00 |
| Wed 12/21/2016 | | | Parks Recreation/Aquatic/Manager | | | 8.05 | 5.00 |
| | 07:30a | 12:30p | Parks Recreation/Aquatic/Manager | | 5.00 | | 5.00 |
| Week Total | | | | | 36.00 | 8.05 | 40.00 |
| Total | | | | | 76.35 | 8.05 | 80.00 |

**Notes**

| | Created | | Granted By | Type | Date | Note |
|---|---|---|---|---|---|---|
| | | | No Results Returned | | | |

**Type Off Detail**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Time Off | Assessed To | | Current Accrued | Taken | Current Balance | Unit | Pending Approval |
| Comp Time | 12/04/2016 | Hrs | 8.75 | 0.00 | -76.00 | 70.50 | 0.00 |

* 76.00 hours are scheduled for next month's year.
* Employee will have 3.75 hours left at the end of current accrual year.

| 06/05/2014 – 05/15/2015 | | | | | | | |
|---|---|---|---|---|---|---|---|
| Sick | 01/01/2017 | Hrs | 887.25 | 0.00 | 887.50 | 0.00 | 0.00 |

* Employee will have 725.50 hours left at the end of current accrual year.
* 725.50 hours will be carried over to the next accrual year.

| 10/01/2016 – 10/01/2017 | | | | | | | |
|---|---|---|---|---|---|---|---|
| Vacation | 01/01/2016 | Hrs | 150.00 | 00.00 | 113.75 | 0.00 | 0.00 |

* Employee will have 113.75 hours left at the end of current accrual year.
* 113.75 hours will be carried over to the next accrual year.

09/15/2015 – 09/15/2016

X _____
Supervisor Signature

EXHIBIT 53

MARY TOWNSEND DEPOSITION

PAGE 13, 15

(2 pages)

Q    Okay. So the outcome of the second meeting was they
were going to go meet with Whitney?

A    Yes, they wanted to talk to Whitney.

Q    Okay. When was the next time you had a meeting to
discuss Chris White, if there was another meeting or not? You
said two to three. That's the reason I asked.

A    I believe it was the day I came back from Iowa. We met
and they asked me to give a statement, a written statement.

Q    Would that have been the day that he was banned?

A    Yes, I believe so.

Q    Okay. Had anything happened from the second meeting to
the day you were asked to give the statement that you're aware
of?

A    Say that again?

Q    From the day that you had the second meeting to the day
that you gave the statement, are you aware of anything that
happened between those two meetings?

A    Other than they met with Whitney.

Q    Okay. That's the only thing that had changed that you're
aware of?

A    Yes.

Q    What's your understanding of the reason that Chris White
was banned from the Marvin Vincent Building and Aquatic
Center?

A    Well, Chris had been a patron for quite some time and he

Q    Were those reasons ever communicated to Mr. White?

A    I didn't specifically say those things to Mr. White. There is a set of rules on the wall, especially the foul language is a written rule on the wall. I mean —

Q    Did you ever talk to Mr. White and ask for his side of the story?

A    No.

Q    Okay. What had he done on the 16th to warrant being banned that day?

MS. MONAGHAN: Object to the form.

THE WITNESS: Does that mean I don't answer? I don't know what that means.

MS. MONAGHAN: I mean, you can go ahead and answer the question. I've stated my objection here.

THE WITNESS: While I was out of town and they met with Whitney, they had read Whitney's statement, there was a lot of things there that shouldn't have been going on that we really weren't aware of, and she was very uncomfortable with Mr. White coming to the facility at that point. And he had brought her a gift. And that was the day I came back.

And when she came to me she was very distraught, she didn't know what to do. He was there and brought her a gift. And at that point I called Mr. Cogan and I said, "Mr. White brought her a gift, she's very

EXHIBIT 54

TOM COGAN DEPOSITION

PAGE 16, 25

(2 pages)

1  A   Chief Weathers was at that meeting.

2  Q   Okay. So your affidavit goes on to say, "After determining

3  it was necessary to ban Mr. White from the center, we waited

4  for a day or two to initiate the ban so that Ms. Townsend, who

5  was out of town, could provide a written statement." Is that

6  true?

7  A   Yes, sir.

8  Q   So Ms. Townsend was out of town, and then December the

9  16th is when Mr. White was actually banned, is that true?

10  A   Yes, sir.

11  Q   That was the first day that Ms. Townsend was back in

12  town to initiate the ban?

13       MS. MONAGHAN: Object to the form.

14  A   You need to state that again, please.

15  Q   December the 16th was the first day that Ms. Townsend

16  was back in town to initiate the ban and provide her

17  statement?

18  A   It was the first day she was back in town to provide her

19  statement.

20  Q   So then there was a third meeting that you were involved

21  in, correct?

22  A   That is the third meeting.

23  Q   Okay. So we covered the first one that was Mary, Mark

24  and you. That was the first one.

25  A   Yes, sir.

1    deposition.)

2    MR. HOLMES: (Continuing)

3    Q   Was this document used to consider the ban on Mr. White

4    from the facility?

5    A   My difficulty is the exact time lineup of when the decision

6    was made and when that was actually put in print.

7       That information, yes.

8    Q   You're saying the information but not necessarily the

9    document?

10   A   Yes, sir.

11   Q   When you say in your affidavit that you were waiting --

12   it's Paragraph Eleven I'm reading: "After determinating (sic)

13   that it was necessary to ban Mr. White from the center, we

14   waited for a day or two to initiate the ban so that Ms.

15   Townsend, who was out of town, could provide a written

16   statement."

17      Is this the written statement that she was providing that

18   you were waiting on before initiating the ban?

19   A   Yes.

20   Q   Who has the discretion to ban somebody from the Marvin

21   Vincent Building and Aquatic Center?

22   A   It varies depending on some circumstances.

23   Q   Okay. What are those circumstances?

24   A   Twelve-year-olds playing basketball and something gets

25   out of hand, the supervisor can have them banned. But as

EXHIBIT 55

JEFF ROSS DEPOSITION

PAGE 21;

JON SIMPSON DEPOSITION

PAGE 12

(2 pages)

1  A  .  Because it distracted the lifeguards and kept them from

2  doing their duties of keeping the patrons of Clarksville safe and

3  the other ones that used the pool, cause if they're distracted

4  they can't save a drowning patron in the pool.

5  Q  And once again, they weren't able to provide you any

6  dates of when that distraction happened, were they?

7  A  Not that date, no, sir.

8  Q  Was it your understanding that the decision to ban Mr.

9  White had already been made or was made that day?

10  A  From my understanding it was made that day.

11  Q  Giving an unwanted hug.  Where would that be a violation

12  of the indoor pool rules?

13  A  I mean, there's no rule in there that says you can't give

14  unwanted hugs.

15  Q  Okay.

16  A  I mean, if that's what you're asking, it's not there.

17  Q  Okay.  All right.

18  As part of the ban, you didn't also issue any kind of no

19  contact order between Mr. White and Ms. Barnes, did you?

20  A  There was no paperwork issued, but in the audio

21  recording you'll hear that he was informed that she did not

22  want him to contact her at work, at school, or any other place.

23  Q  So why wouldn't you put that in the letter?

24  A  This is a ban letter.  It didn't -- The ban had nothing to

25  do with what Ms. Barnes wanted.

1    A    Well, the plural, the word "meetings" plural.

2    Q    Okay. He was involved in at least one meeting when the

3 decision to ban Chris White was discussed?

4    A    Yes, sir.

5    Q    Was there anything that you recall criminal in nature that

6 was being discussed at those meetings?

7    A    Explain criminal.

8    Q    Do you know the difference between somebody committing

9 a crime and somebody not committing a crime?

10    A    Yes, sir.

11    Q    At that meeting, at at least one meeting was it brought up

12 that Chris White might have committed a crime?

13    A    I'm not sure

14    Q    Did you create any notes from any of the meetings that

15 you had to discuss Chris White?

16    A    No, sir.

17    Q    Where were those meetings held?

18    A    The Clarksville Aquatic Center.

19    Q    What date was the decision to ban Chris White made?

20    A    December the 16th.

21    Q    Was a meeting held to discuss it that day?

22    A    Yes.

23    Q    Who was at that meeting?

24    A    I would have to look at my affidavit to make sure.

25    Q    Okay. Was there a delay in making that decision because

**HENDRIX REPORTING SERVICE**
1701 SOUTH ARCH
LITTLE ROCK, ARKANSAS 7220
(501) 372-2748

**EXHIBIT 56**

**LETTER from the ARKANSAS**

**OFFICIAL'S ASSOCIATION**

**(1 page)**



**AOA**

*Arkansas Officials Association*

Executive
Committee
Mark Jeisure
District 1W

Lee West
District 1E

Gaylog Frazier
District 2

Carl Wilson
District 3

Lee Sparks
District 4

Mike Battiglan
District 5N

Jean O'Neal
District 5S

Larry Jones
District 6

Michael Tuttle
District 7

Billy J. Hale
District 8

Norval Gibson
At - Large

Nakia McKeller-Dempsey
At - Large

Executive
Secretary
Lane P. Taylor

State Rules
Interpreters
Dan Bradd
-BA, WR

Jay Weber
-BB, SO, GO, TN

Nick Lester
-VB, TR

Sam Rebret
-FB, SB

July 23, 2019

To Whom It May Concern:

Chris White is an official currently registered with the Arkansas Official's Association for the 2019-2020 school year. He has been a member for the past five years. He is currently registered to work baseball, basketball, football, and volleyball. He is at the highest division in all four sports and is in good standing with the association. He has also officiated wrestling and softball in previous seasons.

Please let me know if you need any additional information.

Sincerely,

*Kristy Clark*

Kristy Clark
Administrative Assistant
Arkansas Activities Association
3920 Richards Rd.
North Little Rock, AR 72117
kristy@ahsaa.org
Phone: 501-955-2500
Fax: 501-955-2600

EXHIBIT 57

WHITNEY BARNES DEPOSITION

PAGE 18

(1 page)

1 made?

2 A    Yes.

3 Q    All right.

4      The allegations that you made in that report were that you

5 saw a vehicle that was similar to Chris White's following you

6 and you believe Chris White was following you on campus,

7 correct?

8 A    Yes.

9 Q    You were able to give Mr. White's license plate number to

10 the U of O Public Safety, is that right?

11 A    Yes.

12 Q    How did you have his license plate number?

13 A    I have seen his truck numerous times.

14 Q    And so you memorized his license plate based on that?

15 A    I have a picture of it.  That way I would know if he was

16 following me.

17 Q    Okay.  When did you take the picture?

18 A    I honestly couldn't tell you.

19 Q    Do you still have the picture?

20 A    No, sir.

21 Q    Okay.  Why don't you have it now?

22 A    I got a new phone.

23 Q    It turns out the allegations that you made that Mr. White

24 was following you on campus in that report weren't true,

25 correct?

EXHIBIT 58

WHITNEY BARNES DEPOSITION

PAGE 19, 20

(2 pages)

1        MS. MONAGHAN:  Object to the form.

2     A     I didn't say that he was following me on campus, I said I

3     saw a truck that looked like his and I wanted to make sure it

4     wasn't.

5     Q     Okay.  And it turns out it wasn't him on campus, right?

6     A     Correct.

7     Q     You also put in that report or at least tell the officer that

8     he made physical contact at some point, preventing you from

9     leaving.  Do you recall telling the officer that?

10    A     When exactly?

11    Q     Paragraph three of the report says: "She reported that she

12    had seen him following her around town and the surrounding

13    areas and that he knows her address and has her cell phone

14    pass code.  Barnes reports that he has made physical contact

15    preventing her from leaving."

16          What would be that physical contact preventing her from

17    leaving?

18    A     I'm not sure.

19    Q     So you're saying that Mr. Waddell just added that on his

20    own to this report?

21    A     I can't say.

22    Q     Okay.

23    A     I don't remember exactly the time and exactly what was

24    happening whenever this report was made.

25    Q     It was January 25th of '17 at 1:25 p.m.

A    Yes, sir.

Q    Okay. So you don't remember Mr. White having physical contact with you preventing you from leaving?

A    Not that day.

Q    Okay. Then when would it have happened? If it wasn't that day, when did it happen?

A    Honestly, sir, I couldn't say. I don't remember.

Q    You don't remember. Do you remember it ever happening?

A    No.

Q    Okay. So Mr. Waddell would have been mistaken in putting that in there?

        MS. MONAGHAN: Object to the form.

A    I don't know that he would have been mistaken, but I don't remember it at this exact time.

Q    Okay. When were you first contacted to give a statement about Chris White's activities at the Aquatic Center?

A    I'd have to say some time in December, early December.

Q    And who had contacted you?

A    Mary Townsend, I believe.

Q    And what was specifically discussed between you and Mary about what you needed to provide?

A    She said I needed to provide a statement of the conversations that me and Chris had and what just would have happened during my experience with it, the whole situation.

# EXHIBIT 59

## FOUR STAR AUTO RECEIPT

### (1 page)

**Four Star Auto**
1715 CR 2431
Leona, AR 77246

Cell: (773) 973-0303

No. 5759

| QTY | Part NO. & Description | | | |
|---|---|---|---|---|
| 1 | Mass air flow sensor | 105 | 70 | |
| 6 | iridium spark plugs | 67 | 98 | |
| 1 | gold distributor | 106 | 51 | |
| | [handwritten notes] | | | |
| | paint | | | |

Phone (773) 555-0199

NAME Chris White

Bruno Roberts

DATE 1-25-7

ORDER WRITTEN BY

ADDRESS

CITY-STATE-ZIP

HOME PHONE

BUS. PHONE 35
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

PART, MAKE & MODEL: 01 S10

SERIAL NUMBER

ODOMETER

LICENSE NUMBER

**DESCRIPTION OF WORK**

☐ LUBE ☐ CHANGE OIL ☐ OIL FILTER ☐ TUNE-UP ☐ TRANS ☐ REPF.

| DESCRIPTION | AMOUNT |
|---|---|
| Scan PCM Mass air flow codes | 30 00 |
| Install new Mass air flow sensor split | - |
| Plugs + Mass distributor | 226 80 |

**ACCESSORIES**

**TOTAL ACCESSORIES**

| | |
|---|---|
| TOTAL LABOR | 256 00 |
| TOTAL PARTS | 762 85 |
| ACCESSORIES | |
| GREASE & OIL | |
| Sub Total | 50 |
| Tax | |
| TOTAL | |

Thank You

SIGNATURE

457746
31.3
3.98.17

## THE CIRCUIT COURT OF JOHNSON COUNTY, ARKANSAS

CHRISTOPHER WHITE
Plaintiff

v.                                                          No. 36CU-19-159

THE CITY OF CLARKSVILLE, ARKANSAS,
a municipality and political subdivision of the State of
Arkansas, d/b/a CLARKSVILLE POLICE DEPARTMENT
Defendant

### SUMMONS

### THE STATE OF ARKANSAS TO DEFENDANT:

CITY OF CLARKSVILLE
205 WALNUT STREET
CLARKSVILLE AR 72830

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) — or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas — you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:
CHRIS WHITE, PO BOX 643, CLARKSVILLE AR 72830

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional Notices Included:

Address of Clerk's Office
215 WEST MAIN STREET
CLARKSVILLE AR 72830

CLERK OF COURT

*M. Harmey*
[Signature of Clerk or Deputy Clerk]

Date: 7-29-19

No. _____ **This summons is for CITY OF CLARKSVILLE** (*name of Defendant*).

## PROOF OF SERVICE

☐ On _____ [date] I personally delivered the summons and complaint to the defendant at _____ [place]; or

☐ After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____ [describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

☐ On _____ [date] I left the summons and complaint with _____ , a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

☐ On_____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

☐ On _____ [date] at _____ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with

_____ [name

and job description]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]:

☐ I was unable to execute service because:

My fee is $ _____ .

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____ SHERIFF OF JOHNSON COUNTY, ARKANSAS

By: _____

[signature of server]

_____

[printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____

By: _____

[signature of server]

_____

[printed name]

Address: _____

Phone: _____

Subscribed and sworn to before me this date: _____

Notary Public _____

My Commission Expires: _____

Additional information regarding service or attempted service:

THE CIRCUIT COURT OF JOHNSON COUNTY, ARKANSAS

CHRISTOPHER WHITE
Plaintiff

v.                                         No. 36CR-19-59

WHITNEY BARNES
Defendant

SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

WHITNEY BARNES, Clarksville Aquatics Center          WHITNEY BARNES

1611 OAKLAND STREET                                  713 LOUISE STREET

CLARKSVILLE AR 72830                                 CLARKSVILLE AR 72830

                                                     (479) 647-6998

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) — or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas — you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:
CHRIS WHITE, PO BOX 643, CLARKSVILLE AR 72830

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

**Additional Notices Included:**

CLERK OF COURT

Address of Clerk's Office
215 WEST MAIN STREET
CLARKSVILLE AR 72830

M. Vancey
[Signature of Clerk or Deputy Clerk]

Date: 2-29-19

No. _____ This summons is for **WHITNEY BARNES** (*name of Defendant*).

## PROOF OF SERVICE

☐ On _____ [date] I personally delivered the summons and complaint to the defendant at _____ [place]; or

☐ After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____ [describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

☐ On _____ [date] I left the summons and complaint with _____, a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

☐ On_____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

☐ On _____ [date] at _____ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with

_____ [name and job description]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]:

☐ I was unable to execute service because:

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____ SHERIFF OF JOHNSON COUNTY, ARKANSAS

By: _____
     [signature of server]


_____
     [printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____

By: _____
     [signature of server]


_____
     [printed name]

Address: _____

     Phone: _____

Subscribed and sworn to before me this date: _____

     Notary Public _____

My Commission Expires: _____

Additional information regarding service or attempted service:


_____

THE CIRCUIT COURT OF JOHNSON COUNTY, ARKANSAS

CHRISTOPHER WHITE
Plaintiff

v.                                          No. 36CU-19-159

JEFF ROSS, Clarksville Police Department
Defendant

SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

JEFF ROSS, Clarksville Police Department
1008 WEST MAIN STREET
CLARKSVILLE AR 72830

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) — or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas — you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:
CHRIS WHITE, PO BOX 643, CLARKSVILLE AR 72830

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional Notices Included:

Address of Clerk's Office
215 WEST MAIN STREET
CLARKSVILLE AR 72830

CLERK OF COURT

_M. Bonsy_
[Signature of ~~Clerk~~ or Deputy Clerk]

Date: 7-29-19

No. _____ This summons is for **JEFF ROSS** (*name of Defendant*).

## PROOF OF SERVICE

☐ On _____ [date] I personally delivered the summons and complaint to the defendant at _____ [place]; or

☐ After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____ [describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

☐ On _____ [date] I left the summons and complaint with _____, a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

☐ On_____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

☐ On _____ [date] at _____ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with

_____ [name and job description]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]:

☐ I was unable to execute service because:

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____ SHERIFF OF JOHNSON COUNTY, ARKANSAS

By: _____
[signature of server]

_____
[printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____

By: _____
[signature of server]

_____
[printed name]

Address: _____

Phone: _____

Subscribed and sworn to before me this date: _____

Notary Public _____

My Commission Expires: _____

Additional information regarding service or attempted service:

_____

THE CIRCUIT COURT OF JOHNSON COUNTY, ARKANSAS

CHRISTOPHER WHITE
Plaintiff

v.                                              No. _36CV-19-159_

MARY TOWNSEND
Defendant

## SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

MARY TOWNSEND

2692 WIRE ROAD

CLARKSVILLE AR 72830

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) — or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas — you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:
CHRIS WHITE, PO BOX 643, CLARKSVILLE AR 72830

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

**Additional Notices Included:**

Address of Clerk's Office
215 WEST MAIN STREET
CLARKSVILLE AR 72830

CLERK OF COURT

_M. Clancy_
[Signature of Clerk or Deputy Clerk]

Date: _7-29-19_

No. _____ **This summons is for MARY TOWNSEND** (*name of Defendant*).

## PROOF OF SERVICE

☐ On _____ [date] I personally delivered the summons and complaint to the
defendant at _____ [place]; or

☐ After making my purpose to deliver the summons and complaint clear, on
_____ [date] I left the summons and complaint in the close proximity of the
defendant by _____ [describe how the summons and
complaint was left] after he/she refused to receive it when I offered it to him/her; or

☐ On _____ [date] I left the summons and complaint with _____ , a
member of the defendant's family at least 18 years of age, at _____
[address], a place where the defendant resides; or

☐ On_____ [date] I delivered the summons and complaint to _____ [name of
individual], an agent authorized by appointment or by law to receive service of summons on
behalf of _____ [name of defendant]; or

☐ On _____ [date] at _____ [address], where
the defendant maintains an office or other fixed location for the conduct of business, during
normal working hours I left the summons and complaint with
_____ [name
and job description]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in a lawsuit, and I served the
summons and complaint on the defendant by certified mail, return receipt requested, restricted
delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of
the summons and complaint by first-class mail to the defendant together with two copies of a
notice and acknowledgment and received the attached notice and acknowledgment form within
twenty days after the date of mailing.

☐ Other [specify]:

☐ I was unable to execute service because:

My fee is $ _____ .

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____ SHERIFF OF JOHNSON COUNTY, ARKANSAS

By: _____
    [signature of server]

_____
[printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____

By: _____
    [signature of server]

_____
[printed name]

Address: _____

Phone: _____

Subscribed and sworn to before me this date: _____

Notary Public _____

My Commission Expires: _____

Additional information regarding service or attempted service:

_____

THE CIRCUIT COURT OF JOHNSON COUNTY, ARKANSAS

CHRISTOPHER WHITE
Plaintiff

v.                                                    No. 36CU-19-159

JON SIMPSON
Defendant

SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

JON SIMPSON

2001 RIDGEWOOD DRIVE

CLARKSVILLE AR 72830

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) — or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas — you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney. whose name and address are:
CHRIS WHITE, PO BOX 643, CLARKSVILLE AR 72830

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

**Additional Notices Included:**

Address of Clerk's Office
215 WEST MAIN STREET
CLARKSVILLE AR 72830

CLERK OF COURT

*M. Vanooy*
[Signature of ~~Clerk or~~ Deputy Clerk]

Date: 7-29-19

No. _____ This summons is for JON SIMPSON (*name of Defendant*).

## PROOF OF SERVICE

☐ On _____ [date] I personally delivered the summons and complaint to the defendant at _____ [place]; or

☐ After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____ [describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

☐ On _____ [date] I left the summons and complaint with _____ , a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

☐ On_____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

☐ On _____ [date] at _____ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with

_____ [name and job description]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]:

☐ I was unable to execute service because:

My fee is $ _____ .

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____ SHERIFF OF JOHNSON COUNTY, ARKANSAS

By: _____
    [signature of server]


_____
[printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____

By: _____
    [signature of server]


_____
[printed name]

Address: _____

    Phone: _____

Subscribed and sworn to before me this date: _____

    Notary Public _____

My Commission Expires: _____

Additional information regarding service or attempted service:

THE CIRCUIT COURT OF JOHNSON COUNTY, ARKANSAS

CHRISTOPHER WHITE
Plaintiff

v.                                        No. 36CU-19-159

TOM COGAN
Defendant

SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

TOM COGAN

1103 EDGEWOOD STREET

CLARKSVILLE AR 72830

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) — or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas — you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:
CHRIS WHITE, PO BOX 643, CLARKSVILLE AR 72830

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

**Additional Notices Included:**

Address of Clerk's Office
215 WEST MAIN STREET
CLARKSVILLE AR 72830

CLERK OF COURT

*M. Vanroy*

[Signature of Clerk or Deputy Clerk]

Date: 7-29-18

No. _____ This summons is for **TOM COGAN** (*name of Defendant*).

## PROOF OF SERVICE

☐ On _____ [date] I personally delivered the summons and complaint to the defendant at _____ [place]; or

☐ After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____ [describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

☐ On _____ [date] I left the summons and complaint with _____, a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

☐ On_____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

☐ On _____ [date] at _____ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with

_____ [name and job description]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]:

☐ I was unable to execute service because:

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____ SHERIFF OF JOHNSON COUNTY, ARKANSAS

By: _____
    [signature of server]


_____
[printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____

By: _____
    [signature of server]


_____
[printed name]

Address: _____

    Phone: _____

Subscribed and sworn to before me this date: _____

    Notary Public _____

My Commission Expires: _____

Additional information regarding service or attempted service:

# Johnson County Sheriff

Po Box 39 Clarksville, AR 72830 (479) 754-2200

**CTN:** 2019 - 70

**Case No: 36CV19-159**
White, Christopher
VS.
Cogan, Tom
Target: [Blank Name]

N/A
1103 Edgewood St
Clarksville

7-29-19

| | Attempted Service | | | |
|---|---|---|---|---|
| | Target | Date | Officer | Initials |
| | | 7-30-19 | R. Cooley | |
| | | | | |

Return Date:

I certify that I have served this Summon **on** as follows:

☑ **Personal Service** - by leaving a copy of the Summon with   personally

☐ **Substitute Service** -by leaving a copy of the Summon at the target's usual place of resident with a member of the family, of the age of 18 years or upwards, and informing that person of the contents therof. A copy of the summons was mailed on _____ to

☐ **Service on -** ☐ Corp. ☐ Co. ☐ Business ☐ Partnership

By leaving a copy of the Summon with the registered agent, authorized person or partner of

Writ Served On: _____ (relationship) _____

Sex: ☐ Male ☐ Female  **Race:** ☐ Black ☐ White ☐ Asian ☐ Am. Indian ☐ N. Hawaiian ☑ Unknown  Age: ____

Served By: _____ Date: _____ Time: _____

**ADDITIONAL REMARKS:**

**Sheriff's Fees:**
Service and Return: _____ Miles: _____ Total: _____
Fees Paid: _____ Paid By: _____

**Johnson County Sheriff**

Copyright Relativity Inc © - RPS(Relativity Public Safety)

THE CIRCUIT COURT OF JOHNSON COUNTY, ARKANSAS

CHRISTOPHER WHITE
Plaintiff

v.                                              No. 36CU-19-159

TOM COGAN
Defendant

## SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

TOM COGAN

1103 EDGEWOOD STREET

CLARKSVILLE AR 72830

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) — or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas — you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:
CHRIS WHITE, PO BOX 643, CLARKSVILLE AR 72830

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional Notices Included:

Address of Clerk's Office                    CLERK OF COURT
215 WEST MAIN STREET
CLARKSVILLE AR 72830

                                             *M. Vannoy*
                                             [Signature of Clerk or Deputy Clerk]

                                             Date: 7-29-18

No. _____ This summons is for TOM COGAN (*name of Defendant*).

## PROOF OF SERVICE

☒ On _7-30-19_ [date] I personally delivered the summons and complaint to the defendant at ___Name___ [place]; or

☐ After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____ [describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

☐ On _____ [date] I left the summons and complaint with _____, a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

☐ On_____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

☐ On _____ [date] at _____ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with

_____ [name and job description]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

· ☐ I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]:

☐ I was unable to execute service because:

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: __7-30-19__ SHERIFF OF JOHNSON COUNTY, ARKANSAS

By: __L. Casey QC #36__
[signature of server]

__Lisa Casey, Aux. Deputy #36__
[printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____

By: _____
[signature of server]

_____
[printed name]

Address: _____

Phone: _____

Subscribed and sworn to before me this date: _____

Notary Public _____

My Commission Expires: _____

Additional information regarding service or attempted service:

_____

# Johnson County Sheriff
## Po Box 39 Clarksville, AR 72830 (479) 754-2200

**CTN:** 2019 - 73

**Case No: 36CV19-159**

**White, Christopher**

VS.

**City Of Clarksville**

Target: City Of Clarksville

205 W Walnut ST
Clarksville, AR 72830

| Attempted Service | | | | |
|---|---|---|---|---|
| Target | Date | | Officer | Initials |
| | 7-30-19 | | R. Clasens-36 | TAC |
| | | | | |
| | | | | |
| | | | | |

**Return Date:** _____

I certify that I have served this Summon on **City Of Clarksville** as follows:

☑ **Personal Service** - by leaving a copy of the Summon with City Of Clarksville personally.

☐ **Substitute Service** - by leaving a copy of the Summon at the target's usual place of resident with a member of the family, of the age of 18 years or upwards, and informing that person of the contents therof. A copy of the summons was mailed on _____ to City Of Clarksville.

☐ **Service on** - ☐ Corp. ☐ Co. ☐ Business ☐ Partnership

By leaving a copy of the Summon with the registered agent, authorized person or partner of City Of Clarksville.

**Writ Served On:** _____ (relationship) _____

**Sex:** ☐ Male ☐ Female **Race:** ☐ Black ☐ White ☐ Asian ☐ Am. Indian ☐ N. Hawaiian ☑ Unknown **Age:** ____

**Served By:** _____ **Date:** _____ **Time:** _____

**ADDITIONAL REMARKS:** _____

_____

_____

_____

_____

_____

**Sheriff's Fees:**

Service and Return: _____ Miles: _____ Total: _____

Fees Paid: _____ Paid By: _____

**Johnson County Sheriff**

Copyright Relativity Inc © - RPS(Relativity Public Safety)

THE CIRCUIT COURT OF JOHNSON COUNTY, ARKANSAS

CHRISTOPHER WHITE
Plaintiff

v.

No. 36CU-19-159

THE CITY OF CLARKSVILLE, ARKANSAS,
a municipality and political subdivision of the State of
Arkansas, d/b/a CLARKSVILLE POLICE DEPARTMENT
Defendant

## SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

CITY OF CLARKSVILLE
205 WALNUT STREET
CLARKSVILLE AR 72830

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) — or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas — you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:
CHRIS WHITE, PO BOX 643, CLARKSVILLE AR 72830

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

**Additional Notices Included:**

Address of Clerk's Office
215 WEST MAIN STREET
CLARKSVILLE AR 72830

CLERK OF COURT

M. Conroy
[Signature of Clerk or Deputy Clerk]

Date: 7-29-19

**No. _____** This summons is for **CITY OF CLARKSVILLE** (*name of Defendant*).

## PROOF OF SERVICE

☒ On _7-30-19_ [date] I personally delivered the summons and complaint to the defendant at _City of_ [place]; or _Clarksville Mayor's Office_

☐ After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____ [describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

☐ On _____ [date] I left the summons and complaint with _____, a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

☐ On _____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

☐ On _____ [date] at _____ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with

_____ [name and job description]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]:

☐ I was unable to execute service because:

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: 7-30-19 SHERIFF OF JOHNSON COUNTY, ARKANSAS

By: L. Casey, JC #36
[signature of server]

LISA CASEY, Aux. Deputy, JC#36
[printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____

By: _____
[signature of server]

_____
[printed name]

Address: _____

Phone: _____

Subscribed and sworn to before me this date: _____

Notary Public _____

My Commission Expires: _____

Additional information regarding service or attempted service:

_____

# Johnson County Sheriff

Po Box 39 Clarksville, AR 72830 (479) 754-2200

**CTN:** 2019 - 72

**Case No: 36CV19-159**
**White, Christopher**
VS.
Ross, Jeff
Target Ross, Jeff

1008 W Main ST
Clarksville, AR 72830

**Attempted Service**

| Target | Date | Officer | Initials |
|--------|------|---------|----------|
| | 7-30-19 | L. Casy | LC |
| | | | |
| | | | |

7-29-19

**Return Date:**

I certify that I have served this **Summon** on **Jeff Ross** as follows:

☐ **Personal Service -** by leaving a copy of the Summon with Jeff Ross personally.

☐ **Substitute Service -**by leaving a copy of the Summon at the target's usual place of resident with a member of the family, of the age of 18 years or upwards, and informing that person of the contents therof. A copy of the summons was mailed on _____ to Jeff Ross.

☐ **Service on -** ☐ Corp. ☐ Co. ☐ Business ☐ Partnership

By leaving a copy of the Summon with the registered agent, authorized person or partner of Jeff Ross

Writ Served On: _____(relationship)_____

Sex: ☐ Male ☐ Female Race: ☐ Black ☐ White ☐ Asian ☐ Am. Indian ☐ N. Hawaiian ☑ Unknown Age: ____

Served By: _____ Date: _____ Time: _____

**ADDITIONAL REMARKS:** _____

_____

_____

_____

_____

_____

**Sheriff's Fees:**
Service and Return: _____ Miles: _____ Total: _____

Fees Paid: _____ Paid By: _____

**Johnson County Sheriff**

Printed: 7/29/2019 4:17:17 PM

Copyright Relativity Inc.© - RPS(Relativity Public Safety)

THE CIRCUIT COURT OF JOHNSON COUNTY, ARKANSAS

CHRISTOPHER WHITE
Plaintiff

v.

No. _36CU-19-159_

JEFF ROSS, Clarksville Police Department
Defendant

SUMMONS

THE STATE OF ARKANSAS TO DEFENDANT:

JEFF ROSS, Clarksville Police Department
1008 WEST MAIN STREET
CLARKSVILLE AR 72830

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) — or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas — you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:
CHRIS WHITE, PO BOX 643, CLARKSVILLE AR 72830

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional Notices Included:

Address of Clerk's Office
215 WEST MAIN STREET
CLARKSVILLE AR 72830

CLERK OF COURT

_M. Varsay._
[Signature of Clerk or Deputy Clerk]

Date: _7-29-19_

No. _____ This summons is for JEFF ROSS *(name of Defendant).*

## PROOF OF SERVICE

☒ On _7-30-19_ [date] I personally delivered the summons and complaint to the
defendant at City [place]; or
Police Station

☐ After making my purpose to deliver the summons and complaint clear, on
_____ [date] I left the summons and complaint in the close proximity of the
defendant by _____ [describe how the summons and
complaint was left] after he/she refused to receive it when I offered it to him/her; or

☐ On _____ [date] I left the summons and complaint with _____ , a
member of the defendant's family at least 18 years of age, at _____
[address], a place where the defendant resides; or

☐ On_____ [date] I delivered the summons and complaint to _____ [name of
individual], an agent authorized by appointment or by law to receive service of summons on
behalf of _____ [name of defendant]; or

☐ On _____ [date] at _____ [address], where
the defendant maintains an office or other fixed location for the conduct of business, during
normal working hours I left the summons and complaint with
_____ [name
and job description]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in a lawsuit, and I served the
summons and complaint on the defendant by certified mail, return receipt requested, restricted
delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of
the summons and complaint by first-class mail to the defendant together with two copies of a
notice and acknowledgment and received the attached notice and acknowledgment form within
twenty days after the date of mailing.

☐ Other [specify]:

☐ I was unable to execute service because:

My fee is $ _____ .

**To be completed if service is by a sheriff or deputy sheriff:**

Date: 7-30-19   SHERIFF OF JOHNSON COUNTY, ARKANSAS

By: L. Casey, JC #36
   [signature of server]

Lisa Casey, Aux. Deputy 36
   [printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____

By: _____
   [signature of server]

   _____
   [printed name]

Address: _____

   Phone: _____

Subscribed and sworn to before me this date: _____

   Notary Public _____

My Commission Expires: _____

Additional information regarding service or attempted service:

_____

# Johnson County Sheriff

Po Box 39 Clarksville, AR 72830 (479) 754-2200

## Attempted Service

**CTN:** 2019 - 66

**Case No: 36CV19-159**
White, Christopher
VS.
Townsend, Mary
Target: Townsend, Mary

2692 Wire Road
Clarksville, AR 72830

| Target | Date | Officer | Initials |
|--------|------|---------|----------|
| | 7-30-19 | S. Carey 36 | ZC |
| | | | |
| | | | |
| | | | |
| | | | |

7-29-19

**Return Date:** _____

I certify that I have served this Summon on Mary Townsend as follows:

☒ **Personal Service -** by leaving a copy of the Summon with Mary Townsend personally.

☐ **Substitute Service -** by leaving a copy of the Summon at the target's usual place of resident with a member of the family, of the age of 18 years or upwards, and informing that person of the contents therof. A copy of the summons was mailed on _____ to Mary Townsend

☐ **Service on -** ☐ Corp. ☐ Co. ☐ Business ☐ Partnership

By leaving a copy of the Summon with the registered agent, authorized person or partner of Mary Townsend

**Writ Served On:** _____ (relationship) _____

**Sex:** ☐ Male ☐ Female **Race:** ☐ Black ☐ White ☐ Asian ☐ Am. Indian ☐ N. Hawaiian ☒ Unknown **Age:** _____

**Served By:** _____ **Date:** _____ **Time:** _____

**ADDITIONAL REMARKS:** _____

_____

_____

_____

_____

_____

_____

**Sheriff's Fees:**
Service and Return: _____ Miles: _____ Total: _____
Fees Paid: _____ Paid By: _____

_____
**Johnson County Sheriff**

Copyright Relativity Inc.© - RPS(Relativity Public Safety)

THE CIRCUIT COURT OF JOHNSON COUNTY, ARKANSAS

CHRISTOPHER WHITE
Plaintiff

v.

No. 36CU-19-159

MARY TOWNSEND
Defendant

SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

MARY TOWNSEND

2692 WIRE ROAD

CLARKSVILLE AR 72830

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) — or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas — you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:
CHRIS WHITE, P.O. BOX 643, CLARKSVILLE AR 72830

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

<u>Additional Notices Included:</u>

Address of Clerk's Office
215 WEST MAIN STREET
CLARKSVILLE AR 72830

CLERK OF COURT

_M. Vannoy_
[Signature of Clerk or Deputy Clerk]

Date: _7-29-19_

No. _____ This summons is for **MARY TOWNSEND** (*name of Defendant*).

## PROOF OF SERVICE

☒ On **7-30-19** [date] I personally delivered the summons and complaint to the defendant at **Casey's General Store** [place]; or

☐ After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____ [describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

☐ On _____ [date] I left the summons and complaint with _____, a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

☐ On _____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

☐ On _____ [date] at _____ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with _____ [name and job description]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]:

☐ I was unable to execute service because:

My fee is $ _____.

To be completed if service is by a sheriff or deputy sheriff:

Date: __7-30-19__ SHERIFF OF JOHNSON COUNTY, ARKANSAS

By: __L. Casey, JC #36__
[signature of server]

__Lisa Casey, Aux. Deputy #36__
[printed name, title, and badge number]

To be completed if service is by a person other than a sheriff or deputy sheriff:

Date: _____

By: _____
  [signature of server]

_____
  [printed name]

Address: _____

  Phone: _____

Subscribed and sworn to before me this date: _____

  Notary Public _____

My Commission Expires: _____

Additional information regarding senior attempted service:

# Johnson County Sheriff

Po Box 39 Clarksville, AR 72830 (479) 754-2200

**Attempted Service**

CTN: 2019 - 69

Case No: 36CV19-159
White, Christopher
VS.
Simpson, Jon
Target: Simpson, Jon

2001 Ridgewood DR
Clarksville, AR 72830

| Target | Date | Officer | Initials |
|---|---|---|---|
| | 7-30-19 | | |
| | 7-31-19 | | |
| | 8-1-19 | | |
| | | | |

7-29-19

Return Date:

I certify that I have served this Summon on Jon Simpson as follows:

☐ **Personal Service** - by leaving a copy of the Summon with Jon Simpson personally.

☐ **Substitute Service** - by leaving a copy of the Summon at the target's usual place of resident with a member of the family, of the age of 18 years or upwards, and informing that person of the contents therof. A copy of the summons was mailed on _____ to Jon Simpson.

☐ **Service on -**     ☐ Corp. ☐ Co. ☐ Business ☐ Partnership

By leaving a copy of the Summon with the registered agent, authorized person or partner of Jon Simpson

Writ Served On: Jon Simpson _____ (relationship) _____

Sex: ☑ Male ☐ Female  Race: ☐ Black ☑ White ☐ Asian ☐ Am. Indian ☐ N. Hawaiian ☑ Unknown Age: ____

Served By: Cpl Seth Smith  Date: 8-3-19  Time: 12:35 PM

**ADDITIONAL REMARKS:**

Served

**Sheriff's Fees:**
Service and Return: _____ Miles: _____ Total: _____
Fees Paid: _____ Paid By: _____

**Johnson County Sheriff**

Copyright Relativity Inc.© - RPS(Relativity Public Safety)

THE CIRCUIT COURT OF JOHNSON COUNTY, ARKANSAS

CHRISTOPHER WHITE
Plaintiff

v.                                          No. _36CU-19-159_

JON SIMPSON
Defendant

SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

JON SIMPSON

2001 RIDGEWOOD DRIVE

CLARKSVILLE AR 72830

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.
Within 30 days after service of this summons on you (not counting the day you received it) — or
60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas
— you must file with the clerk of this court a written answer to the complaint or a motion under
Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and
address are:
CHRIS WHITE, PO BOX 643, CLARKSVILLE AR 72830

If you fail to respond within the applicable time period, judgment by default may be entered
against you for the relief demanded in the complaint.

<u>**Additional Notices Included:**</u>

Address of Clerk's Office
215 WEST MAIN STREET
CLARKSVILLE AR 72830

CLERK OF COURT

_M. Varner_
[Signature of ~~Clerk or~~ Deputy Clerk]

Date: _7-29-19_

**No.** _____ **This summons is for JON SIMPSON** *(name of Defendant).*

## PROOF OF SERVICE

☐ On _8-3-19_ [date] I personally delivered the summons and complaint to the defendant at _Residence_ [place]; or

☐ After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____ [describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

☐ On _____ [date] I left the summons and complaint with _____, a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

☐ On_____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

☐ On _____ [date] at _____ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with

_____ [name and job description]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]:

☐ I was unable to execute service because:

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: 8-3-19   SHERIFF OF JOHNSON COUNTY, ARKANSAS

By: _____
[signature of server]

Captain Seth Pruitt JC-3
[printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____

By: _____
[signature of server]

_____
[printed name]

Address: _____

Phone: _____

Subscribed and sworn to before me this date: _____

Notary Public _____

My Commission Expires: _____

Additional information regarding service or attempted service:

_____



## Johnson County Sheriff's Office  Jimmy Stephens, Sheriff

P.O. Box 39
301 Porter Industrial Road
Clarksville, AR, 72830

479-754-2200
479-754-2210 Fax
www.johnsoncosheriff.com

August 5, 2019

**TO WHOM IT MAY CONCERN:**

**RE: Christopher White**

   CV-19-159

The following defendants were served for the above case, but no complaint was attached to any:

Jeff Ross, Chief of Police

Mary Townsend

Tom Cogan

Jon Simpson

Whitney Barnes

City of Clarksville

*Laura Nardin*
*Chief Deputy Clerk*

*With courage, honor and integrity, we protect the rights of all citizens*

THE CIRCUIT COURT OF JOHNSON COUNTY, ARKANSAS

*No Complaint was brought to S.D. to serve*

CHRISTOPHER WHITE
Plaintiff

v.

No. 36CR-19-159

WHITNEY BARNES
Defendant

SUMMONS

THE STATE OF ARKANSAS TO DEFENDANT:

WHITNEY BARNES, Clarksville Aquatics Center

1611 OAKLAND STREET

CLARKSVILLE AR 72830

WHITNEY BARNES

713 LOUISE STREET

CLARKSVILLE AR 72830

(479) 647-6998

2019 AUG 12 AM 9: 50

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) — or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas — you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:
CHRIS WHITE, PO BOX 643, CLARKSVILLE AR 72830

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional Notices Included:

Address of Clerk's Office
215 WEST MAIN STREET
CLARKSVILLE AR 72830

CLERK OF COURT

M. Vannoy
[Signature of Clerk of Deputy Clerk]

Date: 7-29-19

No. _____ This summons is for **WHITNEY BARNES** (*name of Defendant*).

## PROOF OF SERVICE

☐ On _____ [date] I personally delivered the summons and complaint to the defendant at _____ [place]; or

☐ After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____ [describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

☐ On _____ [date] I left the summons and complaint with _____ , a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

☐ On _____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

☑ On *Aug. 9, 2019* [date] at *2901 A. Coke* ~479-214-1448~ *mailed* *Greenwood, AR 72936* [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with

_____ [name and job description]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]:

☐ I was unable to execute service because:

My fee is $ _____ .

**To be completed if service is by a sheriff or deputy sheriff:**

Date: *8-9-19* SHERIFF OF JOHNSON COUNTY, ARKANSAS

By: _Karen Nordin_____
[signature of server]

_Karen Nordin  JC-42_____
[printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____

By: _____
[signature of server]

_____
[printed name]

Address: _____

Phone: _____

Subscribed and sworn to before me this date: _____

Notary Public _____

My Commission Expires: _____

Additional information regarding service or attempted service:

_____

THE CIRCUIT COURT OF JOHNSON COUNTY, ARKANSAS

CHRISTOPHER WHITE
Plaintiff

v.                                              No. 36CV-19-#159

TOM COGAN
Defendant

SUMMONS

THE STATE OF ARKANSAS TO DEFENDANT:

TOM COGAN

1103 EDGEWOOD STREET

CLARKSVILLE AR 72830

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) — or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas — you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:
CHRIS WHITE, PO BOX 643, CLARKSVILLE AR 72830

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional Notices Included:

Address of Clerk's Office
215 WEST MAIN STREET
CLARKSVILLE AR 72830

CLERK OF COURT

Monica King
[Signature of Clerk or ~~Deputy Clerk~~]

Date: 8-19-19

No. _____ This summons is for TOM COGAN  (*name of Defendant*).

## PROOF OF SERVICE

☐ On _____ [date] I personally delivered the summons and complaint to the defendant at _____ [place]; or

☐ After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____ [describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

☐ On _____ [date] I left the summons and complaint with _____ , a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

☐ On_____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

☐ On _____ [date] at _____ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with

_____ [name and job description]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]:

☐ I was unable to execute service because:

My fee is $ _____.

THE CIRCUIT COURT OF JOHNSON COUNTY, ARKANSAS

CHRISTOPHER WHITE
Plaintiff

v.                                                    No. __36CU-19-19__

JON SIMPSON
Defendant

### SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

JON SIMPSON

2001 RIDGEWOOD DRIVE

CLARKSVILLE AR 72830

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) — or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas — you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:
CHRIS WHITE, PO BOX 643, CLARKSVILLE AR 72830

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

**Additional Notices Included:**

Address of Clerk's Office            CLERK OF COURT
215 WEST MAIN STREET
CLARKSVILLE AR 72830

_Monica King_
[Signature of Clerk or Deputy Clerk]

Date: __8-19-19__

No. _____ **This summons is for JON SIMPSON** (*name of Defendant*).

## PROOF OF SERVICE

☐ On _____ [date] I personally delivered the summons and complaint to the defendant at _____ [place]; or

☐ After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____ [describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

☐ On _____ [date] I left the summons and complaint with _____ , a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

☐ On _____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

☐ On _____ [date] at _____ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with

_____ [name and job description]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]:

☐ I was unable to execute service because:

My fee is $ _____ .

THE CIRCUIT COURT OF JOHNSON COUNTY, ARKANSAS

CHRISTOPHER WHITE
Plaintiff

v.                                                      No. 36CV-19-159

MARY TOWNSEND
Defendant

SUMMONS

THE STATE OF ARKANSAS TO DEFENDANT:

MARY TOWNSEND

2692 WIRE ROAD

CLARKSVILLE AR 72830

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) — or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas — you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:
CHRIS WHITE, PO BOX 643, CLARKSVILLE AR 72830

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

<u>Additional Notices Included:</u>

Address of Clerk's Office
215 WEST MAIN STREET
CLARKSVILLE AR 72830

CLERK OF COURT

*Monica King*
[Signature of Clerk or ~~Deputy Clerk~~]

Date: 8-19-19

No. _____ This summons is for **MARY TOWNSEND** (*name of Defendant*).

## PROOF OF SERVICE

☐ On _____ [date] I personally delivered the summons and complaint to the defendant at _____ [place]; or

☐ After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____ [describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

☐ On _____ [date] I left the summons and complaint with _____ , a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

☐ On_____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

☐ On _____ [date] at _____ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with

_____ [name and job description]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]:

☐ I was unable to execute service because:

My fee is $ _____.

THE CIRCUIT COURT OF JOHNSON COUNTY, ARKANSAS

CHRISTOPHER WHITE
Plaintiff

v.                                        No. 36CU-19-159

WHITNEY BARNES
Defendant

## SUMMONS

·THE STATE OF ARKANSAS TO DEFENDANT:

WHITNEY BARNES, Clarksville Aquatics Center          WHITNEY BARNES

1611 OAKLAND STREET                                  713 LOUISE STREET

CLARKSVILLE AR 72830                                 CLARKSVILLE AR 72830

                                                     (479) 647-6998

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) — or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas — you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

. The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:
CHRIS WHITE, PO BOX 643, CLARKSVILLE AR 72830

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional Notices Included:

                                                     CLERK OF COURT
Address of Clerk's Office
215 WEST MAIN STREET
CLARKSVILLE AR 72830                                 Monica King
                                                     [Signature of Clerk or Deputy Clerk]

                                                     Date:  8-19-19

No. _____ This summons is for **WHITNEY BARNES** (*name of Defendant*).

## PROOF OF SERVICE

☐ On _____ [date] I personally delivered the summons and complaint to the defendant at _____ [place]; or

☐ After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____ [describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

☐ On _____ [date] I left the summons and complaint with _____, a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

☐ On _____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

☐ On _____ [date] at _____ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with

_____ [name and job description]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]:

☐ I was unable to execute service because:

My fee is $ _____.

## THE CIRCUIT COURT OF JOHNSON COUNTY, ARKANSAS

**CHRISTOPHER WHITE**
Plaintiff

v.                                                    No. 36CU-19-159

**THE CITY OF CLARKSVILLE, ARKANSAS,**
a municipality and political subdivision of the State of
Arkansas, d/b/a CLARKSVILLE POLICE DEPARTMENT
Defendant

### SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

CITY OF CLARKSVILLE
205 WALNUT STREET
CLARKSVILLE AR 72830

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.
Within 30 days after service of this summons on you (not counting the day you received it) — or
60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas
— you must file with the clerk of this court a written answer to the complaint or a motion under
Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and
address are:
CHRIS WHITE, PO BOX 643, CLARKSVILLE AR 72830

If you fail to respond within the applicable time period, judgment by default may be entered
against you for the relief demanded in the complaint.

**Additional Notices Included:**

Address of Clerk's Office
215 WEST MAIN STREET
CLARKSVILLE AR 72830

CLERK OF COURT

Monica Kero
[Signature of Clerk or ~~Deputy Clerk~~]

Date: 8-19-19

No. _____ **This summons is for CITY OF CLARKSVILLE** (*name of Defendant*).

## PROOF OF SERVICE

☐ On _____ [date] I personally delivered the summons and complaint to the defendant at _____ [place]; or

☐ After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____ [describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

☐ On _____ [date] I left the summons and complaint with _____, a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

☐ On_____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

☐ On _____ [date] at _____ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with

_____ [name

and job description]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]:

☐ I was unable to execute service because:

My fee is $ _____.

THE CIRCUIT COURT OF JOHNSON COUNTY, ARKANSAS

CHRISTOPHER WHITE
Plaintiff

v.                                          No. 36CU-19-159

JEFF ROSS, Clarksville Police Department
Defendant

### SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

JEFF ROSS, Clarksville Police Department
1008 WEST MAIN STREET
CLARKSVILLE AR 72830

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) — or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas — you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:
CHRIS WHITE, PO BOX 643, CLARKSVILLE AR 72830

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional Notices Included:

CLERK OF COURT

Address of Clerk's Office
215 WEST MAIN STREET
CLARKSVILLE AR 72830

_Monica King_
[Signature of Clerk or Deputy Clerk]

Date: 8-19-19

No. _____ **This summons is for JEFF ROSS** (*name of Defendant*).

## PROOF OF SERVICE

☐ On _____ [date] I personally delivered the summons and complaint to the defendant at _____ [place]; or

☐ After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____ [describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

☐ On _____ [date] I left the summons and complaint with _____ , a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

☐ On _____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

☐ On _____ [date] at _____ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with

_____ [name and job description]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]:

☐ I was unable to execute service because:

My fee is $ _____ .

**CHRIS WHITE**

**V.**                                          **CASE NO. 36CV19-159**

**MARK SIMPSON, Individually and in his**
**Official capacity at Mayor; THE CITY OF**
**CLARKSVILLE, ARKANSAS d/b/a**
**CLARKSVILLE POLICE DEPARTMENT**
**d/b/a MARVIN VINSON BUILDING AND**
**AQUATIC CENTER; JEFF ROSS, Clarksville**
**Police Department, Individually and in his Official**
**Capacity; TOM COGAN, Parks and Recreation**
**Director, Individually and in his Official Capacity;**
**And MARY TOWNSEND, Clarksville Aquatic**
**Center, Individually and in her Official Capacity ;**
**AND WHITNEY BARNES, Individually and in her Official**
**Capacity**                                     **DEFENDANTS**

## MOTION TO DISMISS

COME now Defendants herein, by and through counsel, Sara Monaghan, and for their

Motion to Dismiss the Plaintiff's Complaint, state:

1.    Plaintiff filed his Complaint in this case on July 29, 2019.  *See,* Complaint.

2.    Summons was issued on July 29, 2019.  *See,* Summons.

3.    The Plaintiff delivered a copy of the Summonses to the Johnson County

Sheriff's Department for service but did not deliver a copy of the Complaint as required by ARCP

4(d).  *See* Exhibit 1, Affidavit of Karen Nordin.

4.    On July 30, 2019, Lisa Casey with the Johnson County Sheriff's Department served

Tom Cogan, Verla Clark, an employee of The City of Clarksville, Jeff Ross, and Mary Townsend

with a copy of the Summons, however, the Complaint was not attached to the Summons.  *See*

Exhibit 2, Affidavit of Tom Cogan; Exhibit 3, Affidavit of Verla Clark; Exhibit 4, Affidavit of Jeff

Ross; & Exhibit 5, Affidavit of Mary Townend.

5. Despite the fact that no Complaint was attached to the Summons, Ms. Casey filed Proof of Service with the Court indicating that the above listed individuals had been served personally with a copy of the Summons and Complaint. *See* Cogan Proof of Service; City Proof of Service; Ross Proof of Service; Townsend Proof of Service; and City Proof of Service.

6. On August 3, 2019, Seth Pruitt of the Johnson County Sheriff's Office served Jon Simpson with a copy of the Summons, however, the Complaint was not attached to the Summons. *See* Exhibit 6, Affidavit of Jon Simpson.

7. On August 9, 2019, Karen Nordin from the Johnson County Sheriff's Office mailed a copy of the Complaint with no summons attached to Whitney Barnes at 2901 A.Coker, Greenwood, AR 72936. *See* Barnes Proof of Service and Exhibit 1.

8. On August 5, 2019, Karen Nordin filed an Affidavit with the Clerk of the Johnson County Sheriff's Department stating that all of the Defendants were served, but that no Complaint had been attached to the Summons. *See*, Nordin Letter.

9. Based on the testimony by the Defendants and Ms. Nordin, none of the Defendants were served with a copy of the Complaint with the Summons in compliance with Rule 4(d) of the Arkansas Rules of Civil Procedure.

10. Further, with respect to the City, the Plaintiff did not serve the proper individual in order to effectuate proper service on the City of Clarksville pursuant to ARCP 4(d).

11. The Plaintiff did not comply with the requirements of ARCP Rule 4(d)(8) in order to properly effectuate service through mail on Whitney Barnes as the mail was not served with a return receipt requested.

12. Based on the foregoing, the Defendants are entitled to dismissal for insufficiency of service of process and insufficiency of process.

2

## AFFIRMATIVE DEFENSES

1.     The allegations in the Complaint fail to state facts or a claim upon which relief may be granted.

2.     Defendants are entitled to tort, qualified, and punitive damages immunity under all applicable doctrines of immunity pursuant to state and federal law, including but not limited to, Ark. Code Ann. § 21-9-301.

3.     Defendants assert that no violation of Plaintiff's rights occurred.

4.     Defendants assert the affirmative defenses of res judicata, collateral estoppel, issue preclusion, and claim preclusion to the extent they may apply.

5.     To the extent it may apply, Defendants assert that the Plaintiff lacks standing.

6.     Defendants assert that Plaintiff's alleged injuries did not occur as a result of any policy or custom of the City of Clarksville.

7.     Defendants plead all defenses, as found applicable, pursuant to Ark. Rules of Civ. Proc. 8(c).

8.     Defendants assert that punitive damages are not recoverable against a municipality.

9.     Defendants in their individual capacities plead qualified and good faith immunities.

10.    Defendants assert the defense of qualified privilege.

11.    Defendants assert the defenses of insufficient service of process and insufficient process.

12.    Defendants avail themselves of all statute of limitations defenses applicable to this claim.

13.    Defendants reserve the right to amend or supplement this pleading as defenses become apparent or available during the course of litigation.

WHEREFORE, Defendants pray that this Court dismiss Plaintiff's Complaint against them and for all other just and proper relief to which there is entitlement.

Respectfully submitted,

BY: _Sara Monaghan_

Sara Monaghan
Ark. Bar No. 2005276
P.O. Box 38
North Little Rock, AR 72115
TELEPHONE: 501-978-6122
FACSIMILE: 501-537-7262
EMAIL: smonaghan@arml.org

## CERTIFICATE OF SERVICE

I, Sara Monaghan, hereby certify on August 28, 2019, I have filed the foregoing document, via hand delivery, with the Clerk of the Court, and I hereby certify that I have sent the document by Certified Mail to the person(s) referenced below:

Christopher White, Pro Se
P.O. Box 643
Clarksville, AR 72380

_Sara Monaghan_

Sara Monaghan

4

IN THE CIRCUIT COURT OF JOHNSON COUNTY, ARKANSAS
1ST DIVISION

CHRIS WHITE                                                          PLAINTIFF

V.                              CASE NO. 36CV19-159

MARK SIMPSON, Individually and in his
Official capacity as Mayor; THE CITY OF
CLARKSVILLE, ARKANSAS d/b/a
CLARKSVILLE POLICE DEPARTMENT
d/b/a MARVIN VINSON BUILDING AND
AQUATIC CENTER; JEFF ROSS, Clarksville
Police Department Individually and in his Official
Capacity; TOM COGAN, Parks and Recreation
Director, Individually and in his Official Capacity;
AND MARY TOWNSEND, Clarksville Aquatic
Center, Individually and in her Official Capacity;
AND WHITNEY BARNES, Individually and in her Official
Capacity                                                            DEFENDANTS

AFFIDAVIT OF KAREN NORDIN

State of Arkansas          )
                           ) ss.
County of Johnson          )

        Before me, the undersigned authority in and for said county and state, personally appeared

Karen Nordin, who is over eighteen years of age, of sound mind and after being first duly sworn

did depose and say as follows:

        I, Karen Nordin, being over 18 years of age and of sound mind and body, do solemnly

swear and affirm:

        1.      My name is Karen Nordin. I clerk for the Johnson County Sheriff's Department

On July 29, 2019, our department received Summonses for the City of Clarksville, Jeff Ross,

Tom Cogan, Mary Townsend, Whitney Barnes, and Jon Simpson.



2. No complaint or other document was attached to the summonses.

3. Our department served only the Summons on each defendant above, except for Whitney Barnett. Ms. Barnett's Summons was mailed to an address in Greenwood, Arkansas.

Further, the Affiant Sayeth Not.

_____
Karen Nordin

State of Arkansas }
} ss.
County of Johnson }

Before me the undersigned Notary Public in and for the State of Arkansas at large, personally appeared Karen Nordin and after being first duly sworn, did depose and say that the statements in the foregoing Affidavit are true and correct.

Sworn to and subscribed before me on this ___ day of _____, 2019.

_____
Notary Public

My Commission Expires:

IN THE CIRCUIT COURT OF JOHNSON COUNTY, ARKANSAS
1ST DIVISION

**CHRIS WHITE**                                              **PLAINTIFF**

**V.**                              **CASE NO. 36CV19-159**

**MARK SIMPSON, Individually and in his**
**Official capacity at Mayor; THE CITY OF**
**CLARKSVILLE, ARKANSAS d/b/a**
**CLARKSVILLE POLICE DEPARTMENT**
**d/b/a MARVIN VINSON BUILDING AND**
**AQUATIC CENTER; JEFF ROSS, Clarksville**
**Police Department, Individually and in his Official**
**Capacity; TOM COGAN, Parks and Recreation**
**Director, Individually and in his Official Capacity;**
**And MARY TOWNSEND, Clarksville Aquatic**
**Center, Individually and in her Official Capacity;**
**AND WHITNEY BARNES, Individually and in her Official**
**Capacity**                                            **DEFENDANTS**

## AFFIDAVIT OF TOM COGAN

State of Arkansas          )
                           )ss.
County of   Johnson        )

Before me, the undersigned authority in and for said county and state, personally

appeared Tom Cogan, who is over eighteen years of age, of sound mind and after being first duly

sworn did depose and say as follows:

I, Tom Cogan, being over 18 years of age and of sound mind and body, do solemnly

swear and affirm:

1.      My name is Tom Cogan.  On July 30, 2019, I was served with a Summons from

the Johnson County Circuit Court.

2.      No complaint or other document was attached to the summons, nor did I receive

any documents from the Sheriff's deputy, other than the summons.



DEFENDANT'S
EXHIBIT
2

Further the Affiant Sayeth Not.

Tom Cogan
**Tom Cogan**


State of Arkansas    )
                 ) ss.
County of Johnson   )

      Before me the undersigned Notary Public in and for the State of Arkansas at Large, personally appeared Tom Cogan, and after being first duly sworn, did depose and say that the statements in the foregoing Affidavit are true and correct.

Sworn to and subscribed before me on this 20th day of August , 2019.

Notary Public

BRUCE R. WILSON
MY COMMISSION # 12377350
My Commission Expires: 2020
Johnson County

## IN THE CIRCUIT COURT OF JOHNSON COUNTY, ARKANSAS
### 1ST DIVISION

**CHRIS WHITE**                                                     **PLAINTIFF**

**V.**                              **CASE NO. 36CV19-159**

**MARK SIMPSON, Individually and in his
Official capacity at Mayor; THE CITY OF
CLARKSVILLE, ARKANSAS d/b/a
CLARKSVILLE POLICE DEPARTMENT
d/b/a MARVIN VINSON BUILDING AND
AQUATIC CENTER; JEFF ROSS, Clarksville
Police Department, Individually and in his Official
Capacity; TOM COGAN, Parks and Recreation
Director, Individually and in his Official Capacity;
And MARY TOWNSEND, Clarksville Aquatic
Center, Individually and in her Official Capacity;
AND WHITNEY BARNES, Individually and in her Official
Capacity**                                                      **DEFENDANTS**

### AFFIDAVIT OF VERLA CLARK

State of Arkansas          )
                           )ss.
County of  Johnson         )

Before me, the undersigned authority in and for said county and state, personally appeared Verla Clark, who is over eighteen years of age, of sound mind and after being first duly sworn did depose and say as follows:

I, Verla Clark, being over 18 years of age and of sound mind and body, do solemnly swear and affirm:

1.      My name is Verla Clark.  On July 30, 2019, I was served with a Summons for the City of Clarksville issued by the Johnson County Circuit Court.

2.      No complaint or other document was attached to the summons, nor did I receive any documents from the Sheriff's deputy, other than the summons.



DEFENDANT'S
EXHIBIT
3

Further the Affiant Sayeth Not.

Verla Clark
Verla Clark


State of Arkansas ) 
                ) ss.
County of Johnson )

      Before me the undersigned Notary Public in and for the State of Arkansas at Large, personally appeared Verla Clark, and after being first duly sworn, did depose and say that the statements in the foregoing Affidavit are true and correct.

      Sworn to and subscribed before me on this 28 day of August , 2019.

Notary Public

BRUCE A. WILSON
My Commission Expires
MY COMMISSION 12177060
EXPIRES: August 3, 2020
Johnson County

## IN THE CIRCUIT COURT OF JOHNSON COUNTY, ARKANSAS
## 1ST DIVISION

**CHRIS WHITE**                                                      **PLAINTIFF**

**V.**                             **CASE NO. 36CV19-159**

**MARK SIMPSON, Individually and in his**
**Official capacity at Mayor; THE CITY OF**
**CLARKSVILLE, ARKANSAS d/b/a**
**CLARKSVILLE POLICE DEPARTMENT**
**d/b/a MARVIN VINSON BUILDING AND**
**AQUATIC CENTER; JEFF ROSS, Clarksville**
**Police Department, Individually and in his Official**
**Capacity; TOM COGAN, Parks and Recreation**
**Director, Individually and in his Official Capacity;**
**And MARY TOWNSEND, Clarksville Aquatic**
**Center, Individually and in her Official Capacity;**
**AND WHITNEY BARNES, Individually and in her Official**
**Capacity**                                      **DEFENDANTS**

## AFFIDAVIT OF JEFF ROSS

State of Arkansas     )
                        )ss.
County of Johnson     )

Before me, the undersigned authority in and for said county and state, personally appeared Jeff Ross, who is over eighteen years of age, of sound mind and after being first duly sworn did depose and say as follows:

I, Jeff Ross, being over 18 years of age and of sound mind and body, do solemnly swear and affirm:

1. My name is Jeff Ross. On July 30, 2019, I was served with a Summons from the Johnson County Circuit Court.

2. No complaint or other document was attached to the summons, nor did I receive any documents from the Sheriff's deputy, other than the summons.



DEFENDANT'S
EXHIBIT
4

Further the Affiant Sayeth Not.

Jeff Ross

State of Arkansas      )
                       ) ss.
County of Johnson      )

Before me the undersigned Notary Public in and for the State of Arkansas at Large, personally appeared Jeff Ross, and after being first duly sworn, did depose and say that the statements in the foregoing Affidavit are true and correct.

Sworn to and subscribed before me on this $28$ day of August    , 2019.

Notary Public

BRUCE B. WILSON
My Commission Expires7950
EXPIRES: August 5, 2020
Johnson County

IN THE CIRCUIT COURT OF JOHNSON COUNTY, ARKANSAS
1ST DIVISION

**CHRIS WHITE**                                                    **PLAINTIFF**

**V.**                          **CASE NO. 36CV19-159**

**MARK SIMPSON, Individually and in his**
**Official capacity at Mayor; THE CITY OF**
**CLARKSVILLE, ARKANSAS d/b/a**
**CLARKSVILLE POLICE DEPARTMENT**
**d/b/a MARVIN VINSON BUILDING AND**
**AQUATIC CENTER; JEFF ROSS, Clarksville**
**Police Department, Individually and in his Official**
**Capacity; TOM COGAN, Parks and Recreation**
**Director, Individually and in his Official Capacity;**
**And MARY TOWNSEND, Clarksville Aquatic**
**Center, Individually and in her Official Capacity ;**
**AND WHITNEY BARNES, Individually and in her Official**
**Capacity**                                               **DEFENDANTS**

## AFFIDAVIT OF MARY TOWNSEND

State of Arkansas          )
                           )ss.
County of  Johnson         )

Before me, the undersigned authority in and for said county and state, personally

appeared Mary Townsend, who is over eighteen years of age, of sound mind and after being first

duly sworn did depose and say as follows:

I, Mary Townsend, being over 18 years of age and of sound mind and body, do solemnly

swear and affirm:

1.      My name is Mary Townsend.  On July 30, 2019, I was served with a Summons

from the Johnson County Circuit Court.

2.      No complaint or other document was attached to the summons, nor did I receive

any documents from the Sheriff's deputy, other than the summons.



DEFENDANT'S
EXHIBIT
5

Further the Affiant Sayeth Not.

Mary Townsend


State of Arkansas )
 ) ss.
County of Johnson )

Before me the undersigned Notary Public in and for the State of Arkansas at Large, personally appeared Mary Townsend, and after being first duly sworn, did depose and say that the statements in the foregoing Affidavit are true and correct.

Sworn to and subscribed before me on this 21st day of August, 2019.


Notary Public

BRUCE H WILSON
MY COMMISSION # 12377850
My Commission Expires August 3, 2020
Johnson County

## IN THE CIRCUIT COURT OF JOHNSON COUNTY, ARKANSAS
## 1ST DIVISION

**CHRIS WHITE**                                                    **PLAINTIFF**

**V.**                              **CASE NO. 36CV19-159**

**MARK SIMPSON, Individually and in his
Official capacity at Mayor; THE CITY OF
CLARKSVILLE, ARKANSAS d/b/a
CLARKSVILLE POLICE DEPARTMENT
d/b/a MARVIN VINSON BUILDING AND
AQUATIC CENTER; JEFF ROSS, Clarksville
Police Department, Individually and in his Official
Capacity; TOM COGAN, Parks and Recreation
Director, Individually and in his Official Capacity;
And MARY TOWNSEND, Clarksville Aquatic
Center, Individually and in her Official Capacity;
AND WHITNEY BARNES, Individually and in her Official
Capacity**                                                        **DEFENDANTS**

## AFFIDAVIT OF JON SIMPSON

State of Arkansas          )
                           )ss.
County of Johnson          )

Before me, the undersigned authority in and for said county and state, personally

appeared Jon Simpson, who is over eighteen years of age, of sound mind and after being first

duly sworn did depose and say as follows:

I, Jon Simpson, being over 18 years of age and of sound mind and body, do solemnly

swear and affirm:

1.      My name is Jon Simpson.  On August 3, 2019, I was served with a Summons

from the Johnson County Circuit Court.

2.      No complaint or other document was attached to the summons, nor did I receive

any documents from the Sheriff's deputy, other than the summons.



DEFENDANT'S
EXHIBIT
6

Further the Affiant Sayeth Not.

Jon Simpson

State of Arkansas )
 ) ss.
County of Johnson )

Before me the undersigned Notary Public in and for the State of Arkansas at Large, personally appeared Jon Simpson, and after being first duly sworn, did depose and say that the statements in the foregoing Affidavit are true and correct.

Sworn to and subscribed before me on this 2̲1̲ day of ____August____, 2019.

Notary Public

BRUCE H. WILSON
MY COMMISSION # 12577950
EXPIRES: August 5, 2020
Johnson County
My Commission

**CHRIS WHITE**

**PLAINTIFF**

CIRCUIT CLERK
JOHNSON COUNTY AR

**V.**

**CASE NO. 36CV19-159**

MARK SIMPSON, Individually and in his
Official capacity at Mayor; THE CITY OF
CLARKSVILLE, ARKANSAS d/b/a
CLARKSVILLE POLICE DEPARTMENT
d/b/a MARVIN VINSON BUILDING AND
AQUATIC CENTER; JEFF ROSS, Clarksville
Police Department, Individually and in his Official
Capacity; TOM COGAN, Parks and Recreation
Director, Individually and in his Official Capacity;
And MARY TOWNSEND, Clarksville Aquatic
Center, Individually and in her Official Capacity;
AND WHITNEY BARNES, Individually and in her Official
Capacity

**DEFENDANTS**

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS

COME now Defendants herein, by and through counsel, Sara Monaghan, and for their

Brief in Support of Motion to Dismiss the Plaintiff's Complaint, state:

**I.    Facts**

Plaintiff filed his Complaint in this case on July 29, 2019. *See*, Complaint. On the same

date, Summonses were issued for The City of Clarksville, Whitney Barnes, Jeff Ross, Mary

Townsend, Jon Simpson, and Tom Cogan. *See*, Summons. The Plaintiff delivered a copy of the

Summons to the Johnson County Sheriff's Department for service but did not deliver a copy of the

Complaint as required by ARCP 4(d). *See* Exhibit 1, Affidavit of Karen Nordin.

On July 30, 2019, Lisa Casey with the Johnson County Sheriff's Department served Tom

Cogan, Verla Clark, an employee of The City of Clarksville, Jeff Ross, and Mary Townsend with

a copy of the Summons, however, the Complaint was not attached to the Summons. *See* Exhibit

2, Affidavit of Tom Cogan; Exhibit 3, Affidavit of Verla Clark; Exhibit 4, Affidavit of Jeff Ross; & Exhibit 5, Affidavit of Mary Townend.

Despite the fact that no Complaint was attached to the Summons, Ms. Casey filed Proof of Service with the Court indicating that the above listed individuals had been served personally with a copy of the Summons and Complaint. *See* Cogan Proof of Service; City Proof of Service; Ross Proof of Service; Townsend Proof of Service; and City Proof of Service.

On August 9, 2019, Karen Nordin from the Johnson County Sheriff's Office mailed a copy of the Complaint with no summons attached to Whitney Barnes at 2901 A.Coker, Greenwood, AR 72936. *See* Barnes Proof of Service and Exhibit 1.

On August 3, 2019, Seth Pruitt of the Johnson County Sheriff's Office served Jon Simpson with a copy of the Summons, however, the Complaint was not attached to the Summons. On August 5, 2019, Karen Nordin filed an Affidavit with the Clerk of the Johnson County Sheriff's Department stating that all of the Defendants were served, but that no Complaint had been attached to the Summons. *See,* Nordin Letter.

**II. Because no Complaint was attached to the summons, service of process and process was insufficient, and Plaintiff's Complaint should be dismissed.**

Rule 4(c)(1) states that, "the term "process" means the summons and a copy of the complaint, which shall be served together. The plaintiff or the plaintiff's attorney shall furnish the person making service with as many copies as are necessary. Rule 4(f)(1)(A) of the Arkansas Rules of Civil Procedure states:

Service of Process shall be made inside the state as follows...by:

(A) Delivering a copy of the process to the defendant personally...

2

Further, ARCP Rule 4(f)(13) requires that, "Service on a municipal corporation shall be on the mayor, city manager, city administrator, or city clerk." Finally, according to ARCP Rule 4(g)(1), service by mail must be made by the plaintiff or the plaintiff's attorney by certified mail.

Based on the testimony by Defendants and the Letter filed by the Johnson County Sheriff's Department, it is clear that none of the Defendants were served with a copy of the Complaint attached to the summons. Further, with respect to the City, the Plaintiff did not serve the proper individual in order to effectuate proper service on the City of Clarksville. Finally, the Plaintiff did not comply with the requirements of ARCP Rule 4(d)(8) in order to properly effectuate service through mail of Defendant Whitney Barnes. Therefore, for all of these reasons, Defendants are entitled to dismissal of the Plaintiff's Complaint for Insufficient Service of Process and Insufficient Process pursuant to Rule 12 of the Arkansas Rules of Civil Procedure.

WHEREFORE, Defendants pray that this Court dismiss Plaintiff's Complaint against them and for all other just and proper relief to which there is entitlement.

Respectfully submitted,

BY: _____

Sara Monaghan
Ark. Bar No. 2005276
P.O. Box 38
North Little Rock, AR 72115
TELEPHONE: 501-978-6122
FACSIMILE: 501-537-7262
EMAIL: smonaghan@arml.org

## CERTIFICATE OF SERVICE

I, Sara Monaghan, hereby certify on August 28, 2019, I have filed the foregoing document, via hand delivery, with the Clerk of the Court, and I hereby certify that I have sent the document by Certified Mail to the person(s) referenced below:

Christopher White, Pro Se
P.O. Box 643
Clarksville, AR 72380

Sara Monaghan

## IN THE CIRCUIT COURT OF JOHNSON COUNTY, ARKANSAS
## 1ST DIVISION

**CHRIS WHITE**                                                         **PLAINTIFF**

**V.**                                     **CASE NO. 36CV19-159**

**MARK SIMPSON, Individually and in his**
**Official capacity at Mayor; THE CITY OF**
**CLARKSVILLE, ARKANSAS d/b/a**
**CLARKSVILLE POLICE DEPARTMENT**
**d/b/a MARVIN VINSON BUILDING AND**
**AQUATIC CENTER; JEFF ROSS, Clarksville**
**Police Department, Individually and in his Official**
**Capacity; TOM COGAN, Parks and Recreation**
**Director, Individually and in his Official Capacity;**
**And MARY TOWNSEND, Clarksville Aquatic**
**Center, Individually and in her Official Capacity ;**
**AND WHITNEY BARNES, Individually and in her Official**
**Capacity**                                                           **DEFENDANTS**


## DEFENDANTS' NOTICE TO PARTIES AND STATE COURT

COMES Defendants herein, by and through counsel, Sara Monaghan, and for their Notice

to Parties and State Court of Removal, states as follows:

In accordance with 28 U.S.C. §§ 1441(a) and 1446(d), Defendants, herein, hereby give

notice that the above styled and numbered cause has been removed to the United States District

Court for the Western District of Arkansas, Fort Smith Division. A true and correct copy of the

Notice of Removal filed with the Clerk of said Court is attached hereto as Exhibit "A" and

incorporated herein by reference.

DATED this 28th day of August, 2019.

Respectfully submitted,

BY: _Sara Monaghan_

Sara Monaghan
Ark. Bar No. 2005276
P.O. Box 38
North Little Rock, AR 72115
TELEPHONE: 501-978-6122
FACSIMILE: 501-537-7262
EMAIL: smonaghan@arml.org

## CERTIFICATE OF SERVICE

I, Sara Monaghan, hereby certify on August 28, 2019, I have filed the foregoing document, via hand delivery, with the Clerk of the Court, and I hereby certify that I have sent the document by Certified Mail to the person(s) referenced below:

Christopher White, Pro Se
P.O. Box 643
Clarksville, AR 72380

_Sara Monaghan_

Sara Monaghan

2

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FORT SMITH DIVISION**

**CHRIS WHITE**                                                    **PLAINTIFF**

**V.**                          **CASE NO. _____**

**MARK SIMPSON, Individually and in his**
**Official capacity at Mayor; THE CITY OF**
**CLARKSVILLE, ARKANSAS d/b/a**
**CLARKSVILLE POLICE DEPARTMENT**
**d/b/a MARVIN VINSON BUILDING AND**
**AQUATIC CENTER; JEFF ROSS, Clarksville**
**Police Department, Individually and in his Official**
**Capacity; TOM COGAN, Parks and Recreation**
**Director, Individually and in his Official Capacity;**
**And MARY TOWNSEND, Clarksville Aquatic**
**Center, Individually and in her Official Capacity;**
**AND WHITNEY BARNES, Individually and in her Official**
**Capacity**                                                      **DEFENDANTS**

**NOTICE OF REMOVAL**

COME now Defendants herein, by and through counsel, Sara Monaghan, and for their

Notice of Removal, state:

1.      On or about July 29, 2019, Plaintiff filed his Complaint in the Circuit Court of

Johnson County, Arkansas, Case No. 36CV19-159. The Defendants are Mark Simpson, The City

of Clarksville, Clarksville Police Department, Jeff Ross, Tom Cogan, Mary Townsend, and

Whitney Barnes. The Plaintiff, Christopher White is a pro se plaintiff.

2.      Defendants have filed a Motion to Dismiss the Complaint and a Notice of Parties

and State Court of Removal with the Circuit Court of Johnson County, Arkansas, pursuant to 28

U.S.C. § 1446(d).

3.      In the Complaint, Plaintiff brings this action pursuant to alleged violations of

federal law and laws of the State of Arkansas. *See Complaint.*



4.  28 U.S.C. § 1441(a) allows a defendant to remove civil actions from state to federal court when such actions are within the original jurisdiction of the federal court. Original federal question jurisdiction is vested in the federal courts under 28 U.S.C. § 1331 regarding cases "arising under" the Constitution and laws of the United States, regardless of the amount of controversy. This Court has both original and removal jurisdiction over United States Constitution causes of action. Plaintiffs' Complaint clearly states claims that arise under the United States Constitution. Thus, original federal question jurisdiction is vested pursuant to 28 U.S.C. § 1331 and removal is proper under the federal removal statutes.

5.  Venue is proper in this Court.

6.  True and correct copies of the pleadings served on Defendants are attached hereto as Exhibit "A" and incorporated herein by this reference, this constituting all process, pleadings and orders which have been served on and/or filed by Defendants.

7.  Pursuant to 28 U.S.C. § 1446, Defendants hereby give notice of the removal of this action from the Circuit Court of Johnson County, Arkansas, to the United States District Court for the Western District of Arkansas, Fort Smith Division.

WHEREFORE, Defendants pray that this action be removed from the Circuit Court of Johnson County, Arkansas, to the United States District Court for the Western District of Arkansas, Fort Smith Division, in accordance with 28 U.S.C. § 1331, § 1441, and § 1446, and for all other just and proper relief.

Respectfully submitted,

BY: _____

Sara Monaghan
Ark. Bar No. 2005276
P.O. Box 38
North Little Rock, AR 72115
TELEPHONE: 501-978-6122
FACSIMILE: 501-537-7262
EMAIL: smonaghan@arml.org

## CERTIFICATE OF SERVICE

I, Sara Monaghan, hereby certify on August 28, 2019, I have filed the foregoing document, via email, with the Clerk of the Court, and I hereby certify that I have sent the document by Certified Mail to the person(s) referenced below:

Christopher White, Pro Se
P.O. Box 643
Clarksville, AR 72380

_____

Sara Monaghan